### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

```
_____
                                  )
RAYMING CHANG, et al.,            )
                                  )
          Plaintiffs,             )
                                  )
     v.                           )    Civ. Action No. 02-2010 (EGS)
                                  )
UNITED STATES, et al.,            )
                                  )
          Defendants.             )
_____)
```

### MEMORANDUM OPINION AND ORDER

Pending before the Court is non-party Mary Cheh's Motion to Quash Subpoena, and a cross-motion to enforce the subpoena filed by Metropolitan Police Department ("MPD") Executive Assistant Chief Michael J. Fitzgerald and Assistant Chief Brian K. Jordan. Defendants seek documents in the possession of Mary Cheh relating to her service as Special Counsel for an investigation conducted by the Council of the District of Columbia's Committee on the Judiciary ("Committee").

On April 28, 2003, the Committee authorized an investigation into the policies and practices of the MPD in handling mass demonstrations. Mary Cheh, a Professor of Law at George Washington University ("GWU") Law School, was appointed by Committee Chairwoman Kathy Patterson, to serve as Special Counsel to the Committee in the investigation. Between July 2003 and March 2004, the Committee engaged in fact-finding, which included the issuance of subpoenas for documents in the possession of the

MPD and other DC executive branch agencies, the taking of written and oral depositions of numerous witnesses, and two days of public hearings.  The Committee also reviewed over 5,000 pages of documents.  Professor Cheh was involved in all aspects of the investigation.  She served as lead counsel at the depositions and was involved in the questioning of witnesses at the public hearings.

On March 24, 2004, the Committee issued its "Report on Investigation of the Metropolitan Police Department's Policy and Practice in Handling Demonstrations in the District of Columbia." Less than two weeks later, on April 6, 2004, the Council of the District of Columbia adopted a resolution authorizing the Committee to conduct a Special Project to develop legislation to implement the recommendations in the Report.  The Special Project resulted in legislation entitled the "First Amendment Rights and Policy Standards Act of 2004," which was adopted by the Council on December 21, 2004.  The Act became D.C. Law 15-352 on April 13, 2005.

On September 24, 2004, Professor Cheh delivered an address entitled "A Legislative Investigation Into Police Handling of Mass Demonstrations and Protests – Lessons From the District of Columbia," as a part of the GWU American Constitution Society ("ACS") 2004/2005 Faculty Series.  The speech was free and open to the entire university community.

On September 6, 2005, defendants Fitzgerald and Jordan caused a subpoena duces tecum to be served upon Professor Cheh. The subpoena calls for production of 35 categories of documents, most of which relate to the Committee's investigation.  In addition to seeking documents in Cheh's possession related to the Committee investigation, defendants also seek documents that Cheh "considered, utilized, and/or relied upon in preparing and/or delivering" her September 2004 speech and documents reflecting or related to communications between Cheh and the Council of the Committee regarding her speech.  *See* Attachment A to Subpoena to Mary Cheh, at 1 ¶¶ 1-3, Ex. A to Mot. to Quash.

The Court finds that the documents that defendants seek are shielded from production pursuant to the legislative immunity accorded to Professor Cheh under the District of Columbia Speech or Debate Clause.  *See* D.C. Official Code § 1-301.42.  This statute provides that "[f]or any speech or debate made in the course of their legislative duties, the members of the Council shall not be questioned in any other place."  *Id.*  The legislative history and the case law interpreting this statute make it clear that it is modeled on the Speech or Debate Clause of the United States Constitution, *see* U.S. Const. Art. I § 6, cl. 1, and that the statute was intended to be interpreted liberally, so as to protect "'genuine legislative functions . . . which are exercised beyond the mere confines of the Council

Chambers or a committee meeting place.'" *Alliance for Global Justice v. District of Columbia*, 437 F.Supp.2d 32, 35 (D.D.C. 2006) (quoting Report on Bill No. 1-34, "Legislative Privilege Act of 1975," Comm. on the Judiciary & Criminal Law, Council of the District of Columbia at 1 (Dec. 4, 1975)).  However, the scope of this immunity only extends to conduct which is within the "sphere of legitimate legislative activity." *Doe v. McMillan*, 412 U.S. 306, 312-13 (1973).

Section 1-301.4(b) of the D.C. Official Code defines the term "legislative duties" as follows:

> "Legislative duties" shall include responsibilities of each member of the Council in the exercise of such member's functions as a legislative representative, including but not limited to: Everything said, written or done during legislative sessions, meetings, or <u>investigations</u> of the Council or any committee of the Council, and everything said, written, or done in the process of drafting and publishing legislation and legislative reports.

D.C. Official Code §1-301.4(b) (emphasis added).

