```
 1                    UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLUMBIA
 2        --------------------------X
          RAYMING CHANG, ET AL          Docket No. 02-2010
 3                      Plaintiffs,
                   v.                   Washington, D.C.
 4                                      July 29, 2009
                                        11:00 a.m.
 5        UNITED STATES OF AMERICA, ET AL
                        Defendants;
 6        and

 7        JEFFREY BARHAM, ET AL         Docket No. 02-2283
                        Plaintiffs,
 8                 v.
          DISTRICT OF COLUMBIA, ET AL
 9                      Defendants.
          --------------------------X

10
                          MOTION HEARING
11          BEFORE THE HONORABLE EMMET G. SULLIVAN
                   UNITED STATES DISTRICT JUDGE
12

13        APPEARANCES:

14        For the Plaintiffs:   BRYAN CAVE, LLP
          RAYMING CHANG         By:  Mr. Daniel C. Schwartz
15                                   Mr. P.J. Meitl
                                1155 F Street, N.W.
16                              Suite 700
                                Washington, D.C.  20004
17                              202.508.6000
                                dcschwartz@bryancave.com
18                              pj.meitl@bryancave.com

19                              GEORGE WASHINGTON LAW SCHOOL
                                By:  Mr. Jonathan Turley
20                              2000 H Street, N.W.
                                Room E305
21                              Washington, D.C.  20052
                                202.94.7001
22                              jturley@law.gwu.edu

23

24

25
```

```
 1   APPEARANCES:  (CONT'D)

 2   JEFFREY BARHAM            PARTNERSHIP FOR CIVIL JUSTICE
                               By:  Ms. Mara E. Verheyden-Hilliard
 3                                  Mr. Carl. L. Messineo
                               617 Florida Avenue, N.W.
 4                             Washington, D.C.  20001
                               202.232.1180
 5                             myh@JusticeOnline.org
                               cm@JusticeOnline.org
 6
     For the Defendants:       U.S. DEPARTMENT OF JUSTICE, Civil Div.
 7                             By:  Mr. Brian P. Hudak
                               555 Fourth Street, N.W.
 8                             Washington, D.C.  20530
                               202.514.7143
 9                             brian.hudak@usdoj.gov

10                             U.S. DEPARTMENT OF THE INTERIOR
                               By:  Mr. Randolph J. Myers
11                             1849 C Street, N.W,  Room 3221
                               Washington, D.C. 20240
12                             202.208.4338
                               Randolph.Myers@sol.doi.gov

13

14                             OFFICE OF THE ATTORNEY GENERAL
                                FOR THE DISTRICT OF COLUMBIA
15                             By:  Mr. Thomas L. Koger
                                    Ms. Ellen A. Efros
16                                  Mr. Chad Copeland
                               441 Fourth Street, N.W.
17                             Suite 600S
                               Washington, D.C.  20001
18                             202.727.4170
                               thomas.koger@dc.gov
19                             ellen.efros@dc.gov
                               chad.copeland@dc.gov
20

21   PETER J. NEWSHAM          DESO & BUCKLEY
                               By:  Mr. David W. Buckley
22                             1828 L Street, N.W.
                               Suite 660
23                             Washington, D.C.  20036
                               202.822.6333
24                             dbuckley@dtswlaw.com

25
```

```
 1   APPEARANCES:  (CONT'D)

 2   FAIRFAX COUNTY          O'CONNELL, O'CONNELL & SARSFIELD
     SHERIFF'S DEPARTMENT    By:  Mr. Alexander Francuzenko
 3                           401 East Jefferson Street
                             Suite 204
 4                           Rockville, MD  20850
                             301.424.2300
 5                           alex@oconnelllaw.com

 6   CHARLES H. RAMSEY       VINSON & ELKINS, LLP
                             By:  Mr. John M. Faust
 7                                Mr. Robert Boxie
                             1455 Pennsylvania Avenue, N.W.
 8                           Suite 600
                             Washington, D.C.  20004
 9                           202.639.6727
                             jfaust@velaw.com
10                           rboxie@velaw.com

11   Court Reporter:         Catalina Kerr, RPR, CRR
                             U.S. District Courthouse
12                           Room 6716
                             Washington, D.C.  20001
13                           202.354.3258
                             catykerr@msn.com
14

15

16

17

18   Proceedings recorded by mechanical stenography, transcript

19   produced by computer.

20

21

22

23

24

25
```

```
1                      P-R-O-C-E-E-D-I-N-G-S

2            (11:00 A.M.; OPEN COURT.)

3            THE DEPUTY CLERK:  Civil Action 02-2010, Rayming

4    Chang, et al versus United States of America, et al, and Civil

5    Action 02-2283, Jeffrey Barham, et al versus District of

6    Columbia, et al.  Would counsel please identify yourselves for

7    the record.

8            MR. TURLEY:  Good morning, Your Honor.  Jonathan

9    Turley for the Chang Plaintiffs.  With me today at counsel

10   table is Mr. Daniel Schwartz and Mr. P.J. Meitl.

11           THE COURT:  All right.  Good morning, Counsel.

12           MS. VERHEYDEN-HILLIARD:  Good morning, Your Honor.

13   Mara Verheyden-Hilliard on behalf of the Barham Plaintiffs,

14   and with me at counsel table is Carl Messineo.

15           MR. MESSINEO:  Good morning, Your Honor.

16           THE COURT:  Good morning.

17           MR. KOGER:  Good morning, Your Honor.  Thomas Koger

18   on behalf of the District of Columbia, Michael Fitzgerald,

19   Brian Jordan, Bryan DiGirolamo, Andre Harrison and Michael

20   Smith, and with me at counsel table are Ellen Efros and Chad

21   Copeland.

22           THE COURT:  All right.  Good morning, Counsel.

23           MR. HUDAK:  Good morning, Your Honor.  Brian Hudak

24   from the U.S. Attorney's Office for the federal defendants.

25   With me here today is Randy Myers from the Park Service.
```

```
 1              THE COURT:  All right.  Mr. Hudak.

 2              MR. FRANCUZENKO:  Good morning, Your Honor.  Alex

 3    Francuzenko on behalf of the Fairfax County Sheriff's Office.

 4              THE COURT:  Good morning.

 5              MR. BUCKLEY:  Good morning, Your Honor,  David

 6    Buckley for Assistant Chief Newsham.

 7              THE COURT:  Good morning, Counsel.

 8              MR. FAUST:  Your Honor, John Faust, Vinson & Elkins,

 9    for former Chief Ramsey in his individual capacity, and with

10    me from my firm is Robert Boxie.

11              THE COURT:  All right.  Good morning.  Is that it?

12    Is that everyone?

13              Mr. Koger, what about these late disclosures?  How

14    do you account for that?  How does the City account for that?

15              MR. KOGER:  The City's account --

16              THE COURT:  It's very troubling.  It's very

17    troubling.

18              MR. KOGER:  It is, Your Honor, and I don't know that

19    I can account for it in the sense that I have a good reason.

20    I have --

21              THE COURT:  So you have no reason?

22              MR. KOGER:  I have no good reason, Your Honor.

23    Those documents -- the recent documents were turned over to

24    the Office of the Attorney General while the case was under my

25    management.  Some -- probably in 2000 -- well, the arrest
```

1  records, going back to those, 2003, the documents which I have

2  recently turned over --

3        THE COURT:  Some of the documents are indeed e-mails

4  from people in the Attorney General's office.

