UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAYMING CHANG, et al.,

    **Plaintiffs,**

    v.           Civil Action No. 02-2010 (EGS/JMF)

UNITED STATES, et al.,

    **Defendants.**

**MEMORANDUM ORDER**

There has been submitted for my *in camera* review of documents that the defendant, the District of Columbia ("the District"), claims are privileged. The documents made available to me either provide guidance to certain persons about their obligations to preserve evidence or ask the recipient to collect certain records. The only applicable privileges are the attorney-client and work-product privileges.

First, I have examined the documents and have found nothing in them that could possibly be described as disclosing or tending to disclose a confidential communication made by a client to an attorney for the purposes of securing legal advice or legal services. See In re Sealed Case, 737 F.2d 94, 98-99 (D.C. Cir. 1984). The attorney-client privilege is therefore inapplicable to these documents.

Second, to qualify for the work-product privilege as articulated in Rule 26(b)(3) of the Federal Rules of Civil Procedure, the document must be "prepared in anticipation of litigation or for trial by or for another party or its representative, including the other party's attorney." The privilege may yield to a showing of a substantial need for the material and an inability to secure it

without undue hardship. See Fed. R. Civ. P. 26(b)(3). See also Vento v. IRS, — F. Supp. 2d —, 2010 WL 2181312, at *11 (D.D.C. June 2, 2010) (citing Upjohn Co. v. United States, 449 U.S. 383, 400 (1981)). Even then, any court ordering disclosure must still "protect against disclosure of the mental impressions, conclusions, opinions or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(b). This work product, "which is often described as opinion work product, 'is virtually undiscoverable.'" United States v. Deloitte LLP, — F.3d —, 2010 WL 2572965, at *3 (D.C. Cir. June 29, 2010) (quoting Office of Thrift Supervision v. Vinson & Elkins, LLP, 124 F.3d 1304, 1307 (D.C. Cir. 1997)).

I.   Document Nos. 1 & 2[1]

Mysteriously, the District first claims a privilege designed to safeguard a lawyer's thinking to shield two General Orders written by two different chiefs of police of the Metropolitan Police Department ("MPD"), Turner and Ramsey. Turner is not a party to this lawsuit, and while Ramsey is a party, he wrote the General Order two years after the filing of this lawsuit. Furthermore, Ramsey did not prepare the General Order for the trial of this case but for distribution to all police officers to define their general obligation to preserve evidence "[t]o ensure the integrity of *any* criminal investigation . . . so that the prosecuting authority may disclose such material in a criminal judicial proceeding." Document No. 2 at 1 (emphasis added). To be shielded from disclosure under the work-product privilege, the document must be prepared because of the prospect of litigation. Deloitte, 2010 WL 2572965, at *10. While it could be said that the General Order was prepared in anticipation of the criminal cases that could potentially

---

[1] The documents attached to the District's Submission for In Camera Review in Response to June 29, 2010 Order of the Court as Exhibit 1 have been numbered sequentially by the Court, in the order submitted.

result from any arrests the Police Department made, such a broad definition would capture as privileged every direction given to police officers. In other words, their arrest powers always raise the theoretical possibility of a prosecution, even though there is nothing in these orders that could possibly risk the disclosure of a lawyer's mental processes. Furthermore, the District asserts a "privilege" over a document that is publicly available and apparently given to or accessible by every police officer in the District. Claiming privilege as to such a document trivializes the very privilege the District purports to rely on. The District shall therefore produce these documents to plaintiffs within ten days of the date of this opinion.

II.   <u>Document No. 3</u>

The next document is to Terry Ryan, the General Counsel of the MPD, from Len Becker, a member of what was then called the Corporation Counsel's office, transmitting the names of the "plaintiff arrestees in the Pershing Square case" and asking that the MPD find the records pertaining to them. While this document was created because of this litigation and technically falls within the work-product privilege as defined by <u>Deloitte</u>, it does not threaten any disclosure of Becker's thought processes whatsoever and does not disclose anything unknown. That the MPD was asked to produce the records pertaining to the plaintiffs' arrests is general knowledge. Where else would arrests records come from? I therefore find this a mistaken invocation of the privilege and conclude that it is unjustified. The District shall therefore produce this document to plaintiffs within ten days of the date of this opinion.

