# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **RAYMING CHANG**, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 02-2010 (EGS/JMF) |
| ) | |
| v. ) | |
| ) | |
| **UNITED STATES OF AMERICA**, *et al.* ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

## DISTRICT OF COLUMBIA'S RESPONSES AND OBJECTIONS TO PLAINTIFFS' PROPOSED SUPPLEMENTAL WITNESS LIST

Defendant District of Columbia respectfully submits responses and objections to *Chang* Plaintiffs' Proposed Supplemental Witness List. The District initiated a conversation with Chang Plaintiffs several days prior to the deadline for their submission and informed Chang Plaintiffs that the District did not intend to object to the witnesses whose names Chang Plaintiffs had proposed at the most recent status hearing before the Special Master, and attempted to resolve issues about which there was disagreement between the parties. Though *Chang* Plaintiffs were unwilling to proceed in this manner, the District, for the most part, does not object to the witnesses suggested by Chang Plaintiffs. However, there are suggested witnesses about whom more lengthy discussion was necessary and others to which the District objects.

### RESPONSES AND OBJECTIONS TO PROPOSED ADDITIONAL WITNESSES

*Chang* Plaintiffs have proposed that the Special Master consider taking testimony from 8 additional witnesses. The District responds and/or objects as follows:

**1. Denise Alexander**

The District objects to this witness. *Chang* Plaintiffs' claims that Ms. Alexander is a "key witness" are inaccurate and mystifying in light of the fact that Ms. Alexander has already given sworn testimony in this case (she was deposed by *Chang* Plaintiffs on February 17, 2010), and her testimony made it undeniably clear that (1) her involvement with the audio tapes was limited to one night of listening to 3 cassette tapes and (2) she has no information whatsoever which would assist the Special Master in determining whether portions of audio tapes were edited or destroyed. The District urges the Special Master, where this witness or any other witness who has already given sworn testimony in this case is being considered as a witness for this investigation, to review the deposition testimony prior to making a determination as to whether the witness' testimony would be helpful or would waste the time and resources of the Court and the parties.

**2.  Organizational Designee Witness(es) Regarding Video**

The District objects to the proposal of "organizational designee witnesses" being offered to render testimony in this investigation. The District agrees that due to the fact that video-related issues were not addressed by Judge Sporkin, the current list of witnesses does not contain individuals with knowledge regarding this area. However, *Chang* Plaintiffs suggestion of the District being required to produce organizational designee witnesses is both improper and ill-motivated. Such witnesses are improper due to the nature of this investigation. As has been stated numerous times by the Special Master, over the strenuous objection of the District, there is a possibility that this investigation may lead to a criminal referral. Such a referral would, necessarily, relate to the conduct of individuals as the District of Columbia can neither be charged nor found guilty of a crime. It is the seriousness of such an endeavor that prompted the Special Master to require mere witnesses who either may or may not have useful information to

2

seek the advice of counsel prior to testifying.  Therefore, it is clear that no designee produced by the District should be required to offer testimony *on behalf of the District* for the purposes of this investigation stating what other individuals did and did not do.  Such testimony is conclusory and defeats the purpose of the investigation, which is to seek out the facts.  Such testimony is also unreliable when, as here, the individual witnesses about whose actions the designee would offer testimony are available to offer direct testimony themselves.

Such testimony is prejudicial to both the individual witnesses and the designee.   It is prejudicial to the individuals as they should be given the opportunity to testify for themselves as to what actions they did or did not take and what information they may or may not possess.  It is prejudicial to the designee—a government employee who had no involvement with the underlying facts of this case and is merely being called upon to speak on behalf of the District should not be placed in the position of needing to seek counsel or being advised by this Court of his or her right against self-incrimination.

*Chang* Plaintiffs show their true motivation by even making such a suggestion.  As they state in their filing, *Chang* Plaintiffs have had five different opportunities to take the deposition of the District of Columbia, through its Rule 30(b)(6) representatives, regarding issues related to video feeds and/or recordings—far more opportunities than is heard of in the context of civil litigation.  Indeed, *Chang* Plaintiffs may have "many questions [which] remain unanswered" within the context of the civil lawsuit.  However, this is due to their own failings, not that of the District.  Now, as discovery in the civil lawsuit remains ongoing, *Chang* Plaintiffs recognize their own shortcomings and seek from this Court a cure to their litigation failures.  Such motives are contrary to the goals and focus of this investigation. This case was referred to the Special Master for investigation into three discrete issues.  The investigation is to be impartial and separate from

the civil lawsuit. *Chang* Plaintiffs seek to thwart those purposes and replace truth seeking with their own agenda—even going so far as to write the Court's examination questions.

As of this date, the only facts that can be established in this case regarding video footage taken on September 27, 2002 involve footage taken by members of the Electronic Surveillance Unit of the Metropolitan Police Department. The District has provided to *Chang* Plaintiffs the names of the employees who took the footage at issue. *Chang* Plaintiffs have chosen not to depose those individuals. To the extent that the Court wishes to hear from witnesses regarding actual footage taken on the date in questions, those witnesses are Donald Yates, Jose Acevedo and Nathaniel Britt. The District submits that, rather than accepting *Chang* Plaintiffs baseless representations regarding what information these witnesses will be able to offer, the Special Master seek the information directly.

It is important to note that the Special Master has not been charged with proving *Chang* Plaintiffs case. They have had months to depose the MPD employees who assisted with rooftop surveillance. They have chosen not to do so. No evidence has been presented in this case to establish video recording on rooftops, or to establish digital recording in the JOCC of the feeds streaming from the cameras dispatched throughout the District. Therefore, *Chang* Plaintiffs would have the Special Master spend valuable time and resources proving that certain items existed in order to further prove that they were subsequently destroyed. Testimony as to the removal of trash and/or throwing away of videotapes by witnesses who never examined the contents and therefore cannot say that the materials related to an IMF *at all* should not be enough to justify such a tangential investigation. To the extent that the Special Master desired to hear testimony on this issue, it is the position of the District that the only appropriate manner to proceed is to seek the testimony of the individuals directly, not through a designee.

