# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
                                    )
RAYMING CHANG, *et al.*,             )
                                    )
          Plaintiffs,                )
                                    )
     v.                              )      Civ. Action No. 02-2010 (EGS)
                                    )
UNITED STATES, *et al.*,             )
                                    )
          Defendants.                )
———————————————————————— )

## <u>MEMORANDUM OPINION</u>

Pending before the Court is [574] Defendant District of Columbia's (the "District") motion for partial summary judgment on plaintiffs' claims for all equitable relief other than the expungement of their individual arrest records. The District moves for summary judgment on two alternative grounds. First, the District argues plaintiffs lack standing to seek prospective injunctive relief. Second, defendant claims plaintiffs are unable to seek this relief because they are bound by the proposed class settlement in the related case of *Barham v. Ramsey*, Civ. Action No. 02-2283 ("Barham"). On September 8, 2010, the Court ruled on the record in open court that plaintiffs were not bound by any of the provisions of the *Barham* class settlement. This Memorandum Opinion, therefore, addresses the remaining issue in the District's motion for partial summary judgment: whether plaintiffs have Article III standing to seek equitable relief. Upon consideration of the motion, the response and reply thereto,

the parties' supplemental briefing, the arguments of counsel at
the September 8, 2010 motions hearing, the applicable law, the
entire record, and for the reasons set forth below, the
District's motion for partial summary judgment is **GRANTED.**

## I.    BACKGROUND

This case is one of several which arose from events on
September 27, 2002, during demonstrations in the District of
Columbia protesting the policies of the World Bank, the
International Monetary Fund, and the United States government.
Chang Third Am. Compl. ¶¶ 42-43, 46.[1]  On that date, plaintiffs,
seven students from George Washington University, were among the
approximately 400 people arrested at or near a demonstration
taking place in General John Pershing Park ("Pershing Park"),
located on Pennsylvania Avenue, N.W., between 14th and 15th
Streets, N.W.  Third Am. Compl. ¶¶ 20-27, 75-82.  Plaintiffs were
present at Pershing Park either as observers for the National
Lawyers Guild or as journalists or photographers for *The Hatchet*,
a George Washington University student newspaper.  Third Am.
Compl. ¶¶ 15, 18, 75-82.  Plaintiffs allege that they were not
engaged in any unlawful activity.  Third Am. Compl. ¶¶ 75-82.

---

[1] Plaintiffs filed their Third Amended Complaint on July 19,
2005.  Doc. No. 153.  Plaintiffs moved for leave to file a fourth
amended complaint late in 2009; however, in June 2010 they moved
to stay their motion pending finalization of ongoing special
master proceedings and resolution of sanctions issues.  *See* Doc.
No. 572; Minute Order June 7, 2010.  Accordingly, the Third
Amended Complaint is still operative.

Nevertheless, police officers surrounded them and hundreds of others in Pershing Park, gave them no warning or order to disperse, and arrested them. Third Am. Compl. ¶¶ 76-82; *see also Barham v. Ramsey*, 434 F.3d 565, 569-70 (D.C. Cir. 2006) (finding that police gave no order to disperse, did not warn persons in Pershing Park that arrest was imminent, cordoned off the park, and arrested 386 people inside). Plaintiffs allege they were subsequently handcuffed, held on buses for up to 13 hours, and later detained at the Metropolitan Police Academy for up to 18 hours with one wrist cuffed to the opposite ankle. Third Am. Compl. ¶¶ 93-99.

Hundreds of other individuals were arrested and detained at various locations in the city during the September 27, 2002 protests, and several lawsuits followed. In addition to the *Chang* case, this Court presided over *Abbate v. Ramsey*, Civ. Action No. 03-767; *Barham v. Ramsey*, Civ. Action No. 02-2283; and *Jones v. Dist. of Columbia*, Civ. Action No. 02-2310, all stemming from arrests on that day. On September 24, 2003, this Court issued an Opinion and Order certifying a class action in the *Barham* case and acceding to the *Chang*, *Jones*, and *Abbate* plaintiffs' requests that they be permitted to opt out of the *Barham* class.

