**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**RAYMING CHANG *et al.*,**

**Plaintiffs,**

**v.**

**THE UNITED STATES OF AMERICA *et al.*,**

**Defendants.**

**Civil No. 02-2010 (EGS/JMF)**

**MEMORANDUM OPINION**

In my Second Request for Guidance [#837], I summarized the events that have led to the most recent controversy as follows:

> On May 4, 2011 the District of Columbia advised the Special Master that a contractor for [a] company named NC4 had located data that had been entered into what is called the "E-Teams" server during the weekend of September 26-28, 2002, the weekend of the fall IMF meetings during which plaintiffs were arrested. Notice Regarding Fall 2002 IMF JOCC Running Resume Data [#779].
>
> The District reported that:
>
>> The NC4 contractor has booted the system, searched for target data and located the data that was entered into the E-Teams server during the Fall 2002 IMF Weekend. The contractor is reasonably confident that all data entered during the weekend has been located and is now accessible on the server.

> Id.
>
> That confidence was well placed. The District has now produced that data, a 4700 page document. Its discovery is significant because until May 2011, the parties believed that data produced by a second database system, the Group Ware system, was irretrievably lost, meaning that the document known as the Joint Operations Command Center ("JOCC") Running Resume could not be found. Its loss was, of course, one of the topics assigned for investigation by the Special Master by Judge Sullivan's Order of May 5, 2010. Order Appointing Special Master [#645] at 3. The E-Teams data therefore is the only repository of the contemporaneous entries made by its users during the weekend when plaintiffs were arrested.
>
> Several months later, however, at a July 12, 2011 hearing, the District reported that it was aware of an attempt on February 26, 2003, to delete data from the E-Team server. Since then, Marc A. Bynum, a systems administrator at NC4, has now been deposed and testified that he discovered such an attempt. Deposition of Marc A. Bynum (Aug. 23, 2011) at 15-16.
>
> Plaintiffs have now announced an intention to take discovery and have indicated its scope. See Chang Plaintiffs' Opposition to District Motion to Stay Discovery Regarding JOCC Running Resume Data Destruction at 1 n.1. The District of Columbia, for its part, has now moved that all discovery on this issue be stayed pending the investigation of this matter by the FBI and United States Attorney's Office to whom it has now referred the matter.

[#837] at 1-2.

On October 4, 2011, I denied the District's motion to stay. See Memorandum Order [#839]. Since then, the District appealed my order to Judge Sullivan. See District of Columbia's Objections to Order Denying Motion to Stay Discovery Regarding JOCC Running Resume Data Recovery. [#858].

Speaking to my responsibilities as Special Master, the District has requested Judge

Sullivan to relieve me of any responsibility to explore the JOCC Running Resume and to have me instead complete my findings of fact only as to the audio and videotapes that are also the subject of Judge Sullivan's May 5, 2010 order. Motion for Partial Reconsideration Regarding September 27, 2011 Minute Order and Motion to Stay or Close Further Proceedings Before the Special Master [#846] *passim*; Reply to Plaintiffs' Opposition to Motion for Partial Reconsideration Regarding September 27, 2011 Minute Order and Motion to Stay or Close Further Proceedings Before the Special Master [#863] at 9.

For their part, plaintiffs noticed the deposition of the District of Columbia pursuant to Rule 30(b)(6) but the District declined to permit any inquiry about the following topics:

> 1. Any access, observation, editing, deletion, destruction, tampering, or alteration of the E-Team System, software, and/or data between February 25, 2003, and February 27, 2003, or at any other time between November 1, 2002, and July 30, 2011.
>
> 2. All evidence of any editing, deletion, destruction, tampering, or alternation of the E-Team System, software, and/or data, including the "clear evidence that the E-Team's data files had been deleted by a user on February 26," 2003, as stated by District counsel in the July 12, 2011 Status Conference before the Court.
>
> 3. All communications concerning the "clear evidence that the E-Team's data files had been deleted by a user on February 26," 2003, including the rationale, justification, reasoning, and/or explanation for the nearly three month delay in transmitting such information to the Court and the *Chang* Plaintiffs.

Notice of Continuation of Rule 30(b)(6) Deposition [#830-1] at 3.

Plaintiffs move that the District be compelled to produce a witness who will testify as to these topics and the District cross moves for a protective order against having to do so. See

Motion to Compel the District of Columbia to Produce One or More Witnesses for Federal Rule of Civil Procedure 30(b)(6) Deposition Regarding the Attempted Deletion of E-Team Data [#830]; District of Columbia's Motion for Protective Order Precluding 30(b)(6) Deposition Regarding the Attempted Deletion of E-Team s Data [#841]. The District protests that the inquiry is irrelevant to the merits of this case and that it is impossible for the District's counsel to prepare for this deposition without (a) compromising the FBI investigation into the attempt to delete the E-team data files; and (b) jeopardizing the Fifth Amendment rights of a potential witness.