The District's Speech or Debate Clause, like its model in the U.S. Constitution, provides broad legislative immunity.  The immunity extends beyond Council members to legislative aids, both present or former.  *See Eastland v. United States Servicemen's Fund*, 421 U.S. 491, 507 (1975); *Minpeco v. Conticommodity Servs.*, 844 F.2d 856, 861 (D.C. Cir. 1988).  Furthermore, because legislative immunity not only prohibits compelled testimony, but also the compelled production of documents, documents requested

4

pursuant to a subpoena *duces tecum* may be protected.  *Minpeco*,

844 F.2d at 859; *Maddox v. Williams*, 855 F.Supp. 406, 412-13

(D.D.C. 1994).

In *Minpeco*, defendants in a civil case subpoenaed records of

a Congressional subcommittee to establish that a published report

of sworn testimony taken before the subcommittee had been

substantively - and presumably, fraudulently - altered prior to

its publication by the subcommittee.  844 F.2d at 857.  The D.C.

Circuit affirmed the District Court's granting of the motion to

quash the subpoena *duces tecum* stating:

> (W)e today decline to command the disclosure of
> information to test the accuracy of the printed
> statement.  As the preparation of the statement for
> publication in the subcommittee report was part of the
> legislative process, that is the end of the matter.  It
> is the responsibility of Congress, not of the Courts,
> to assure the integrity of its report.

*Minpeco*, 844 F.2d at 861.

Here, the stated purpose for the subpoena is to obtain

information from Cheh that defendants would use to discredit the

investigation report issued by the Committee on the Judiciary.

Cross-Motion to Enforce P. & A. at 19.  This is exactly the issue

presented in *Minpeco*.  In *Minpeco*, it was argued that the

dissemination of the subcommittee report to the Attorney General

took it out of the scope of the Speech or Debate Clause's

protection.  The Court rejected that argument, stating:

> While a member of Congress or of a congressional staff
> may well be required, in appropriate situations, to

5

testify as to the circumstances of an unprotected act,
they may not be compelled to provide evidence that
would compromise the protection extended by the
Constitution to the legislative process itself.  As the
preparation and publication of the Bledsoe statement
fall within the sphere of the subcommittee's
legislative activities, the fact of its transmittal to
the Attorney General does not entitle the Hunts to the
information they seek.  "Once the legislative act test
is met, the principle is absolute," and it matters not
that the subcommittee chairman's act may itself be
unprotected.

*Minpeco*, 844 F.2d at 862 (citations omitted).

In this case, the Court finds that Cheh is accorded the same
legislative immunity enjoyed by Council members or former
legislative aides because she was appointed and authorized by the
Committee to conduct an investigation of MPD policy and
practices.  Moreover, the documents that she used in her
investigation are protected under this immunity because they were
collected and used during the course of the Committee's
investigation and therefore fall within the sphere of legitimate
legislative activity.

Defendants' two arguments for why legislative immunity
should not apply are unavailing.  Defendants first argue that any
documents Cheh has retained in her personal files after the
conclusion of the investigation are no longer protected by
legislative immunity.  Defendants further argue that because
Professor Cheh gave a public speech on the same subject matter,
she has waived her immunity.

6

The D.C. Speech or Debate Clause, playing the same role as the Speech or Debate Clause in the U.S. Constitution, excludes "inquiry . . . into the motivation for" acts "that occur in the regular course of the legislative process." *United States v. Helstoski*, 442 U.S. 477, 487 (1979).  By trying to get access to documents in the former Special Counsel's possession related to a legislative investigation, defendants are attempting to inquire into the motivations underlying the Committee's report and the D.C. law that was adopted as a result of the investigation.  The Court declines to accept defendants invitation to whittle away at the contours of legislative immunity by allowing defendants to intrude into the legislative process through a back door. Professor Cheh's investigation was squarely within the confines of legislative activity protected under the Speech or Debate Clause.  The mere fact that Professor Cheh gave a speech on the same subject matter as the Council's investigation of which she was a central part once she was no longer Special Counsel or that she may retain documents or work product from that investigation does not mean that she has somehow waived the legislative immunity to which she and the Committee for which she served as Special Counsel are entitled.  To find otherwise would severely undermine the purposes of legislative immunity.

For the foregoing reasons, it is hereby

**ORDERED** that the Motion of Mary Cheh to Quash Subpoena is

**GRANTED**; and it is

**FURTHER ORDERED** that the Cross-Motion of Fitzgerald and

Jordan to Enforce Subpoena Duces Tecum to Mary Cheh is **DENIED.**

**SO ORDERED.**

**Signed:**      **Emmet G. Sullivan**
                 **United States District Judge**
                 **October 2, 2007**