5        MR. KOGER:  Those documents, Your Honor, I believe,

6  would have come to me in 2003 or at the latest 2004.

7        THE COURT:  This case is taking on a new identity

8  and it sounds more and more like the civil counterpart of Ted

9  Stevens.

10        MR. KOGER:  The civil counterpart of --

11        THE COURT:  The civil counterpart of the Ted Stevens

12  case.

13        MR. KOGER:  Your Honor --

14        THE COURT:  It raises serious questions about when,

15  if ever, can anyone ever trust their government.  These are

16  serious, serious problems, and I was very disturbed to see

17  these e-mails come across the computer screen.

18        MR. KOGER:  Your Honor --

19        THE COURT:  Serious revelations that go to heart of

20  some of Plaintiffs' theories.

21        MR. KOGER:  Your Honor, first, let me assure you

22  that I am abashed and contrite in having failed the Court and

23  the parties in this matter.

24        THE COURT:  I'm not so sure it's just you who has to

25  fall on the sword here.  You know, you're doing a good job of

1    falling on the sword, but I think there is probably some other

2    forces that are at work.  I'm not -- I haven't figured it all

3    out and it probably will take another month or two of briefs

4    to figure out just what the problem is, what the systemic

5    problem is, but there's a major problem here.

6              MR. KOGER:  I -- to try to -- to try to inform your

7    investigation of this, I would offer that when I took on this

8    case in 2003, I obtained as many documents as I was able to

9    identify.  I set up a war room, if you will.  Some months

10   later that war room was converted to another function under a

11   collective bargaining agreement and it was the first of

12   several moves and documents, particularly the e-mails.  I

13   misplaced and lost track of it.  There's --

14             THE COURT:  The videos have been lost also, haven't

15   they, the videos of the arrest?

16             MR. KOGER:  No, Your Honor, the CD --

17             THE COURT:  Was there a sizeable number of videos?

18             MR. KOGER:  There was a CD that I produced.  Those

19   videos had first been produced in March of 2004 in response to

20   the joint request for production by the Abatte Plaintiffs.

21             THE COURT:  I think there's some surveillance tapes,

22   though, and the Plaintiffs can address it.  I think there is

23   some surveillance tapes that have never been seen, I believe,

24   and all the copies.  Yeah.

25             MR. KOGER:  The CD that I turned over recently, I

1   just had made up so I could have all the videos in one unit

2   and everyone would have the same thing.  The only --

3   　　　　　THE COURT:  I may be mistaken, but I'll let

4   Plaintiffs -- I have a recollection that there were some --

5   many videos as well as all the copies no longer exist, but

6   I'll let Plaintiffs address that.

7   　　　　　MR. KOGER:  Yes, Your Honor.

8   　　　　　THE COURT:  No, no, I haven't finished with you,

9   though.  I want to find out what happened.  What's going on

10  here?  I mean, how can --

11  　　　　　MR. KOGER:  I'm sorry, Your Honor.

12  　　　　　THE COURT:  You know what, look, there are going to

13  be sanctions in this case and there's going to be an award of

14  attorney fees, and you know, those sanctions -- and there'll

15  be additional sanctions, and I'll tell you right now those

16  sanctions are going to be painful.  They're going to hurt.

17  　　　　　And I think that it's really unfortunate that the

18  citizens of the District of Columbia have to pay for these

19  types of shenanigans, and that's putting it mildly.

20  　　　　　MR. KOGER:  Yes, Your Honor.

21  　　　　　THE COURT:  And I don't take any comfort out of

22  telling the City's attorneys that the sanctions and attorney

23  fees I'm going to impose are going to be painful, but they

24  are.  That's a promise.  And I have no idea today just what

25  those sanctions will be, because everything is changed.  The

1  landscape has changed since the previous round of sanctions

2  was filed, and I will, as appropriate, give Plaintiffs an

3  opportunity to ask for whatever additional sanctions are

4  appropriate, and I will strongly impress upon them that they

5  should be as innovative as they possibly can within the realm

6  of reason to suggest to the Court appropriate sanctions,

7  because this type of conduct by the City's attorney's office

8  is unacceptable, it will not be tolerated and that office is

9  going to pay the price.

10        But ultimately, the citizens of the District of

11  Columbia lose because it comes out of their pocket, and they

12  shouldn't have to pay for these types of shenanigans, and

13  again, that's putting it mildly.

14        MR. KOGER:  Yes, Your Honor.

15        THE COURT:  There are other words to describe it.

16  So, what's happening?  How can this court, the lawyers, the

17  citizens of D.C., the parties, the Plaintiffs have any

18  confidence, how can they ever have any confidence that the

19  City has totally fulfilled its obligations to produce the

20  discovery that it has a responsibility to produce?  How will

21  they ever have that comfort?  How will they ever have that

22  confidence?  This is shocking what's happening here.

23        MR. KOGER:  Your Honor, I certainly don't disagree.

24        THE COURT:  It's the civil counterpart of the Ted

25  Stevens case, and that's shocking.  So, what do I have to do?

1   Appoint a special prosecutor in this case to find out what

2   happened?  Do I have to bring in someone from the outside to

3   search the City's files to see whether or not all discoverable

4   material has been turned over to Plaintiffs?  What do I have

5   to do?

6            That's a question I'm going to ask Plaintiffs as

7   well.  I'm not going to tolerate this conduct, and the

8   citizens of D.C. should not have to tolerate it.  What else is

9   there?  How do we know that everything that's discoverable has

10   been discovered and produced?  What can you tell me that will

11   suggest to me that I have confidence that all discoverable

12   material has been produced?  What can you say?

13            MR. KOGER:  Your Honor, but for -- but for an order

14   that would, in essence, put them in my shoes, I don't know --

15            THE COURT:  Put who in your shoes?

16            MR. KOGER:  Plaintiffs' counsel in my shoes.  I

17   don't know how else --

18            THE COURT:  That's a sad commentary, Counsel.  What

19   you're saying is, the only way that anyone would ever have any

20   comfort is for this court to allow Plaintiffs' counsel to roam

21   through the files of the D.C. government, that's what you just

22   told me.  That's a sad commentary.

23            So what about an attorney's word that we've done all

24   the searches, we've been diligent, we've searched everything,

25   and as an officer of the Court, I assure you, Judge, we've

 1   turned over everything, we left no stone unturned.  You can't

 2   tell me that.

 3          MR. KOGER:  Your Honor, it is that effort that

 4   results in this last minute production.

 5          THE COURT:  Last minute production on the eve of a

 6   hearing to determine sanctions.

 7          MR. KOGER:  Yes, Your Honor, and --

 8          THE COURT:  And we're talking about startling

 9   revelations that go to the heart of some of Plaintiffs'

10   theories.

11          MR. KOGER:  Your Honor, I would not debate the

12   pertinence or relevance of this.