III.   <u>Document Nos. 4 & 5</u>

Document No. 4 is from Ryan to a police official indicating that Ryan believes that certain divisions within the MPD will have documents that are responsive to a subpoena

(attached to the document) issued by the Chair of the Judiciary Committee of the Council of the District of Columbia. Document No. 5 is from Ronald Harris to someone named Cheryl, asking that she submit a memo indicating that the individual who searched for records responsive to the subpoena certify to the completeness and thoroughness of their search. Both of these documents pertain to a hearing before the D.C. City Council. Defendants claim the work-product privilege as to both documents under Rule 26 of the Federal Rules of Civil Procedure, which provides in pertinent part that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3).

In this case, both documents were clearly created in response to the subpoena issued by the City Council, a legislative body that was investigating the same arrests that are the subject of the current lawsuit. Because the documents refers to the collection of information in compliance with a legislative subpoena, they were not prepared "in anticipation of litigation," a phrase that denotes an adversarial proceeding. See In re Rail Freight Fuel Surcharge Antitrust Litig., — F.R.D. —, 2010 WL 2265041 (D.D.C. June 7, 2010). As I stated in that case:

> The proper focus should be whether the proceeding required the lawyer to function as lawyers usually do at a trial so that the proceeding can be classified as "litigation." This properly segregates the transactional work of lawyers who draft contracts or provide legal advice from lawyers who have to represent clients before tribunals that have the power to adjudicate their clients' rights, whatever the nature of the proceeding. If the tribunal has the power to adjudicate those rights and demands that the party before it either make a certain showing or disprove a particular allegation, the process is adversarial by its very nature and surely qualifies as litigation. It is irrational to suggest that such a process can never be denominated as "litigation", no matter how severe its consequences, and even though the lawyer prepared for it and

>functions during it in the exact same manner as she would if the
>case were being tried to a jury.

Id. at *3.

In my view, the attorney work-product generated by responding to a legislative subpoena does not meet this criterion.  In addition, while the District opposes plaintiffs' motion to compel on the grounds that litigation hold letters are generally not discoverable, these are not litigation hold letters and therefore defendants failed to articulate any legitimate opposition to the discovery of these documents.  Finding, therefore, that the work-product privilege does not apply, the District shall produce these document to plaintiffs within ten days of the date of this opinion.

IV.     Document Nos. 6, 7, 8, & 9

In Document No. 6, dated March 12, 2004, the District's counsel transmits the plaintiffs' requests for production of documents to other District officials with directions as to what should be produced and an explanation of how a member of the Corporation Counsel's office would review the produced documents for privilege.  The author of the document also reminds the recipients of their preservation obligations.

Document No. 7, dated December 29, 2006, is also from the District's counsel.  It is addressed to the General Counsels of the MPD, D.C. City Council, the Chief Technology Officer, and the D.C. Superior Court.  In it, the District's counsel, Thomas L. Koger, advises the recipients of their obligation to preserve evidence relevant to plaintiffs' cases.

On January 7, 2009, Judge Sullivan issued a minute order wherein he directed plaintiffs to file their motions for sanctions for alleged discovery abuses by January 16, 2009, which in fact plaintiffs did.  See Motion for Sanctions [#418].  Therefore, Document Nos. 6 and 7 came into

5

existence prior to the developments that caused Judge Sullivan to become concerned about the unexplained loss of evidence, ultimately leading to the District's enlisting the assistance of Judge Sporkin (retired) and to my appointment as Special Master[2] by Judge Sullivan.

The last two documents, Document Nos. 8 and 9, came into existence after Judge Sullivan expressed his concern and took the actions described above.  In the first, dated August 5, 2009, Ryan asks the recipients to re-review all of the records their agencies have in their possession and in the second, dated July 1, 2010, the Attorney General for the District of Columbia advises the MPD Chief of Police of the precise nature of her employees' "ongoing obligation to preserve and produce agency information" in these cases.  It also gives specific direction as to what documents must be produced, if not already produced, and as to what information must be preserved, if not already preserved, with a particular emphasis on electronically-stored information.