### 3. Bruce Koenig

Should the Court desire to retain a forensic expert to examine the video footage taken by the members of the MPD ESU, the District does not object. However, rather than retaining Bruce Koenig, whose company has a prior business history with counsel for *Chang* Plaintiffs, the District requests that the Court compile a list of potential vendors and then submit a budget to the parties for review, as is required by Judge Sullivan's Order of Appointment.

### 4. Kimberley Thorpe

The District does not object to the Special Master's consideration of taking testimony from this witness regarding matters about which she possesses personal knowledge. As stated above, Ms. Thorpe has been deposed, and the District requests that her testimony be reviewed by the Special Master before a determination is made as to whether she should be required to testify in this investigation.

### 5. Jim Costas

The District has no objection to the suggestion of Mr. Costas as a witness. However, Mr. Costas is not an employee of the District of Columbia and therefore, the District is unable to secure his availability.

### 6. William Ponton

The District objects to this witness. As *Chang* Plaintiffs' summary and Judge Sporkin's report make clear, this witness only offers his recollections of the manner in which the running resume was distributed generally. However, he offers no specific recollection of a resume being distributed for the events of September 27, 2002. Though the Special Master can certainly consider these statements for what they are worth, they do not aid in establishing facts with

respect to the particular running resume at issue. Therefore, taking testimony from this witness would not be the best use of the Special Master's time.

### 7. Michael Fitzgerald

This District has no objection to this witness should the Special Master choose to call him. The former Executive Assistant Chief of MPD is an individual defendant in this case and will be available to testify. However, the District submits there should be more bases for his testimony than the purely speculative testimony of two witnesses that Mr. Fitzgerald "likely" received a copy of a running resume. Mr. Fitzgerald has been deposed numerous times regarding this subject and has provided all information he possesses on this issue.

### 8. Peter Nickles

The District object to this witness. Attorney General Nickles, as the head of the Office of the Attorney General of the District of Columbia, is ultimately the lead counsel for all litigation matters in which the Office of the Attorney General represents the District of Columbia, as is evidenced by his name being the first one listed on each and every filing issued by the office. Taking sworn testimony from current counsel in this case would be inappropriate, and all questions regarding attorney-client communications or inner office deliberations would be met with privilege objections. *Chang* Plaintiffs are correct in stating that the Attorney General has submitted declarations to this Court. Those declarations speak for themselves.[1] Mr. Nickles, a high-ranking official who speaks on behalf of a District of Columbia agency, was not personally involved with and has no firsthand knowledge of the underlying facts regarding the existence of

---

[1] To the extent that the submission of a declaration summarizing actions taken by the declarant is a legitimate basis for justifying sworn testimony in this investigation, the District points the Special Master to the declaration of P.J. Meitl, counsel for *Chang* Plaintiffs, regarding his own review of evidence in the possession of the Council of the District of Columbia. Perhaps Mr. Meitl's testimony should also be of interest to the Special Master

the evidence at dispute in this case. Indeed, the operative timeline at issue was prior to the beginning of Mr. Nickles' tenure as Attorney General.

As was the case with Judge Sporkin's investigation, in which Judge Sporkin spoke informally with Attorney General Nickles as well as with counsel for Plaintiffs during the course of his investigation, Mr. Nickles is similarly available to the Special Master. However, the District submits that the taking of his sworn testimony would be unfruitful, and is both unnecessary and improper.

## PROCEDURAL MATTERS

The District urges the Special Master to take steps necessary to determine whether evidence was indeed destroyed in this case rather than focusing exclusively on who is responsible for the alleged destruction. Especially where the JOCC Running Resume is concerned, the issue of the existence of a preserved electronic copy is still very much an open question. Several months ago, Judge Sullivan considered at length the appointment of the firm Stroz Friedberg as a court-appointed expert to examine existing hardware and other electronic evidence at MPD Headquarters in order to determine whether the JOCC Running Resume can be located. The appointment was not made as the parties were ultimately unable to agree regarding scope and cost of the appointment. Knowing that the instant referral was a possibility and not wanting to disturb evidence which ultimately would need to be examined in the future, the District has not from hiring forensic experts of its own to examine the equipment. However, the Special Master has been given the authority to retain experts, within the confines of the procedure set forth in the appointment order. The District suggests either the interviewing or taking of testimony of essential IT Personnel in order for the Special Master to be informed of existing equipment, followed with selection of a forensic examiner and analysis of equipment. To the extent that a

backup electronic copy of the running resume is located, the parameters of the Special Master's investigation would change significantly.  The same can be said regarding forensic examination of the video and audio tapes.  In light of the fact that all three areas of investigation involve media equipment which has been potentially duplicated and/or stored in numerous different formats, in order to effectively fact-gather during witness testimony, it is critical to have the most information possible regarding the technical aspects of the case.

The District takes no position at this time on whether summaries by the parties or argument in open court may be useful at the close of the investigation.

Respectfully submitted,

PETER J. NICKLES
Attorney General for the District of Columbia

/s/George C. Valentine_____
GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ Monique A. Pressley_____
MONIQUE A. PRESSLEY [464432]
Senior Assistant Attorney General
Equity Section I
441 4th Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6610
Fax: (202) 741-0424
monique.pressley@dc.gov

/s/  Shana L. Frost_____
SHANA L. FROST [458021]
Assistant Attorney General

*Attorneys for Defendant District of Columbia*