In the ensuing years, the plaintiffs in these other cases have settled their claims with the District. The *Jones*

plaintiffs settled in 2004. *See Jones*, Civ. Action No. 02-2310, Doc. Nos. 36, 40. The *Abbate* plaintiffs settled in January 2005. The *Abbate* settlement provides for monetary relief as well as equitable relief including, *inter alia*, revisions to the District's mass demonstration policing policies and practices. *See Abbate*, Civ. Action No. 03-767, Doc. No. 99. The *Barham* class reached a settlement agreement with the District in February 2010, which was preliminarily approved by this Court on March 30, 2010. *See Barham*, Civ. Action No. 02-2283, Doc. Nos. 595, 599. Among the equitable relief negotiated in the *Barham* settlement is the District's creation and implementation of a document management and retention system, which is intended to "ensure the preservation of records and documents arising from mass demonstrations and protests[.]" *Barham*, Civ. Action No. 02-2283, Settlement Agreement, Doc. No. 595-3 at 9.

There have been other changes impacting police policies and procedures during mass demonstrations over the last eight years as well. In 2005, the District of Columbia City Council passed the First Amendment Rights and Police Standards Act ("FARPSA"). *See* D.C. Code §§ 5-331.01, *et seq.* FARPSA includes provisions which (1) require the police to give clear and audible warnings to disperse at future protests and provide opportunities to exit protest areas; (2) prohibit arrest for parading or demonstrating without a permit; (3) prohibit wrist-to-ankle restraint of

4

persons arrested in connection with a First Amendment assembly;
and (4) require that persons arrested in connection with a First
Amendment assembly be released within four hours. *See id*.
Finally, in June 2010 another federal judge approved a class
action settlement in an additional protest case, *Becker v. Dist.
of Columbia*, Civ. Action No. 01-811. The *Becker* settlement also
contains equitable relief provisions, including mandatory
training for all District police regarding First Amendment
assemblies and mass demonstrations. *See Becker v. Dist. of
Columbia*, Civ. Action No. 01-811, Doc. No. 358-5 at 8-10.

In sum, while the other mass demonstration actions against
the District have settled, the *Chang* case continues. The
plaintiffs do not and never have sought preliminary injunctive
relief; instead, they seek permanent injunctive relief,
declaratory relief, and damages. Only the requests for
declaratory and injunctive relief, not including the expungement
of plaintiffs' individual arrest records, are at issue in this
motion.[2] Plaintiffs' requests for relief include: (1) an order

---

[2] The District does not move for summary judgment on
plaintiffs' claims for monetary damages. In addition, the Court
granted expungement of the *Chang* plaintiffs' arrest records in
2008. Specifically, the Court ordered that "[t]he arrests of the
*Chang* Plaintiffs on September 27, 2002 are hereby declared null
and void. Each of the *Chang* Plaintiffs are authorized to deny
the occurrence of his or her arrest that day, without being
subject to any penalty of perjury, fraud or other offense
premised upon misrepresentation or deception in response to any
query, whether posed orally or in writing[.]" *See* Doc. No. 381.

declaring that the arrest and confinement procedures utilized are unconstitutional; and, (2) a requirement that clear and audible warnings to disperse be given at future protests, with opportunities for individuals to exit areas of protest. *See* Third Am. Compl., Prayer for Relief ¶¶ a, b.  Elsewhere in their complaint, plaintiffs seek injunctive relief "to protect the plaintiffs and the public from the policy, custom and/or practice of using excessive force to prevent individuals from leaving trap-and-arrest zones," and "to protect the plaintiffs and the public from a policy, custom and/or practice of keeping arrested individuals in restraints or handcuffed for excessive periods[.]" Third Am. Compl. ¶¶ 3-4.  In their opposition to the District's motion for partial summary judgment, plaintiffs describe the relief they seek as "a consent decree that would provide an enforcement mechanism for illegal arrest practices."  Pls.' Opp'n at 22-23.