As to topic 3, the delay in counsel's advising the court and the plaintiffs of the deletion, the District protests that any such testimony will invade the attorney-client privilege it may have with the witnesses and the attorney work-product privilege as well. Thus, the District also separately moves to preclude a Notice of Deposition that seeks the testimony of Monique Pressley, who was the District's lead counsel in this case. District of Columbia Defendants' Motion for a Protective Order and to Quash Subpoena for Deposition of Lead Trial Counsel [#836].

Chang plaintiffs answer that this theoretical claim that the inquiry they seek may invade a privilege is groundless in that they seek only factual information pertaining to the deletion of the E-Team s data. Combined Reply in Support of Motion to Compel the District of Columbia to Produce One or More Witnesses for Federal Rule of Civil Procedure 30(b)(6) Deposition Regarding the Attempted Deletion of E-Team Data, and Opposition to Motion for Protective Order Concerning that same Deposition [#845] at 9. They urge the Court to permit the deposition and to let each privilege objection be made when the question is asked, rather than

barring the deposition altogether simply because there might be questions to which a legitimate privilege objection may be made. Id. at 10 n.12.

**ANALYSIS**

It must be recalled that this case has been proceeding on two parallel tracks and that I have been fulfilling two roles, that of special master and that of magistrate judge supervising discovery. Lest I invade Judge Sullivan's consideration of the District's motion to stay all aspects of the special master's work except my findings pertaining to the audio and videotapes, I will restrict myself to viewing the problems solely as the magistrate judge presiding over discovery.

First, as to relevance, I have already concluded in this very case that any discovery pertaining to the location of information and its loss that might yield a legitimate claim for sanctions is well within the scope of discovery permitted by Rule 26(b)(1) of the Federal Rules of Civil Procedure. See Memorandum Opinion [#604] at 2-3. I see no reason to revisit that conclusion and it applies here as well.

Moreover, any attempt to delete data from what is now the only source of information regarding the running resume may yield evidence of a consciousness of guilt by the person who did it that may be of important evidentiary significance at trial if his or her actions were done at the behest of an employee of the District or the individual defendants. See Kronisch v, United States, 150 F.3d 112, 126 (2d Cir. 1998) (intentional destruction of evidence supports inference that evidence would have been unfavorable to party responsible for its destruction); United States v. Marchesani, 457 F.2d 1291, 1298 (6th Cir. 1972) (proper to instruct jury on spoliation inference). The deletion might also be the source of a claim of spoliation of evidence that may

warrant the award of sanctions or serve as the premise of an independent spoliation claim if plaintiffs can secure Judge Sullivan's permission to amend their complaint. Thus, plaintiffs easily make the showing that the topics they have proposed will lead to relevant evidence or evidence that is likely to lead to relevant evidence.

It is, of course, true that the discovery of even relevant evidence can be prohibited by a protective order issued pursuant to Rule 26(b)(2)(c), when a careful balancing of the factors identified in subsections (i) through (iii) of that subsection of the rule indicate that the cost and burden of the discovery sought outweighs its utility. An analysis of those factors indicates that the District has failed to make its case that a protective order should issue. See Jennings v. Family Mgmt., 201 F.R.D. 272, 275 (D.D.C. 2001) (movant for protective order under Fed. R. Civ. P. 26(c) must establish good cause for order).

The first two factors speak to whether the discovery sought is cumulative or duplicative or can be obtained more cheaply or conveniently, and whether the party seeking the discovery has had an "ample" opportunity to obtain the information by other discovery. Here, since the deletion was not discovered until after discovery had ended, it was impossible for plaintiffs to direct any discovery to it during the discovery period. Nor is there any other way to get it than to ask the District, through a 30(b)(6) deposition, what its personnel know about how it happened. In that context, plaintiffs are correct to point out that witnesses whom the District identified when it asserted that they previously spoke to this issue did no such thing.

The District pointed to the testimony of three prior 30(b)(6) witnesses that the District had provided: 1) Giuseppe Crissafulli, 2) George Crawford, and 3) Leanne Turner. [#841] at 11. But, Turner indicated that she was not prepared to speak to the deletion of the E-Team data, and

Crissafulli and Crawford were deposed before the deletion was even discovered. [#845] at 6-7.