13          THE COURT:  Did someone undertake a new search last

14   week or so?  Tell me what happened.

15          MR. KOGER:  No, it wasn't someone.  It was me,

16   because we had produced the materials in response to your

17   order of May 27th, and in doing so, I was -- I was, for the

18   first time, in a period of time, not had the time to

19   exhaustively go through those files.

20          THE COURT:  Counsel, you're telling me this is the

21   first time in years.  These cases were filed in what, in

22   '02 -- these cases were filed in 2002.

23          MR. KOGER:  No, Your Honor, that's not what I'm

24   telling you.  I am lead counsel in these matters.  You may

25   recall I was lead counsel in Abbate, and I was lead counsel in

1    Burgin.  I was lead counsel in International Action Center

2    before Judge Kessler.  I was lead counsel in Becker before

3    Judge Friedman.  I am now lead counsel in Bolger before Judge

4    Bates, and I'm lead counsel in Frucht before Judge Leon, all

5    of which have overlapping issues of police responses to

6    protests.

7           All these documents, which have come in various

8    outreach efforts, are all, for better or worse, now under me,

9    and I've been compiling these documents since late, late 2003

10   when I returned to the Office of the Attorney General.  I have

11   tried to maintain but have not succeeded in adequately

12   organizing these things, and through a series of moves of

13   these war rooms, these storage rooms and combination of cases

14   and as highlighted by my failure to produce the arrest

15   records, it was clear to me that I needed to go through these

16   documents and try and nail everything down, and I -- and it --

17   because of the --

18           THE COURT:  Has everything been nailed down?

19           MR. KOGER:  The best I can tell you is I think so.

20   But in my -- in my effort to do that --

21           THE COURT:  But truthfully, you don't know that to

22   be a fact, do you?

23           MR. KOGER:  Your Honor, I have to say I don't know

24   that to be a fact because what I've done is, I have tried to

25   focus my review of these materials.

1          THE COURT:  But that's a sad commentary.  Look, I

2    have a high regard for you, and you know that.  You've been

3    practicing before this court for years, and I've said this

4    before, but it shouldn't be the responsibility of one person

5    in a case of this magnitude.  And the case has been pending --

6    and two cases have been pending for seven years -- more than

7    seven years, almost ten years.  Actually seven years, and

8    there's no one else who can assist you with this task?

9          MR. KOGER:  Sincerely, Your Honor, I believe at this

10   context we have had a number of co-counsel with me over the

11   years who have come and gone.  I can think of no one who has a

12   grasp of what should be there, has a history with the cases.

13   Certainly I cannot be extracted from the process, and it

14   seemed to me when this -- when I needed to --

15         THE COURT:  So if you decided to go into private

16   practice tomorrow, the City would be in a sad state of

17   affairs, wouldn't it, without your leadership?

18         MR. KOGER:  I don't think I'd want to say that,

19   but --

20         THE COURT:  I can say it based upon what you just

21   told me.

22         MR. KOGER:  But, I don't -- perhaps that I'm saying

23   it too much like blowing my own horn.  What I mean to say is I

24   failed to properly familiarize my subordinates and arrange for

25   them to have time.

1    THE COURT:  But you know what, my high regard for

2    you, Counsel, is not going to immunize the City from the

3    severe, harsh sanctions I'm going to impose, and again,

4    they'll be painful.  They're going to be painful.  Sanctions

5    and attorney's fees, and this outrageous conduct is not going

6    to be tolerated by the Court, and there will be significant

7    prices to pay.

8    It's admirable that you're falling on the sword, but

9    that's not going to immunize the City, and again, that's a sad

10   commentary for the citizens who live here.  They're entitled

11   to better representation.

12   So what -- what's the next step?  I mean, within a

13   week there have been two significant startling revelations of

14   discoverable material.  What's the next step?  Am I to expect

15   another e-mail at 7:30 tonight?

16   MR. KOGER:  Well, I started communicating to other

17   parties in this matter shortly after your order compelling the

18   production as to where we should go from here.

19   THE COURT:  You know what, this case should be

20   settled.  That's what should happen.  This case should be

21   settled as soon as it possibly can to spare the citizens of

22   the District of Columbia additional expenses, additional

23   embarrassment and bring some finality to this case.  That's

24   what should happen.

25   MR. KOGER:  I wish I could have accomplished that

1    earlier.

2            THE COURT:  I understand that.  It didn't happen

3    earlier, but now there have been some other startling

4    revelations.  There's more discovery out there.  I don't know

5    what else is out there.  At some point the attorneys sit down

6    and say, "Enough of this, we need to settle this case," you

7    know.

8            The mayor needs to get involved and tell his city

9    government to settle this case.  That's what should happen.

10   That's what should happen.  It starts at the top, because this

11   is about the city government and about its abysmal involvement

12   in this case.  And that's a very appropriate word, abysmal.

13   This is outrageous.

14           It's seven years after this case was commenced, and

15   notwithstanding numerous court orders, the Government is still

16   locating discoverable information that has been there for

17   seven years in the Government's files.  I don't know what else

18   I can do other than to impose the significant sanctions and

19   awards of counsel fees that I will do.

20           I'm going to give the Plaintiff discovery -- the

21   additional discovery they want and the City is going to pay

22   every penny of what their cost will be for the additional

23   discovery.  I can tell you that's one sanction I'm going to

24   impose today.  Whatever the reasonable expenses are for the

25   additional discovery that Plaintiffs want, the City is going

1  the pay for it, every penny.  So what does that mean?  That

2  means six more months of delay?  Plaintiffs have been delayed

3  for seven years now, notwithstanding a -- notwithstanding

4  numerous resolutions of significant issues in this court, all

5  of which have been affirmed by the Court of Appeals.  This

6  case has been crying out for settlement for a long time.

7         Maybe we're at the posture now where the City

8  government will seriously consider settlement of all these

9  cases, of all these claims on terms that are reasonable;

10  otherwise, this litigation is going to go on and I have every

11  reason to believe there'll be additional sanctions imposed and

12  additional awards of attorney's fees because I don't have any

13  comfort whatsoever that all discoverable material has been

14  produced.

15         And I'm not so sure I'll ever get to that point in

16  this case, just as I never had any comfort whatsoever that all

17  discoverable material was produced in the Stevens case, I

18  never did, and look what happened there.

19         Anything else?  You've done a great job of falling

20  on the sword, but you know what, it's not your responsibility.

21  I fault the city government for not giving you the resources

22  that you need to do your job.  That's a sad commentary.  It's

23  admirable that you stand before the Court and take full

24  responsibility, but it's not your fault, Counsel, and you

25  should not have to stand there and fall on the sword.  The

1  city government doesn't give you the resources that you need

2  to do your job, then the citizens need to know that and the

3  mayor needs to give you whatever resources you need to do your

4  job and to proudly represent the citizens of the District of

5  Columbia, or the mayor needs to settle this lawsuit tomorrow.

6          I appreciate your willingness to accept

7  responsibility, but it's not your fault.  You shouldn't have

8  to be a one-man show for the D.C. Government.  They're

9  fortunate to have you there, and if you left tomorrow, I

10  wouldn't blame you, because who can work without the resources

11  they need to properly do their job.

12          All right, Counsel.  Thank you.

13          MR. KOGER:  Thank you, Your Honor.

14          THE COURT:  Let me hear from Plaintiffs' counsel.

15  You haven't had time to go over the documents.  You received

16  what, over a thousand pages or so of document and films.  You

17  haven't had time to go over the documents.  I know that.  And

18  one of the things would be, unfortunately, is going to result

19  in additional delay to the Plaintiffs, more delay, is going to

20  result in the imposition of sanctions that will be painful,

21  and there will be awards of attorney's fees and you will get

22  compensated for every penny of any future discovery that's

23  reasonably needed to be conducted in this case.

24          How would you like to proceed?

25          MR. TURLEY:  Well, first of all, Your Honor, on

1   behalf of my colleagues, I want to thank the Court for what it

2   has said.  This has been a very difficult period.  Even after

3   a long period of difficulty, this, as you noted, has changed

4   the landscape in an even worse position.

5        THE COURT:  It's difficult for a judge, too.  Look,

6   I mean, my job here is to preside over this case in a fair

7   manner and no one ever has enough time to do his or her job.

8   We all recognize that.  And this -- I'm sure I'm not the only

9   judge in this court who routinely extends the time for

10  everyone to complete discovery, you know, even when the time

11  limits have been stretched because no one ever has enough time

12  to properly do his or her job, but this is bordering on the

13  absurd here where, you know, within a week of a hearing to

14  determine sanctions, the Government locates information that's

15  always been there.

16       It's one thing to say someone delivered a box of

17  material to the Office of Attorney General and we never had

18  this before, just came out of nowhere, but these -- this

19  information comes from the D.C. government's files, and that's

20  extremely troubling to the Court, very troubling.

21       MR. TURLEY:  Yes, Your Honor, we are --

22       THE COURT:  And I don't know.  I don't know if

23  you've had enough time to think about how you want to proceed.

24  I know you haven't had time to go over everything you

25  received.  I know that.  I recognize that.  And thank you for

1    the e-mails.

2           And that's another thing.  It's one thing for the

3    Government to, at the eleventh hour, turn over information to

4    the Plaintiffs, and I didn't expect to receive a copy of any

5    information that the Government turned over to Plaintiffs, but

6    it's quite another thing for the Court to not even be informed

7    by notice that additional discoverable material, whatever it

8    was, had been located and turned over.  I wouldn't have known

9    about this at all until this morning, unless the Plaintiffs

10   had filed a notice to the Court indicating that -- that

11   discoverable material had been turned over to them.

12          MR. TURLEY:  Yes, Your Honor.  The thing that is

13   most troubling for Plaintiffs' counsel, and we have had

14   meetings, because this is unprecedented for any of us.  Even

15   counsel who was involved in Bolger, this is something that in

16   all of our years of practice we've never seen.

17          THE COURT:  Well, unfortunately, I just saw it in

18   another case.  I saw this type of shenanigans by a government,

19   you know, and it is a sad commentary, and I hope we haven't

20   gotten to the point where, you know, we just can't trust what

21   our governments are doing these days.  It's a sad commentary.

22          MR. TURLEY:  Well, what particularly disturbs us is

23   that the conduct leading up to this -- first of all, the

24   District hasn't even fulfilled its obligations under past

25   orders to compel.  There's still material out there that have

1  not been produced.

2  　　　　THE COURT:  And there's going to be sanctions, and

3  as I indicated, the sanctions are going to hurt.  They're

4  going to be extremely painful.

5  　　　　MR. TURLEY:  And the thing that we've struggled

6  with, Your Honor, on the Plaintiffs' side is that when you

7  look at the mosaic of misconduct in this case, you're really

8  struck by a series of things that it's hard to say are

9  coincidences.  I mean, the Running Resume is a good example of

10  that.  We know now that 12 Running Resumes were produced.  We

11  know that from the District's own witnesses, from 30(b)(6)

12  witnesses, from other witnesses in terms of those that

13  existed.  That -- those Running Resumes are enormously

14  important in a case of this kind as they were in Bolger, and

15  the same defendant, as was in Bolger, also stood to --

16  withheld that document but eventually produced it.

17  　　　　In this case, 12 copies of the Running Resume, which

18  is the contemporaneous -- the reproduction of the

19  contemporaneous statements and radio calls that went out, just

20  disappeared, and the District has no explanation where they

21  went.

22  　　　　THE COURT:  That's the information I was trying to

23  recall.  The radio runs.

24  　　　　MR. TURLEY:  Right.  And then you have the --

25  　　　　THE COURT:  You have the --

1    MR. TURLEY:  No.  You've got the Running Resume over

2    here -- and by the way, the City counsel asked for the Running

3    Resume, and what they were given was something that was not

4    the Running Resume of the JOCC.  It was actually the Running

5    Resume of the special services, and the District never told

6    them that this -- there was another Running Resume that was in

7    fact relevant, and instead we got the same one.  And we

8    finally pressed them, counsel in both cases, and found out

9    that there were 12 copies of the real Running Resume that were

10   destroyed.  And when we asked for the radio runs --

11        THE COURT:  You say destroyed.

12        MR. TURLEY:  Well, that are missing, we assume are

13   destroyed because the District has just said that they have

14   disappeared.

15        And then when we finally get the radio runs, when

16   they are reproduced, we get a series of tapes that say that

17   there are two hours of time on tapes that only one hour is

18   present on, and when we look at those tapes, the same period,

19   the critical period of the arrests are missing.

20        I mean, not since Rose Mary Wood has there been a

21   more convenient gap in these tapes.  If you look at each of

22   these tapes, the very same period is missing.  And then you

23   had all the videos, thousands of pages that were --

24        THE COURT:  That's startling.  That's shocking.

25        MR. TURLEY:  And thousands of pages were produced

1    after discovery had run.  Your Honor, you practiced.  You

2    could imagine, as you've seen in our late notices, what a

3    lawyer would have done in deposition with these things.  So

4    what we're left with is basically depositions that, it turns

5    out, that there was a great deal of information for a host, if

6    not all of these witnesses, that we weren't able to ask about.

7    And Your Honor --

8              THE COURT:  You're going have your opportunity.  If

9    you want to redo that, you know, you're going to have it and

10   they're going to pay for every penny of that.  I'm not so sure

11   that's the most productive way, but I'm telling you right now,

12   you're going have to give some thought -- and I recognize

13   you're not in a position now to tell me what type of

14   additional discovery, but the City is going to pay for every

15   penny of reasonable expenses for additional discovery.

16             MR. TURLEY:  Well, I appreciate that, Your Honor.

17             THE COURT:  That's going to be more delay.

18             MR. TURLEY:  Yeah, we've been working on that, Your

19   Honor.  We actually think one of the most obvious -- Oh, yes,

20   I'm going to turn over to my co-counsel, but one of the more

21   obvious things that we are likely to suggest is that while we

22   stated that the Court should award discovery costs from 2007,

23   we believe the Court should consider forcing the payment of

24   all discovery because they have made all prior discovery,

25   which they drew out, to be virtually meaningless for us, and

1   we believe that a sanction --

2           THE COURT:  That may not be an unreasonable sanction

3   at all.

4           MR. TURLEY:  And perhaps that will return a level of

5   integrity to the system and may get the attention of people

6   above Mr. Koger to finance this case for the next round in a

7   proper fashion.  My co-counsel has asked to speak, so I'm not

8   going to delay any further.

9           But thank you, Your Honor.  We will be filing, as

10  you've noted --

11          THE COURT:  How much time do you need to sort

12  through what you received?  I'm not ruling out the possibility

13  or probability you may get some more information from them in

14  another day or two or so, you know, who knows.

15          Mr. Koger, your search is continuing, right?

16          MR. KOGER:  Yes, Your Honor.

17          MR. TURLEY:  We can probably file something with the

18  Court within two weeks, but I have to speak with my

19  co-counsel.

20          THE COURT:  That's about the time frame that I was

21  thinking.  So it would be your request for any additional

22  discovery, and I'm going to get to other issues and sanctions

23  and attorney's fees and everything else, but at the bare

24  minimum, you're asking for at least two additional weeks.

25          MR. TURLEY:  I believe so, but I haven't spoken with

1   our co-counsel, who may have scheduling issues.  But from our

2   standpoint in Chang, we can do that in two weeks, Your Honor.

3                THE COURT:  All right.

4                MR. TURLEY:  Thank you, sir.

5                THE COURT:  Counsel.

6                MS. VERHEYDEN-HILLIARD:  Thank you, Your Honor.  I

7   wanted to make a couple of additional points.  We represent

8   the class in this matter.  We also represent virtually every

9   single Plaintiff in the cases that Mr. Koger referenced, the

10  Bolger case, the IAC case, the Becker case, the Frucht case,

11  all of those cases.

12               THE COURT:  Right.

13               MS. VERHEYDEN-HILLIARD:  And in the Bolger case, as

14  Mr. Turley referenced, we have had issues in terms of

15  discovery sanctions and withholding and dilatory conduct and

16  misrepresentations to the Court from the OAG.  But the problem

17  that we have here, we believe, is not an issue of resources.

18  To be honest, Your Honor, we believe the issue is more

19  significant than that.

20               When it comes to the question that Your Honor asked,

21  which is, you know, how can we ever be sure that we ever have

22  everything, well, we know in fact that we can never have

23  everything because the District has acknowledged it has lost

24  and destroyed the critical operational material that was

25  created in realtime on the day of the events in question.

1    With reference to the Running Resume, not only were there --

2            THE COURT:  There's no way to replicate that with

3    all the technological experts.

4            MS. VERHEYDEN-HILLIARD:  Well, that's what I wanted

5    to --

6            THE COURT:  Because, you know, if there's a way,

7    then you should hire those experts and I'll pay for that, too.

8    No, the City will pay for that as well if there's a way to

9    legitimately go through the technology that the City employed

10   that day and recreate it, because what the experts tell me is

11   everything is there.

12           MS. VERHEYDEN-HILLIARD:  That would be exactly the

13   point I wanted to make in reference to what Mr. Turley was

14   saying.  He referenced the fact that there were 12 hard copies

15   of the Running Resume, the Running Resume being the backbone

16   document, the realtime entry of all the information from all

17   the different police agencies, all the sources, all at the

18   same time.  This is very detailed in the Barham motion for

19   sanctions.

20           But there were also two electronic automatic

21   redundant backups.  Those were both destroyed.  Those were

22   both destroyed as well as all the hard copies.

23           THE COURT:  When you say destroyed, what's the basis

24   for --

25           MS. VERHEYDEN-HILLIARD:  The District of Columbia

1   has represented that those electronic records no longer exist,

2   that they have searched, that they know the exact path where

3   those were located.  We deposed the operations informational

4   officer who is the one who told us that not only have there

5   been 12 copies, which were handed all the way up through

6   command staff, but that specifically the documents, the --

7            THE COURT:  When you say all the way up, does that

8   mean to the chief?

9            MS. VERHEYDEN-HILLIARD:  The chief of police has not

10  acknowledged receiving it, but in deposition after deposition

11  after deposition they stated that the chief of police would

12  routinely have received it, and the chief of police said he

13  may well have received it.

14           But here's the really important factor.  They

15  admitted in testimony, in deposition testimony that this

16  material is destroyed after a request had been made to deliver

17  the Running Resume to the general counsel for the MPD for the

18  purposes of this litigation.  There has been no investigation.

19  There has been no explanation.

20           When it comes to the radio runs, we have listened to

21  the radio runs.  We were delivered tapes.  We were told those

22  tapes were full.  We came back and we realized, after

23  listening to them, that they were missing time.  This court

24  entered an order in October of 2007, a court order telling the

25  District that they were obliged to explain the discrepancy and

1   the missing data on the tapes.  In response, the Office of

2   Attorney General filed a false affidavit with this court, a

3   materially false affidavit to explain away the Court's

4   questions.

5            We did subsequent depositions, and in our

6   depositions, the District of Columbia was forced to admit that

7   the tapes were not proper, that they were not complete.  The

8   District says that they have destroyed --

9            THE COURT:  The tapes were not --

10           MS. VERHEYDEN-HILLIARD:  Complete.  That the radio

11  runs that we have are in fact missing critical time.  The

12  first set they gave us was missing huge swaths of time at the

13  moment of the arrest, and I want to note not just one tape,

14  Your Honor, multiple tapes.

15           How do multiple different tapes, recording different

16  police channels, all lose data of time at the period of time

17  that the arrests are being made and the orders are being given

18  across multiple channels?  When we raised this issue, when

19  they were forced to file their false affidavit with the Court,

20  when we went back to them, they told us that they had

21  destroyed the master tapes and they could only operate from

22  the copies, so there was nothing more they could do.  Then

23  suddenly --

24           THE COURT:  And this was what, two or three years

25  after the event?

1    MS. VERHEYDEN-HILLIARD: Right. That's right. Then

2  suddenly they deliver to our office new tapes that had more

3  time on them with more explanation as to where more time can

4  come from since they said they only had one set of copies and

5  destroyed the masters. But the tapes that had more time

6  across multiple channels, once again, are still missing

7  seconds and minutes at the time of the arrests.

8    I mean, it is as if, as Mr. Turley said, you know,

9  Rose Mary Wood was leaning backwards and deleting one tape

10  with eight arms. I mean, this is multiple, multiple tapes.

11  You cannot inadvertently lose this.

12    In this manner, again, and we believe this is very

13  critical, the District of Columbia's deponent admitted that

14  they delivered the tapes to the MPD general counsel's office

15  within one week of the arrests. Now, when we filed our motion

16  for sanctions and we've raised these issues with the District

17  and we put it before the Court, they did not come back and

18  say, "We're outraged, we're shocked, we can't believe this

19  happened, we've engaged an internal investigation."

20    The Attorney General of the District of Columbia,

21  Peter Nickles, has not engaged in an internal investigation as

22  to what happened. With all due respect to Mr. Koger, I don't

23  believe this is an issue of District resources.

24    THE COURT: I want this -- I will say this now. I

25  want Mr. Nickles to file a declaration in this case addressing

1  all of these issues that you've raised and addressing the

2  issue that Mr. Koger highlighted about the fact that he has to

3  personally go through all these files, no additional help.  I

4  need a declaration from the man at the top, Mr. Nickles.

5         MS. VERHEYDEN-HILLIARD:  We would appreciate

6  explanation, Your Honor.  We don't believe -- the questions

7  that Your Honor raises are absolutely valid questions.  One,

8  how can we ever know that we've received everything, and

9  indeed we know that --

10        THE COURT:  I don't think we will ever know.  I

11  don't have any confidence right now that we'll ever know that

12  all discoverable material has been produced.

13        MS. VERHEYDEN-HILLIARD:  Well, we know in fact that

14  it hasn't because on those pages that we just got last night,

15  they reference red line versions of memos that went back and

16  forth.  The e-mails themselves show attachments, but we

17  weren't given the attachments, so right there, with these

18  materials last night, we know there's even more.

19        With each new set of materials they've given us in

20  the last seven days, all of those materials have indicated and

21  referenced further material and further discovery, so we can

22  engage in six more months of discovery and at the end of that

23  time, where will we be?  I mean, our clients are so --

24        THE COURT:  This is not going to cost you any money

25  because the City is going to pay for it.  I mean, that's not

1  much comfort, but some comfort.

2          MS. VERHEYDEN-HILLIARD:  Well, we appreciate that

3  because we believe that the City has engaged in a practice of

4  really a war of attrition and scorched earth litigation in

5  this case.  They have drawn it out and drawn it out and at the

6  same time destroyed and lost the critical fundamental evidence

7  to what went on.

8          I mean, to lose the realtime documents, and then in

9  their responses they say, "Well, you should just rely on

10 Defense witnesses' statements."  We should not have to rely on

11 self-serving Defendant statements.  What we should have had is

12 the records of what was being said and what was being done at

13 the moments in time on that day.

14         I wanted simply to be able to raise those issues

15 with Your Honor.  We are evaluating the issue of sanction as

16 well and what in fact would resolve things.  There is the

17 issue of additional discovery because there's a host of issues

18 raised, including intelligence gathering on the protesters in

19 material that was just released last week as well as material

20 that was specifically requested by name in February 2004 and

21 that the District never produced to us until the night before

22 deposition, the last day of discovery, which never allowed us

23 then to discover that material, and again, goes back to the

24 fact we do not believe it's an issue of resources.

25         In February 2004, the Barham plaintiffs specifically

1    requested what's known as the Broadbent files, which we knew

2    were intelligence files.  They said they didn't have them,

3    they didn't have them, they didn't have them.  I mean, it's a

4    specific request.  It wasn't a general request.  And then at

5    the last day of discovery and then the week afterwards, they

6    began trickling out papers to us, and we could do nothing more

7    with those documents.

8              With regard to the field arrest forms.  They

9    arrested 400 class members in this case, and we did not have

10   field arrest forms, and we kept asking for field arrest forms.

11   The District said they didn't have them.

12             THE COURT:  All this discovery shortcomings have

13   been appropriately documented in previously filed motions by

14   Plaintiffs, so it comes as no surprise.  None of this is any

15   surprise to the City.

16             MS. VERHEYDEN-HILLIARD:  That's right.

17             THE COURT:  I want Mr. Nickles himself, under

18   penalty of perjury, to address all of those shortcomings, the

19   reasons for those shortcomings and his plan that he's going to

20   personally put in place for completion of all discovery in

21   this case and for whatever his proposal is that will give not

22   only this court but the parties and the citizens of the

23   District of Columbia the confidence that they need to have

24   that all discoverable material has been produced to

25   Plaintiffs.  That's the burden on Mr. Nickles himself to do

1    that, and I want that done no later than two weeks from today.

2    I'm not going to extend the time for that.

3           Now, the question I have of Plaintiffs' counsel is

4    do you want to wait and get that information before you tell

5    me how you wish to proceed?  I'm not trying to build in

6    further delay, but I'm going to be as innovative as I possibly

7    can also in structuring sanctions, attorney's fees and an

8    appropriate plan to at least complete discovery in this case.

9           MS. VERHEYDEN-HILLIARD:  Thank you, Your Honor.  And

10   I would need to consult with Chang counsel as well as my

11   co-counsel.

12          THE COURT:  Right.  The other question I want to

13   raise now is why there haven't been any investigations by the

14   city government into any of this.  Why hasn't the City council

15   looked into any of these very serious problems that have been

16   raised, appropriately so, time and time and time again by the

17   Plaintiffs?  There has been no oversight by anyone.

18          The Attorney General's office is in charge of this.

19   No one has sought to intervene, to investigate, to ask

20   questions why these discovery problems have existed for so

21   long.  I submit the city council has an obligation, the

22   mayor's office has an obligation to the citizens of the

23   District of Columbia, if no one else, to ensure that its

24   Office of Attorney General is functioning at the level of

25   professionalism that the citizens of D.C. are entitled to.

1           And it's shocking that no one has attempted to

2      exercise any oversight responsibility into the many serious

3      shortcomings of the Office of the Attorney General of the

4      District of Columbia.  And quite frankly, I'm not going to

5      tolerate it.

6           Now, if I have to get involved and appoint someone

7      to start investigating, I'll do it.  I would prefer not to.  I

8      will leave it up to the City to exercise appropriate oversight

9      responsibility, but this nonsense is going to stop and it's

10     going to stop soon.

11          Now, my question to you, and maybe I need to take a

12     short recess to let you huddle with your colleagues, as to

13     whether or not you want that declaration from Mr. Nickles

14     first before you tell me how you want to proceed or whether

15     you want to submit your declaration -- your proposal in two

16     weeks.  You may want to think about that and talk about it

17     with your colleagues for a few minutes, but you know, this is

18     going to come to an end.

19          Either this case is going to be settled soon on

20     terms that are fair to everyone, or discovery is going to be

21     settled but moved to the next wrung, but I am determined that

22     I'm going to bring about finality in this case, if the case is

23     not settled, just as soon as I possibly can.

24          And again to Plaintiffs, whenever you file your

25     declaration -- I'm going to address the other pending issues

1    when I come back.  Whenever you address the issue of sanctions

2    and attorney's fees, I strongly suggest to you that you be as

3    innovative in your request for appropriate sanctions,

4    financial and otherwise, because it's appropriate that the

5    Court impose significant sanctions to deter this type of

6    outrageous conduct by the City's attorney's office in the

7    future.

8              Let me take a short recess, and I want your best

9    thoughts about how you would like to proceed and then I'll

10   deal with these other issues that are pending before the Court

11   at this point.

12             MS. VERHEYDEN-HILLIARD:  I believe we'll only need a

13   couple of minutes.

14             THE COURT:  I'll take a recess until noon.  That

15   clock is showing ten minutes till noon.  I'll take a recess

16   until noon, and I'll address the other matters that are

17   pending as well.

18             THE DEPUTY CLERK:  This honorable court now stands

19   in short recess.

20             (A BRIEF RECESS WAS TAKEN.)

21             THE DEPUTY CLERK:  This honorable court is again in

22   session.  Please remain seated.

23             THE COURT:  All right.  Counsel.

24             MS. VERHEYDEN-HILLIARD:  Thank you, Your Honor.  I

25   consulted with my co-counsel in Barham as well as with Chang

1  counsel.  We would like to file, in two weeks, our request to

2  the Court regarding the discovery issues, and we also would

3  like to see in two weeks, as Your Honor had recommended, the

4  response from the Attorney General.  We don't need to see it

5  first.  We think they should just both be filed.

6          THE COURT:  You want a chance to respond to his?

7          MS. VERHEYDEN-HILLIARD:  We would like to respond to

8  his.

9          THE COURT:  All right.  So then the declaration by

10  Mr. Nickles is due two weeks from today, and Plaintiffs'

11  request for additional discovery, two weeks from today.  Let's

12  see, that's -- today is what, the 29th?  It's the 12th and

13  you would like a couple of weeks after that to respond to

14  whatever Mr. Nickles says?

15          MS. VERHEYDEN-HILLIARD:  Yes.

16          THE COURT:  All right.  The 26th for Plaintiffs'

17  reply.

18          MS. VERHEYDEN-HILLIARD:  Thank you, Your Honor.

19          THE COURT:  All right.  And again, the declaration

20  for Mr. Nickles has to address the pattern of shortcomings,

21  the pattern of discovery abuses in this case and his plan for

22  concluding discovery and to also give this court and the

23  parties and the citizens the comfort that they need to know

24  that all discoverable material has been turned over.  Simple

25  as that.

1          Yes, Counsel.

2          MR. TURLEY:  I just wanted to note that we're

3   prepared also in two weeks to be -- have our motion cover

4   sanctions as well as --

5          THE COURT:  I'm going to address that in just a few

6   minutes, all right.  I'm going to address everything else

7   that's pending right now.

8          MR. TURLEY:  Thank you, Your Honor.

9          THE COURT:  There may be a need to talk again.  I

10  want to deal with the other miscellaneous outstanding matters.

11         Earlier this year, the Court, March 30th, to be

12  exact, the Court granted the Rule 68 Plaintiffs' motion for

13  attorney's fees with a reasonable amount to be determined by a

14  supplemental order of the Court.  I'm going to refer that.  I

15  have enough on my plate right now.  I'm going to refer that to

16  Judge Kay for a report and recommendation on the reasonable

17  amount of attorney's fees.

18         MS. VERHEYDEN-HILLIARD:  May I make one request with

19  regard to that?

20         THE COURT:  Yes.

21         MS. VERHEYDEN-HILLIARD:  The District, in its

22  opposition, said that they believe the Plaintiffs were

23  entitled to, I believe, $97,000 in attorney's fees, so that's

24  not in dispute.  So, we would request that they pay that

25  amount while the Court refers the additional amount which is,

```
 1    I think, at approximately another 130,000.

 2             THE COURT:  All right.  Any problems with that, Mr.

 3    Koger?

 4             MS. EFROS:  May I, Your Honor?  We would appreciate

 5    the referral to Judge Kay.

 6             THE COURT:  What about the amount of 97,000?

 7             MS. EFROS:  We would prefer not to do an interim

 8    award at this point.  We would rather have the issue resolved

 9    in totality.

10             THE COURT:  All right.  I'm going to direct the City

11    to issue a check within 10 days from today's date.  If it's

12    not issued, there'll be other sanctions.  For any amount in

13    excess of $97,000, that's referred to Judge Kay for report and

14    recommendation.

15             The Court also, in early March -- strike that --

16    May, granted in part and denied in part Plaintiffs' motion to

17    compel against the District and the FBI respectively.

18    Documents have been produced for in camera review and that

19    issue will also be referred to Judge Kay for determination of

20    what if any of those documents should be produced.

21             There are two motions for leave to file surreplies,

22    one by the Chang plaintiffs in relation to the OAG officers'

23    motions for judgment on the pleadings and one by the FBI in

24    relation to Barham plaintiffs' motion to compel.

25             (PHONE RINGING.)
```

1         THE COURT:   That's the daily telephone call.

2         The Court will grant both of those motions, and the

3    surreplies are deemed filed.   Let me just say one thing,

4    though, loud and clear about surreplies.   I'm not going to

5    tolerate them anymore.   There will be no further surreplies

6    filed in these cases.   I can't think of one motion by anyone

7    that's been filed that has not been accompanied at some point

8    by someone filing a motion to file a surreply.   That's not

9    going to happen.   That's it.   No more.

10        The parties are admonished that future requests to

11   file surreplies will be viewed with extreme disfavor, and if I

12   have to impose sanctions, I don't care who it's on, Plaintiffs

13   or Defendants, I'll do it.   I'll only grant future requests

14   for leave in exceedingly narrow circumstances such as a change

15   in the law or newly discovered information.   Any new arguments

16   made in replies and/or proposed surreplies that could have

17   been made in the original motion or response will result in

18   the striking of pleadings and other appropriate remedies,

19   which could include, again, sanctions, so a hint to the wise

20   should be sufficient.

21        The Barham Plaintiffs' motion to compel the FBI

22   search -- the FBI to search its record for references to the

23   named Plaintiffs, that -- I'm going to grant that motion.

24   It's troubling that in one case someone was attempting to

25   cross a border and my recollection is his name showed up in a

1   database somewhere.  It's no hardship at all for the FBI to

2   have a technician push buttons for databases to determine

3   whether any of these databases have identifiable records for

4   these Plaintiffs, so substantially for the reasons advanced by

5   the Plaintiffs, the motion is granted.

6           The FBI is directed to run the names of the named

7   Plaintiffs through the data sources identified by Plaintiffs

8   and to disclose any positive results from the search regarding

9   the, quote, maintenance and use and dissemination, including

10  intelligence-related use and dissemination of information and

11  data related to the persons arrested on September 27, 2002 in

12  connection with the Pershing Park mass arrest, and this is

13  through the context of Rule 30(b)(6) depositions or in

14  communications between counsel.

15          These searches must be conducted and the results

16  disclosed to Plaintiffs by no later than September 30th,

17  2009.

18          Now, I want to be fair about that, though.  In the

19  event there's a search and the search reveals that -- reveals

20  privileged information that should not be disclosed to

21  Plaintiffs, then I direct the FBI to bring that information to

22  the Court's attention for appropriate consideration by the

23  Court.  So I'm not -- I'm mindful that people could be the

24  subject of other appropriate investigations, and I'm not

25  trying to interfere with that.  I'm not suggesting that that's

1    the case, but I'm also mindful that since we're dealing with

2    the FBI, it's extremely possible.

3           The motions for judgment on the pleadings, we're not

4    there yet.  They've been fully briefed, they're ripe and at

5    some point, if the case doesn't settle, the Court will have to

6    address and resolve that motion, those motions and potentially

7    other motions filed by Plaintiffs, although my preference

8    would be to go to trial.  You know, if it's appropriate to

9    carve out some time for Plaintiffs to file appropriate

10   potentially dispositive motions, then the Court will do so, so

11   I'll keep those motions under advisement.

12          Now, motion for sanctions.  To the Plaintiffs, don't

13   get surprised at what I'm about to say, but I'm not

14   back-peddling from anything I said earlier.  But in light of

15   the notices filed by Plaintiffs on the afternoon of

16   July 27th and the evening of July 28th, it's patently

17   obvious to the Court that the District's discovery violations

18   are still a very unfortunate live issue, and as a result, the

19   issue of the appropriate sanctions is not yet in a posture for

20   resolution.

21          There's no alternative at this point.  I mean, I

22   recognize arguments made by Plaintiff for sanctions up to this

23   point, but there's no alternative but to deny, without

24   prejudice, that request because I want to give Plaintiffs the

25   best opportunity to roll all their arguments into one pleading

1   for appropriate sanctions and subject to renewal after the

2   Plaintiffs have had an opportunity to review any newly

3   produced evidence and determine whether additional discovery

4   is needed.

5           Now, the Plaintiffs asked for two weeks a few

6   minutes ago, and that's fine, if that's all you want.  My --

7   I'm not so sure two weeks is appropriate, because I want your

8   best arguments for not only the sanctions that you requested

9   up to the point of your filing of motions, but sanctions for

10  any conduct that you believe is sanctionable since the filing

11  of those motions.  So the question to you is, how much time do

12  you really need?

13          MS. VERHEYDEN-HILLIARD:  Court's indulgence.

14          (PAUSE.)

15          MS. VERHEYDEN-HILLIARD:  Thank you, Your Honor.  We

16  would like to file our filing in two weeks with regard to the

17  discovery issues and 45 days with regard to the sanctions.

18          THE COURT:  All right.  Now, you're going to have to

19  file a new pleading.  I mean, basically it may be, you know,

20  paste from the other pleading and incorporate all your new

21  arguments, but I want one pleading that has your legitimate

22  requests for sanctions for all the conduct that you believe is

23  sanctionable.

24          MS. VERHEYDEN-HILLIARD:  Yes, Your Honor.

25          THE COURT:  And I haven't determined whether I'll

 1  enlist the aid of one of my magistrate judges to assist me

 2  with that, but I want your best thoughts and I want your --

 3  for all the sanctions that you want, which could be financial

 4  and otherwise.

 5          So, you want 45 days from today's date to file your

 6  renewed motion for sanctions then, correct; is that right?

 7          MS. VERHEYDEN-HILLIARD:  Yes, Your Honor.

 8          MR. TURLEY:  Yes, Your Honor.

 9          THE COURT:  That takes us to -- let me ask you about

10  this, Leah.

11          (PAUSE.)

12          THE COURT:  All right.  I haven't done the math.

13  What's 45 days, Counsel?  Today is what?  What is today, the

14  29th?  I mean, 30 days -- Let's do it the easier way.  30

15  days would be August the 29th.  What's today, the 30th?

16  Today is the 29th.  30 days would be -- August the 29th, so

17  we're looking at what, September the 15th or so?  I mean,

18  it's roughly 45 days; is that right?

19          MS. VERHEYDEN-HILLIARD:  Yes, Your Honor.

20          MR. TURLEY:  Yes, Your Honor.

21          THE COURT:  All right.  September 15th.  How much

22  time for the City to respond?  I'm not going to extend time.

23  I'm just not going to do it.  There's going to be a new

24  attitude by the Court with respect to requests to extend time.

25  I mean, we're inundated with requests to extend time and also

```
 1    for these motions to file surreplies.  That's all history.  So
 2    how much time do you need?  30 days?
 3              MR. KOGER:  We would ask 30 days, Your Honor.
 4              THE COURT:  All right.  October the -- October the
 5    15th.  And then I'll give you two weeks for reply.
 6              MR. TURLEY:  Thank you, Your Honor.
 7              THE COURT:  All right.  And your discovery request,
 8    though, you still want two weeks from today.  That's all.
 9              MR. TURLEY:  Yes, Your Honor.
10              THE COURT:  All right.  And I gave you a date
11    certain with respect to that.
12              And if someone didn't hear it earlier, the City's
13    going to be responsible for all costs associated with future
14    discovery, future discovery that's required as a result of the
15    discovery problems that have surfaced over the past week, all
16    right.  And it may well be they're entitled to pay for any
17    additional discovery, I don't know.  I don't know.  If there's
18    some link between additional discovery and shortcomings in the
19    past, then they're going to pay the freight on that.
20              MS. VERHEYDEN-HILLIARD:  And we just wanted to
21    clarify, Your Honor, that any future discovery is discovery
22    that the Plaintiffs are taking, not that the Defendants --
23              THE COURT:  Oh, Defendants don't get anymore
24    discovery, no.  The City gets absolutely no discovery.
25              MS. VERHEYDEN-HILLIARD:  Thank you, Your Honor.
```

1    MR. TURLEY:  Thank you, Your Honor.

2    THE COURT:  All right.  Anything further?

3    MS. VERHEYDEN-HILLIARD:  Not from Plaintiffs.

4    THE COURT:  Mr. Koger, in fairness, any additional

5    requests?

6    MR. KOGER:  No, Your Honor.

7    THE COURT:  All right.  Do I need to set another

8    status hearing date?  I probably should.  What makes sense

9    here?  What's your best thoughts about when the status hearing

10   should be?  You have a lot of work to do, discovery requests.

11   Actually, I don't know, what makes sense here?  September?

12   MR. TURLEY:  Your Honor, it may --

13   MS. VERHEYDEN-HILLIARD:  One moment.

14   MR. TURLEY:  I'm sorry, we're just having to confer,

15   Your Honor.

16   THE COURT:  Sure, sure.

17   (PAUSE.)

18   THE COURT:  I need to focus on discovery, so that's

19   the date I'm looking at.  I need some time in September to

20   look at that myself, so maybe the latter part of September.

21   MR. TURLEY:  Your Honor, we think that perhaps a

22   September status hearing date would be appropriate in this

23   case.

24   THE COURT:  I think so.  I'm looking at September

25   the 29th.  That will give -- you're filing yours in two

```
1   weeks, the City's going to respond to that.  I need some time

2   to think about it.

3              MR. TURLEY:  That's fine with Plaintiffs, Your

4   Honor.

5              THE COURT:  September the 29th at 11:00 o'clock.

6   Is that a good date for the City?

7              MR. KOGER:  Yes, Your Honor.

8              THE COURT:  All right.  All right.  Anything

9   further?

10             MR. KOGER:  Thank you, Your Honor.

11             THE COURT:  All right.  Parties are excused.  Thank

12  you.  No need to stand.  Thank you.

13             (PROCEEDINGS END AT 12:07 P.M.)

14                       *-*-*-*-*

15

16

17             **CERTIFICATE OF REPORTER**

18        I, Catalina Kerr, certify that the foregoing is a

19  correct transcript from the record of proceedings in the

20  above-entitled matter.

21

22

23  _____   _____

    Catalina Kerr                      Date
24

25
```