These four documents can thus be categorized as directions from the District's counsel regarding the obligation District agencies had to produce and preserve the information demanded by plaintiffs' discovery and the information otherwise pertinent to the arrests made in Pershing Park on September 27, 2002, the day plaintiffs were arrested.

First, it is clear that the four documents fall within the definition of the privilege created by Rule 26(b)(3).  They were prepared by a lawyer for trial.  In other words, they were created for this litigation; they would not have come into existence if this litigation did not exist.

Second, it is also clear that plaintiffs have a substantial need for the documents.  Plaintiffs

---

[2] As Special Master, I have been tasked with ascertaining whether a referral for criminal prosecution is appropriate.

claim that the District destroyed certain evidence in this case, including 1) the International Monetary Fund ("IMF") September 27, 2002 JOCC Running Resume; 2) the IMF September 27, 2002 Recording of Radio Runs; and 3) the IMF September 27, 2002 Video Recordings. Litigation hold letters such as the ones at issue are thus clearly relevant to plaintiffs' claims of spoliation.  Conversely, these same documents may be used by the District as a defense to the claim, as proof, for example, that they took the appropriate steps necessary to preserve the relevant evidence once plaintiffs filed suit.

      Third, there is no reasonable alternative or substitute for the documents themselves.  See Fed. R. Civ. P. 26(b)(3)(A)(ii) (privilege yields to a showing of inability to secure substantial equivalent without undue hardship).  While the recipients of the documents at issue could be asked what they were told to do and what they were told to preserve, their recollection is no substitute for the contemporaneous direction they received, as memorialized in these documents. The recipients may in fact have no recollection of the documents, and then we would be back where we started.  See Reavis v. Metropo. Prop. & Liab. Ins. Co., 117 F.R.D. 160, 164 (S.D. Cal. 1987) ("Although [plaintiff] may be able to depose the insurance adjusters, and other claims representative who handled the claim, this may not be the substantial equivalent of the documentation contained in the claims files."); APL Corp. v. Aetna Cas & Sur. Co., 91 F.R.D. 10, 14 (D. Md. 1980) ("While plaintiffs could conduct their own interviews of the people in question, and might learn what they have previously stated to Aetna, it is not unlikely that the documents from Aetna's files reflecting its investigation of plaintiff's claim will themselves be capable of establishing in the most effective way what information Aetna had in its possession when Aetna decided to deny plaintiffs' claim."); Brown v. Superior Court In and For Maricopa

Cnty., 670 P.2d 725, 734 (1983) (holding that where plaintiff claims his insurer acted in bad faith, "[t]he claims file is a unique, contemporaneously prepared history of the company's handling of the claim" and "the need for the information in the file is not only substantial, but overwhelming.") (citing APL Corp. v. Aetna Cas & Sur. Co., 91 F.R.D. at 13-14).

  Finally, I am certain, beyond a reasonable doubt, that the disclosure of the documents will not risk the disclosure of any "mental impressions, conclusions, opinions or legal theories" of the District's counsel.  The documents are the type of directions that I would imagine every lawyer gives her client as to how to respond to discovery requests.  There is not a word in them that hazards any opinion, theory, or impression about plaintiffs and their case or could possibly be construed as a concession or admission by the District.  These documents do nothing more or less than set the standard by which the recipients were to comply with their discovery and preservation obligations.

  Indeed, I find the District's privilege claim as to these documents hard to understand.  I could imagine how the four documents would be exhibits one through four to a filing showing that counsel *had* correctly defined the District's discovery obligations.  That the District is claiming a privilege for innocuous documents showing that its counsel correctly defined a preservation obligation is mystifying.  Accordingly, the claim of privilege is rejected as to these documents, and the District shall produce them to plaintiffs within ten days of the date of this opinion.

  **SO ORDERED.**

_____
**JOHN M. FACCIOLA**
**UNITED STATES DISTRICT COURT JUDGE**