Since the commencement of the lawsuit, plaintiffs' numbers have dwindled to four. *See* Doc. No. 147 (dismissing plaintiff Enright's claims against the District); Doc. No. 190 (reflecting the acceptance of the District's offer of judgment by plaintiffs Chastain and Young); Minute Order April 4, 2006 (entering judgment on the claims of Chastain, Young, and Enright against the District); Minute Order May 10, 2006 (granting the motion of plaintiffs' counsel to withdraw as counsel for Chastain, Young,

and Enright).  In December 2009, the District filed a motion for
partial summary judgment regarding the remaining plaintiffs'
claims for prospective injunctive and equitable relief.  The
parties conducted limited additional briefing and presented oral
argument in early September 2010.  The District's motion is now
ripe for determination by the Court.

## II.  STANDARD OF REVIEW

The standards for summary judgment motions regarding
standing are the same as the standards for summary judgment
motions generally.  *See Lujan v. Defenders of Wildlife*, 504 U.S.
555, 561 (1992)("Since [the elements of standing] are not mere
pleading requirements but rather an indispensable part of the
plaintiff's case, each element must be supported in the same way
as any other matter on which the plaintiff bears the burden of
proof, *i.e.*, with the manner and degree of evidence required at
the successive stages of the litigation.")

Under Federal Rule of Civil Procedure 56, a motion for
summary judgment shall be granted if the pleadings, depositions,
answers to interrogatories, admissions on file and affidavits
show that there is no genuine issue of material fact, and that
the moving party is entitled to judgment as a matter of law.
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).
Summary judgment must be entered "against a party who fails to
make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The *Celotex* court explained:

> In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Id.* at 322-23 (quoting Fed. R. Civ. P. 56(c)).

## III. ANALYSIS

Defendant argues that the four remaining plaintiffs lack standing to seek prospective injunctive and declaratory relief because they cannot show a real and immediate danger that they will be subjected to the challenged conduct in the future. *See* Def.'s Mem. at 1-4; Def.'s Reply at 6-19. Plaintiffs make two substantive arguments in support of standing.[3] First, plaintiffs

---

[3] Plaintiffs also make an argument which can be characterized as procedural: they claim it is unnecessary for the Court to decide whether they have standing at this point in the litigation. Plaintiffs make two contradictory arguments on this point. First, they claim that the Court has already decided they have standing, and that this decision should be considered law of the case. Inexplicably, they then argue the opposite position and claim it would be premature for the Court to decide whether plaintiffs are entitled to equitable relief now ; instead, the Court should wait until after trial. *Compare* Pls.' Opp'n at 5-10 (claiming the Court has already found plaintiffs have standing) *with* Pls.' Opp'n at 28-31 (claiming "the Court is not required to address standing at this stage of the litigation").

Neither argument has merit. First, the Court has never addressed, much less decided, the standing issue. Standing arose

claim there is a genuine issue of material fact as to whether the
District continues to have a policy of permitting illegal mass
arrests which remains in place. *See* Pls.' Opp'n at 12-24.
Second, they claim there is a genuine issue of material fact that
they, personally, face a real and immediate threat of being
subjected to this policy in the future. *See* Pls.' Opp'n at 25-
27.

After careful consideration, and for the reasons set forth
below, the Court concludes that the four remaining plaintiffs
have not demonstrated that they are likely to suffer the same
injury again. Plaintiffs' arguments regarding ongoing District

_____

in two motions at the outset of this litigation, both of which
were denied without opinion and without prejudice in order to
move forward with other matters in this case as well as the other
protest cases described above. *See* Minute Order Sept. 29, 2003
and Doc. No. 68. Assuming *arguendo* that the Court had decided
the standing issue, such decisions are not law of the case - the
doctrine does not apply to interlocutory orders such as the ones
on which plaintiffs rely. *See Langevine v. Dist. of Columbia*,
106 F.3d 1018, 1023 (D.C. Cir. 1997) (interlocutory decisions not
law of the case).
    The Court also rejects plaintiffs' second procedural
argument: that the Court should wait to decide if plaintiffs have
standing to seek equitable relief until after trial. Standing is
"an essential and unchanging predicate to any exercise" of the
Court's jurisdiction. *Florida Audubon Soc'y v. Bentsen*, 94 F.3d
658, 663 (D.C. Cir. 1996) (quoting *Lujan*, 504 U.S. at 560).
Accordingly, the Court is obligated to satisfy itself that it has
jurisdiction over plaintiffs' claims for equitable relief. *See,
e.g.*, *Davis v. Fed. Election Comm'n*, 128 S.Ct. 2759, 2569 (2008)
("Standing is not dispensed in gross. Rather, a plaintiff must
demonstrate standing for each claim he seeks to press and for
each form of relief that is sought[.]" (quotations and citations
omitted)); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)
(ruling plaintiff had standing to pursue claims for damages but
not for prospective equitable relief).

policy are simply not determinative: without evidence that these plaintiffs, personally, are likely to be subjected to that policy again, they cannot meet the standing requirements for prospective relief. Accordingly, the District's motion for partial summary judgment is hereby **GRANTED.**

## A.    Constitutional Standing Requirements

In order to meet the "irreducible constitutional minimum of standing," a plaintiff must establish three elements. *Lujan*, 504 U.S. 560. Specifically, a plaintiff must demonstrate that (1) he or she has suffered an injury in fact; (2) the injury is traceable to the defendant's conduct; and (3) a federal court decision is likely to redress the injury. *See Northeastern Florida Contractors v. City of Jacksonville*, 508 U.S. 656, 663-64 (1993).

Plaintiffs seeking injunctive relief must establish a fourth element to have standing. They must show a "real and immediate threat of repeated injury" demonstrated by more than "past exposure to illegal conduct." *City of Los Angeles v. Lyons*, 461 U.S. at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974)). Unless a plaintiff can show he is "realistically threatened by a repetition of his experience [giving rise to the injury] . . . he has not met the requirements for seeking an injunction in federal court[.]" *Id*. at 109.

10

The parties agree that *Lyons* controls plaintiffs' request for equitable relief. *See* Def.'s Mem. at 2; Pls.' Supplemental Submission at 6. In *Lyons*, plaintiff alleged that he was stopped by the police, seized without provocation and put in a chokehold which caused him to lose consciousness and suffer permanent damage to his larynx. 414 U.S. 97-98. He sought both damages and an injunction barring the city from using chokeholds except in limited circumstances. *Id*. The Supreme Court found that Mr. Lyons' standing to seek prospective injunctive relief depended on "whether he was likely to suffer future injury from the use of chokeholds by police officers." *Id*. at 105. In support of his claim of standing, Mr. Lyons asserted that (1) he had been choked in the past; (2) city police regularly and routinely apply chokeholds with no provocation; (3) there had been at least 15 chokehold-related deaths; and (4) he "justifiably fear[ed] that any contact he ha[d] with Los Angeles police officers may result in his being choked[.]" *Id*. at 98. After consideration of these assertions, the Court concluded that plaintiff had failed to establish standing for prospective equitable relief. *Id*. at 108-109.

The *Lyons* court set forth several reasons in support of its determination that Mr. Lyons' allegations regarding the likelihood of a future encounter with the police were too remote to show standing. First, the Court noted, Mr. Lyons could not

have standing for injunctive relief unless he could show a likelihood of future injury to himself as an individual. *See id.* at 107-08 (citing *Rizzo v. Goode*, 423 U.S. 362 (1976); *O'Shea v. Littleton*, 414 U.S. 488 (1974)). Accordingly, whether other people might be victims of an unconstitutional chokehold in the future was irrelevant to the standing inquiry if the evidence provided by Mr. Lyons gave rise to "no more than speculation . . . that *Lyons himself* will again be subjected to one of these unfortunate instances." *Id.* at 108 (emphasis added).

Similarly, the Court found that Mr. Lyons could not establish standing based solely on evidence of a police practice of applying chokeholds absent evidence that he himself was likely to again be subject to that policy. *See id.* at 109 ("Lack of standing does not rest on the termination of the police practice but on the speculative nature of his claim that he will again experience injury as the result of that practice even if continued.").

Finally, the Court found that the evidence plaintiff provided regarding the likelihood that he would again be placed in a chokehold did not support standing. Specifically, the Court found that this likelihood rested on contingent events occurring at some time in the future: namely, that plaintiff himself would again be stopped by the police and would again be choked without any provocation or legal excuse. *See id.* at 106, 106 n.7. The

Court found this combination of events too speculative to support standing for injunctive relief. *Id.; see also, e.g.*, *United Transp. Union v. Interstate Commerce Comm'n*, 891 F.2d 908, 912 (D.C. Cir. 1989) ("[W]hen considering any chain of allegations for standing purposes, we may reject as overly speculative those links which are predictions of future events (especially future actions to be taken by third parties) and those which predict a future injury that will result from present or ongoing actions[.]").

### B. Plaintiffs Have Not Established a Genuine Issue of Material Fact that They Would Suffer Repeated Injury

Defendants argue that, as in *Lyons*, plaintiffs here have not established that they, personally, are likely to again be subject to the same conduct.[4] As a threshold matter, plaintiffs largely ignore this personal injury requirement and focus almost exclusively on whether the District had a policy of permitting illegal mass arrests, and whether that policy remains in place.

---

[4] The exact standard for judging likelihood of future injury is unresolved in this Circuit. *See Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corp.*, 28 F.3d 1268, 1274 (D.C. Cir. 1994) (noting that standard for future injury has been formulated as "likely," "fairly probable," and "certainly impending," among others) (citations omitted), *see also Haase v. Sessions*, 835 F.2d 902, 911 (D.C. Cir. 1987) ("real and immediate" or "realistic") (citations omitted). For the purposes of consistency, the Court will use the term "likely" or "likelihood" here; however, this is not meant as an endorsement of one standard over another. As discussed throughout, plaintiffs cannot establish standing under any of the above formulations.

The Court finds plaintiffs' discussions of the District's purported mass arrest policy to be largely misplaced. Even assuming that plaintiffs have demonstrated a genuine issue of material fact with respect to a prior and/or ongoing policy, that is insufficient, without more, to demonstrate standing. As discussed above, *Lyons* and its progeny clearly hold that, regardless of the existence of an unlawful policy, a plaintiff must show that he is sufficiently likely to be personally subjected to the challenged conduct again in order to have standing. *See Lyons*, 461 U.S. at 108-111 (even assuming illegal policy exists, plaintiff cannot establish likelihood that he will again experience injury as a result; accordingly, "he is no more entitled to an injunction than any other citizen of Los Angeles"); *Haase v. Sessions*, 835 F.2d at 911 ("plaintiffs must not only demonstrate [a policy's] existence but that they are likely to be subjected to the policy again"); *cf. Friends of the Earth v. Laidlaw*, 528 U.S. 167, 187-192 (2000) (if plaintiff can establish that he is likely to experience future injury at the time the lawsuit is filed, he has standing regardless of whether the defendant has ceased its practice or policy since the suit was filed). The existence of a policy, by itself, therefore, cannot substitute for a showing that a plaintiff faces a real threat that the policy will again be applied *to him.*

For the reasons discussed below, the Court finds that the four remaining plaintiffs in this case fail to make this crucial showing. Specifically, plaintiffs fail to create a genuine issue of material fact that they, personally, face a likelihood of additional injury similar to that alleged in their complaint.[5] In their opposition to the motion for partial summary judgment, plaintiffs provide a declaration from only one of the remaining plaintiffs, Chris Zarconi. Mr. Zarconi provides no information regarding his actions in 2002; his affidavit focuses solely on his life in 2010. He alleges that he "has worked, in addition to other jobs, as a professional photographer in the District of Columbia." Ex. 14 to Pls.' Opp'n, Declaration of Christopher Zarconi ¶ 3 ("Zarconi Decl."). He states that he is "often required to photograph events that take place throughout the District . . . very often these events occur at or near the

---

    [5] In their pleadings and at oral argument, both parties focused almost exclusively on events that have occurred since the lawsuit was filed. *See, e.g.*, Def.'s Mem. at 3-4; Pls.' Opp'n at 15-25; Def.'s Reply at 6-19. The Court is not persuaded that standing analysis should take into account, much less rest on events subsequent to the filing of the lawsuit. *See, e.g.*, *Davis*, 128 S.Ct. at 2769 ("while the proof required to establish standing increases as the suit proceeds, the standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed" (citing *Laidlaw*, 528 U.S. at 180; *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68, n.22 (1997))). However, as set forth herein, the Court concludes plaintiffs have failed to create a genuine issue of material fact that they had standing to seek prospective injunctive relief at any point in time, including when the suit was filed. It is therefore unnecessary to examine this issue further.

various national monuments or the various parks located throughout the City." Zarconi Decl. ¶ 5. He states "if I observe or am made aware that a newsworthy event is taking place, I will often seek to take photographs of the event." Zarconi Decl. ¶ 6. He then describes one of his current assignments.

> I was recently hired to photograph the university view book for The George Washington University. For this job, I will be required to take photographs of 4-6 students over an extended period of time. Each of the students is involved politically, socially, academically, and otherwise with the university and the community extensively. I expect to be out on assignment with them in the early spring [2010] at demonstrations or rallies for causes they support or with which they are involved.

Zarconi Decl. ¶ 7. He concludes: "based on what happened to me in Pershing Park in September 2002, and what I know about the lack of true reform instituted by [the District] I think it is entirely likely that I could be arrested again at a large demonstration, despite my having committed no unlawful act." Zarconi Decl. ¶ 9.

The kinds of assertions offered by Mr. Zarconi have been rejected by Lyons and its progeny as insufficient to establish standing. His assertions regarding his presence at additional demonstrations as a professional photographer require the occurrence of several contingent, future events: that Mr. Zarconi will be working as a photographer, that his clients will attend demonstrations or rallies and ask him to accompany them, and that he will be trapped and arrested without committing any illegal

activity or being afforded an opportunity to disperse.[6]  This
sequence of hypothetical future events is indistinguishable from
that found insufficient to establish standing in *Lyons*.

His remaining assertions are similarly deficient.  Mr.
Zarconi cannot establish standing to seek an injunction based on
"what happened to me in Pershing Park in 2002," Zarconi Decl. ¶
9; it is beyond dispute that "past exposure to illegal conduct
does not in itself show a present case or controversy regarding
injunctive relief . . . if unaccompanied by any continuing,
present adverse effects."  *Lyons*, 461 U.S. at 102 (quoting
*O'Shea*, 414 U.S. at 495-96).  Nor is his assertion that the
District has failed to institute "true reform" since 2002
sufficient to establish standing - again, it is no more than Mr.
Zarconi's conjecture of future injury resulting from what he
allegedly knows of present or ongoing actions within the police
department.  His remaining assertions are vague, unspecified, and
unsupported statements that, when he is aware "newsworthy events"

_____

[6] Mr. Zarconi's one semi-specific reference to future
activity — that he "expects" to be "on assignment" in spring 2010
with students "at demonstrations or rallies for causes they
support or with which they are involved," does not establish
standing.  Zarconi Decl. ¶ 7.  Assuming that Mr. Zarconi's
expectation that he will attend unidentified demonstrations or
rallies for unidentified causes that unidentified students
support or are involved with is sufficiently concrete, the Court
declines to find standing because, so far as the Court is aware,
*this is the first and only such reference to possible repeated
injury made by any of the plaintiffs in nearly eight years*.
Moreover, assuming Mr. Zarconi did attend such events in the
spring, they appear to have come and gone without incident.

are occurring, he often takes photographs of those events, and that he "plan[s] to continue to photograph various events" within the District.  Zarconi Decl. ¶¶ 6, 8.  These claims are simply insufficient to survive summary judgment.  *See Lujan*, 504 U.S. at 564 ("Such some day intentions, without any description of concrete plans, or indeed any specification of when the some day will be - do not support a finding of the actual or imminent injury that our cases require." (internal quotations and emphasis omitted)).

The Court is also troubled that plaintiffs' entire repeated injury argument rests on Mr. Zarconi's affidavit: *none* of the other plaintiffs provided an affidavit, declaration, or any other evidence to show they have standing.  Plaintiffs point out that if standing "can be shown for at least one plaintiff, [the court] need not consider the standing of other plaintiffs to raise that claim."  Pls.' Supplemental Submission at 7 (quoting *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1232 (D.C. Cir. 1996)).  While this is undeniably true, in view of the demonstrated insufficiency of Mr. Zarconi's claims, the lack of evidence from any other plaintiff is fatal.

**C.    The Authority Cited by Plaintiffs Cannot Overcome their Fundamental Failure to Demonstrate a Likelihood of Repeated Injury.**

Plaintiffs cite a number of cases from outside this Circuit where courts have found standing to seek equitable relief, and

they urge the Court to apply those cases here.  However, the
authority cited by plaintiffs is easily distinguishable from the
facts of this case.  First, the vast majority of cases cited by
plaintiffs are class actions.  *See, e.g.*, *Riggs v. City of
Albequerque*, 916 F.2d 582 (10th Cir. 1990) (lawyers, political
activists and politically active organizations subject to
surveillance by Albuquerque police department); *Illinois Migrant
Counsel v. Pilliod*, 540 F.2d 1062 (7th Cir. 1976) (Mexican
migrant agricultural workers in Illinois); *Franklin v. Chicago*,
102 F.R.D. 944 (N.D. Ill. 1984) (all persons arrested by Chicago
police and transported in squadrols).  Establishing repeated
injury for a class is obviously different than establishing it
for four individuals.

    Second, the threat of repeated injury in most of the cases
cited by plaintiffs rested on their *status*, not on their
*behavior*.  *See, e.g.*, *Thomas v. County of Los Angeles*, 978 F.2d
504 (9th Cir. 1992)(repeated injury based on race and national
origin); *Pilliod*, 540 F.2d at 1067 (persons subject to repeated
injury "simply because they appear to be of Mexican ancestry");
*Nat'l Cong. of Puerto Rican Rights v. City of New York*, 75 F.
Supp. 2d 154, 159 (S.D.N.Y. 1999)(repeated injury based on race
and national origin); *Maryland State Conference of NAACP Branches
v. Maryland Dept. of State Police*, 72 F. Supp. 2d 560 (D. Md.
1999) (repeated injury based on race and need to drive on

19

Interstate 95).  In these cases, the likelihood of repeated injury did not depend on a series of contingent future events, including some taken by third parties; it existed by virtue of an immutable characteristic.

Finally, the type of relief sought by the *Chang* plaintiffs is easily distinguishable from the relief at issue in the cases they cite.  In this case, plaintiffs seek, *inter alia*, "a consent decree that would provide an enforcement mechanism for illegal arrest practices."  Pls.' Opp'n at 22-23.  The Supreme Court has made it clear that this type of relief against a local police department is strongly disfavored.  *See, e.g.*, *O'Shea*, 414 U.S. at 502 ("A major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings is in sharp conflict with the principles of equitable restraint[.]").  By contrast, in many of the cases cited by plaintiffs, the courts emphasized the narrowness of the relief requested.  *See, e.g.*, *LaDuke v. Nelson*, 762 F.2d 1318, 1324 (9th Cir. 1985) (negative injunction which merely prohibited an unlawful behavior did not "entangle federal courts in the operations of state law enforcement and criminal justice institutions."); *Pilliod*, 540 F.2d at 1069 (requested injunctive relief was a cease-and-desist order, and did not attempt to impose "mandatory, comprehensive relief" that would inject the Court "into the day to day affairs or discretionary authority" of

the local government).  In sum, the Court cannot conclude that plaintiffs' authority is persuasive or that it allows the Court to disregard the plaintiffs' failure to prove an element of standing necessary for the type of relief they seek.

**IV.  CONCLUSION**

For the foregoing reasons, it is hereby ordered that the District of Columbia's motion for partial summary judgment is **GRANTED.**  An appropriate Order accompanies this Memorandum Opinion.

**SIGNED:     Emmet G. Sullivan**
             **United States District Court Judge**
             **September 19, 2010**