The District also noted that plaintiffs had the opportunity to depose Marc Bynum. [#841] at 11. However, while Bynum did detect the deletion, he, as a contractor, could not possibly know who may have done it and, as plaintiffs point out, Bynum limited his testimony to events that occurred after January 1, 2007, although the deletion occurred in 2003. [#845] at 6 n.8. Thus, this issue is a blank slate and plaintiffs should be permitted to pursue it.

The final factor is whether the utility of the discovery outweighs its burden and cost, considering the "needs of the case, the amount in controversy, the parties resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(C)(iii).

First, the amount in controversy is significant; a companion case settled for a very substantial amount of money. Second, a comparison of the parties' resources, those of a municipal treasury versus those of individuals, would seem to favor the individuals since the only cost will be the time that has to be spent by counsel and the witness at the deposition. Finally, I have already stated now on two occasions why I am convinced that discovery into the loss of information and its possible purposeful destruction are legitimate inquiries. Surely, with a sanctions motion looming that may result in a large award of attorney fees, or the District's being precluded from asserting a defense, introducing evidence, or being subjected to an adverse inference instruction, the issue of who deleted the data and when is crucial. Whether sanctions are appropriate is a decision that should be made on the basis of the best possible factual record. Thus the importance of the possible spoliation issue, and the obvious reality that there is no other way to explore the issue than by the discovery contemplated, makes for a most compelling

conclusion that the weighing of the pertinent factors favors permitting the discovery sought.

I appreciate that this case presents what one has to hope is a unique circumstance. There are not many cases where the FBI is investigating the same facts that are to be explored in discovery in a civil action. But, as plaintiffs point out, the potential complications that arise from this circumstance are at this point theoretical. I fully expect counsel for the District to advise any employee, whom it is going to interview about the possible criminal destruction of evidence, that he or she has the right not to incriminate himself or herself and, if necessary, secure for that person independent counsel if that person insists upon it. As I have pointed out, if at that point, the witness refuses to testify on the grounds that he or she might tend to incriminate himself or herself, there the matter will end and there is nothing any of us can do about it. See [#839] at 6-7. That there is a chance that this may come to pass is not in itself grounds to bring what is, in my view, the crucial need to find out what happened to a screeching halt. As I have also said, we are simply going to have to soldier on. Id. at 8.

I part company with the Chang plaintiffs, however, in their effort to take the deposition of Monique Pressley, Esq., who was the District's counsel in February, 2010 when Bynum discovered the deletion of the E-Team data, but who is no longer the District's counsel. Plaintiffs want her to speak to topic 3: "the rationale, justification, reasoning, and/or explanation for the nearly three month delay in transmitting such information to the Court and the *Chang* Plaintiffs." It has always troubled Chang plaintiffs that Ms. Pressley told counsel for the other defendants what Bynum had discovered soon after she learned of it but told neither them nor me until several months later.

The effort to take Ms. Pressley's deposition faces some particularly difficult obstacles.

First, as the District correctly points out, there is a heavy presumption against subjecting opposing trial counsel to a deposition. [#836] at 11 (quoting Guantanamera Cigar Co.. v. Corporacion Habanos, S.A., 263 F.R.D. 1, 8 (D.D.C. 2009)).

Second, it is equally clear that, while the work product privilege as set out in the Federal Rules of Civil Procedure speaks of a document, it unquestionably also prohibits the exploration of the lawyer's thoughts, opinions and mental impressions even if they have not taken tactile form. See Alexander v. FBI, 192 F.R.D. 12, 17 (D.D.C. 2000); Neese v. Pittman, 202 F.R.D. 344, 356 (D.D.C. 2001). It is frankly impossible to ask Ms. Pressley questions about her "rationale, justification, reasoning and/or explanation" for her delay in telling Chang plaintiffs about what Bynum had found without seeking her thoughts and mental impressions, in obvious violation of the work product privilege. I see no purpose in convening a deposition only to have it inevitably end moments later with a justified claim of privilege to the questions being asked.

Lest there be any confusion, however, I want to make it clear that topic number in the notice of deposition is a legitimate area of inquiry of the District's representative at the Rule 30(b)(6) deposition. Privilege claims must be asserted during that deposition to preserve them.

**CONCLUSION**

Plaintiff's resumption of the 30(b)(6) deposition will be permitted but its attempt to take Ms. Pressley's deposition will be denied. An Order accompanies this Memorandum Opinion.

Digitally signed by John M. Facciola
DN: c=US, st=DC, ou=District of Columbia, email=John_M._Facciola@dcd.uscourts.gov, o=U.S. District Court, District of Columbia, cn=John M. Facciola
Date: 2012.01.05 14:21:18 -05'00'

JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE