# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| RAYMING CHANG, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 02-2010 (EGS) |
| | ) | |
| UNITED STATES OF AMERICA, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### *CHANG* PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT FAIRFAX COUNTY SHERIFF'S <u>DEPARTMENT'S MOTION FOR SUMMARY JUDGMENT</u>

Daniel C. Schwartz (D.C. Bar No. 017749)
Jacob A. Kramer (D.C. Bar No. 494050)
Nikki A. Ott (D.C. Bar No. 495047)
Jennifer Kies Mammen (D.C. Bar No. 975586)
Nicholas S. Sloey (D.C. Bar No. 982255)
Heather S. Goldman (D.C. Bar No. 1001566)
BRYAN CAVE LLP
1155 F Street, N.W., Suite 700
Washington, D.C. 20004
(202) 508-6000

Jonathan Turley (D.C. Bar No. 417674)
2000 H Street, N.W.
Washington, D.C. 20052
(202) 994-7001

Counsel for the *Chang* Plaintiffs

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................1

        A.      Statement Of Facts .................................................................................1

        B.      Procedural History .................................................................................3

III.    STANDARD OF REVIEW ...................................................................................4

        A.      A Motion For Summary Judgment Must Be Denied Where There Are
                Genuine Issues Of Material Fact In Dispute..........................................4

IV.     ARGUMENT .........................................................................................................5

        A.      The Fairfax County Sheriff's Department Is Not Entitled To Summary
                Judgment Based On Sovereign Immunity. .............................................5

                1.      The Fairfax County Sheriff's Department Has Waived Any
                        Sovereign Immunity Claim Under The Eleventh Amendment....................5

                2.      The Fairfax County Sheriff's Department Does Not Qualify For
                        Sovereign Immunity Under The Eleventh Amendment In This Case .........8

        B.      The Fairfax County Sheriff's Department Is Not Entitled To Summary
                Judgment On Liability. .........................................................................13

                1.      The *Chang* Plaintiffs Have Not File Suit Against Sheriff Barry
                        Personally................................................................................13

                2.      The Liability Of The Fairfax County Sheriff's Department For The
                        *Chang* Plaintiffs' Common Law Claims Is Clear. .....................14

        C.      The *Chang* Plaintiffs' Conspiracy Count Is Supported By Record Evidence. ......15

        D.      The Borrowed Servant Doctrine Still Does Not Relieve The Fairfax County
                Sheriff's Department Of Liability.........................................................18

        E.      The *Chang* Plaintiffs Are Not Seeking Punitive Damages From The
                Fairfax County Sheriff's Department. ...................................................22

        F.      The Fairfax County Sheriff's Department Cannot Incorporate By Reference
                Unnamed Arguments Made By Other Defendants. ...............................22

V.      CONCLUSION.....................................................................................................23

## TABLE OF AUTHORITIES

### CASES

*Anderson v. Liberty Lobby, Inc.* 477 U.S. 242 (1986) .................................................. 4

*Barham v. Ramsey* 338 F. Supp. 2d 48 (D.D.C. 2004) ................................................ 2

*Barham v. Ramsey* 434 F.3d 565 (D.C. Cir. 2006) ............................................. 15, 16

*Bell v. City of Roanoke Sheriff's Office*,
  No. 7:09-CV-00214, 2009 U.S. Dist. LEXIS 120153 (W.D. Va. Dec. 23, 2009) ..................... 9

*Blankenship v. Warren Cnty.* 918 F. Supp. 970 (W.D. Va.),
  *modified*, 931 F. Supp. 447 (W.D. Va. 1996) ................................................ 9

*Chang v. United States*,
  Civ. Nos. 02-2010 (EGS), 02-2283 (EGS), 2007 WL 2007335
  (D.D.C. July 10, 2007) ............................................... 3, 7, 19, 20, 21, 22

*Clay v. Campbell Cnty. Sheriff's Office*,
  No. 6:12-cv-00062, 2013 U.S. Dist. LEXIS 89974 (W.D. Va.  June 26, 2013) ...................... 9

*Dellums v. Powell* 566 F.2d 216 (D.C. Cir. 1977) ......................................... 20

*Dingle v. District of Columbia* 571 F. Supp. 2d 87 (D.D.C. 2008) .............................. 14

*District of Columbia v. White* 442 A.2d 159 (D.C. 1982) ........................................ 15

*Flythe v. District of Columbia* 994 F. Supp. 2d 50 (D.D.C. 2013) .............................. 14

*Gemaehlich v. Johnson*,
  No. 7:12cv00263, 2013 U.S. Dist. LEXIS 20147 (W.D. Va. Feb. 14, 2013) ......................... 9

*Hafner v. Brown* 983 F.2d 570 (4th Cir. 1992) .............................................. 18

*Halberstam v. Welch* 705 F.2d 472 (D.C. Cir. 1983) ...................................... 16, 17

*Hampton v. Hanrahan* 600 F.2d 600 (7th Cir. 1979) ........................................ 17

*Hankins v. Finnel* 964 F.2d 853 (8th Cir. 1992) ......................................... 6, 8

*Herbert v. District of Columbia* 808 A.2d 776 (D.C. 2002) ..................................... 14

*Hill v. Blind Indus. & Servs. of Md.* 179 F.3d 754 (9th Cir. 1999) ......................... 7, 8

*Hobson v. Wilson* 737 F.2d 1 (D.C. Cir. 1984) ............................................ 17

*Kivanc v. Ramsey* 407 F. Supp. 2d 270 (D.D.C. 2006) .................................................. 16

*Lapides v. Bd. of Regents of Univ. Sys. of Ga.* 535 U.S. 613 (2002) .......................... 5, 6

*LaShawn A. v. Barry* 87 F.3d 1389 (D.C. Cir. 1996) ..................................................... 19

*Laubis v. Witt* No. 14-5488, 2015 WL 140316 (6th Cir. Jan. 9, 2015) ........................... 8

*Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*,
   507 U.S. 163 (1993) ................................................................................................... 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* 475 U.S. 574 (1986) ........................ 4

*McConnell v. Danville City Jail*,
   No. 7:13cv00061, 2013 U.S. Dist. LEXIS 39849 (W.D. Va. Mar. 22, 2013) ........... 9

*Mercado v. Dart* 604 F.3d 360 (7th Cir. 2010) ............................................................... 8

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle* 429 U.S. 274 (1977) ........................ 8

*Nash v. Taylor*,
   No. 5:12cv077, 2013 U.S. Dist. LEXIS 38765 (W.D. Va. Mar. 19, 2013) ............... 9

*New Hampshire v. Ramsey* 366 F.3d 1 (1st Cir. 2004) ................................................... 5

*North v. U.S. Dep't of Justice* 17 F. Supp. 3d 6 (D.D.C. 2014) .................................... 19

*Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Auth.*,
   744 F.2d 880 (1st Cir. 1984) ................................................................................. 6, 7

*Puerto Rico Ports Auth. v. Federal Maritime Comm'n* 531 F.3d 868 (D.C. Cir. 2008) .......... 9, 10

*Rawlings v. District of Columbia* 820 F. Supp. 2d 92 (D.D.C. 2011) ........................... 17

*Shaw v. District of Columbia* 944 F. Supp. 2d 43 (D.D.C. 2013) ................................. 14

*Taitz v. Obama* 754 F. Supp. 2d 57 (D.D.C. 2010) ........................................................ 4

*Wooddell v. Bath Cnty. Sheriff's Dep't*,
   No. 7:11cv00582, 2012 U.S. Dist. LEXIS 71472 (W.D. Va. May 23, 2012) ............ 9

*Zirintusa v. Whitaker* 674 F. Supp. 2d 1 (D.D.C. 2009) ................................................. 4

## STATUTES, RULES AND OTHER

Va. Code § 15.2-1600 et seq. . ........................................................................................ 10

Va. Code § 15.2-1605.1 ................................................................................................... 10

Va. Code § 15.2-1636.5 ................................................................................................ 11

Va. Const. Art. VII, Sec. 4 ........................................................................................... 10

Fed. R. Civ. P. 56(a) ...................................................................................................... 4

Restatement (Second) of Agency § 226 ....................................................................... 20

Restatement (Third) of Agency § 7.03 ......................................................................... 20

## I.  INTRODUCTION

Plaintiffs RayMing Chang, Young Choi, Leeann Lee, and Christopher Zarconi (the "*Chang* Plaintiffs"), by and through undersigned counsel, respectfully submit this Memorandum of Points and Authorities in Opposition to Defendant Fairfax County Sheriff's Department's ("FCSD") Motion for Summary Judgment.  The FCSD's Motion for Summary Judgment is without merit and should be denied in its entirety.  As reflected in the pleadings, the evidence submitted in support of and in opposition to the FCSD's Motion, and the discovery record, it is clear that genuine disputes of material fact abound in this case.  The FCSD seeks to have the Court resolve these disputed facts by simply accepting its account of what occurred on September 27, 2002.  The instant motion is a repeat of the prior failed motion for summary judgment based on the similar notion of the FCSD as an effective non-entity or even a "borrowed servant" of the United States Park Police ("Park Police").  (*See* FCSD 10/7/05 Motion, Dkt. No. 188.)

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Statement Of Facts

On September 27, 2002, during demonstrations to protest the International Monetary Fund ("IMF") and the World Bank, the District of Columbia Metropolitan Police Department ("MPD"), the Park Police, the FCSD, and others carried out a mass arrest at Pershing Park (the "Park") in Washington, D.C.  Specifically, police officers from these agencies encircled Pershing Park and arrested roughly 400 individuals who were in the Park – including the *Chang* Plaintiffs – by preventing them from leaving the Park.  (Ex. 1, Dkt. No. 1015-2, 12/11/03 Newsham Decl. ¶¶ 2, 20-21; Ex. 2, Dkt. No. 297-8, 2/8/07 Newsham Decl. ¶ 3.)  The FCSD officers also participated with the MPD and officers from other agencies in forcing the persons in the Park toward the Southwest corner of the Park, where they were flexi-cuffed and herded on to buses.

1

(Ex. 3, 11/22/04 Cachuela Tr. at 53:14-54:22, 60:21-63:22.)  It was the commander of the FCSD who issued the order of "no one in, no one out" to his officers to trap individuals in the Park.  (*Id.* at 53:18-19.)

The *Chang* Plaintiffs were all arrested at Pershing Park and charged with failing to obey a police order.  (Ex. 4, Chang Arrest Record (MPD02128); Ex. 5, Choi Field Arrest Form (DC11006); Ex. 6, Lee Field Arrest Form (DC10062); Ex. 7, Zarconi Field Arrest Form (DC10075).)  There is no dispute that such an order was never given.  It is also uncontested that the *Chang* Plaintiffs were not demonstrators, but were attending the demonstration either as journalist-photographers or legal observers.  (Ex. 8, 10/22/07 Chang Tr. at 171:7-173:3; Ex. 9, 12/22/04 Lee Tr. at 9:19-10:2, 12:10-13:10, 19:18-21, 23:12-24:4; Ex. 10, 11/7/07 Choi Tr. at 15:21-16:8; Ex. 11, 8/24/04 Zarconi Tr. at 6:19-7:1, 19:22-20:6.)  There is no evidence that any of the *Chang* Plaintiffs committed a crime on September 27, 2002, before or after entering Pershing Park.  Indeed, this Court has ruled that there was no probable cause to arrest any of the *Chang* Plaintiffs.  *Barham v. Ramsey*, 338 F. Supp. 2d 48, 58 (D.D.C. 2004).

In the instant motion, the FCSD seeks to have the Court rule that it bears no responsibility for its involvement in one of the largest mass arrests in the history of this city.  The completion of the arrests of the *Chang* Plaintiffs and others in the Park could only be carried out with the participation of the FCSD officers.  Approximately 20 FCSD officers wielding batons and wearing riot gear formed part of the perimeter around the northwest corner of Pershing Park.  (Ex. 3, 11/22/04 Cachuela Tr. at 48:4-49:1, 60:21-63:22.)  The line formed by the FCSD allowed the complete encirclement of the trapped individuals.  Absent the line of FCSD officers, citizens could have exited the Park and avoided these unlawful arrests.  Indeed, at least one of the former

2

*Chang* Plaintiffs specifically asked an FCSD officer to let her leave – and the FCSD officer prevented her and others from doing so.  (Ex. 12, 2/4/04 Enright Tr. at 71:16-72:8.)

The FCSD retained its own command structure during this operation.  Thus, when the MPD gave the order to seal Pershing Park, the MPD asked the FCSD officer-in-charge, Commander Basilio Cachuela, Jr., to deploy the FCSD forces to seal the Park.  (Ex. 3, 11/22/04 Cachuela Tr. at 53:13-20, 71:3-18.)   The FCSD agreed and independently ordered the deployment of FCSD officers.   (*Id.*)   Indeed, the FCSD was critical to the trap and arrest maneuver.  For example, the FCSD officers formed part of the police line that sealed the Park and then collapsed to funnel people toward a corner of the Park where the MPD was physically restraining the people with flexi-cuffs and then loading them onto buses for transport to detention locations.  (*Id.* at 53:14-54:22, 60:21-63:22.)

## B.      Procedural History

The FCSD was first made a party to this litigation in July 2005 when the *Chang* Plaintiffs filed the Third Amended Complaint.  (Dkt. No. 153.)  In October 2005, the FCSD moved for dismissal or, in the alternative, for summary judgment based on the claim that it was merely a "borrowed servant" of the Park Police.  (*See*  FCSD 10/7/05 Motion.)  On July 10, 2007, this Court denied the FCSD's motion in its entirety.  *Chang v. United States*, Civ. Nos. 02-2010 (EGS), 02-2283 (EGS), 2007 WL 2007335 (D.D.C. July 10, 2007).  The FCSD filed its Answer to the Third Amended Complaint on October 31, 2007.  (Dkt. No. 339.)  Since that time, the FCSD has actively participated in all aspects of the litigation, attending depositions, court proceedings, and many of the hearings before the Special Master, and making filings with the Court.

## III.    STANDARD OF REVIEW

### A.    A Motion For Summary Judgment Must Be Denied When There Are Genuine Issues Of Material Fact In Dispute.

Summary judgment may only be awarded when there is "no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." *Zirintusa v. Whitaker*, 674 F. Supp. 2d 1, 3 (D.D.C. 2009) (J. Sullivan).  *See also* Fed. R. Civ. P. 56(a) (providing that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  For the purposes of summary judgment, a "material fact" is one that "might affect the outcome of the suit under the governing law." *Zirintusa*, 674 F. Supp. 2d at 3 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  When evaluating a summary judgment motion, a court "must draw all reasonable inferences in favor of the non-moving party." *Id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).[1]

---

[1]    Federal rules require the moving party to clearly state the specific grounds for summary judgment and failure to do so constitutes a waiver of that issue for the purposes of the motion and its stated grounds for relief.  *See Taitz v. Obama*, 754 F. Supp. 2d 57, 61 (D.D.C. 2010) ("To the extent that plaintiff offers new factual arguments in her reply to defendant's opposition, the Court will disregard these arguments.  Courts ordinarily decline to consider arguments that are raised for the first time in a reply to an opposition.")  Obviously, the *Chang* Plaintiffs cannot assume an argument not raised, articulate a basis for it for the FCSD, and then respond to it.  Accordingly, there is no response in this Opposition to an issue not raised.  The *Chang* Plaintiffs will oppose any effort by the FCSD to add a new argument on reply.  Any such argument should be struck as both a violation of the federal rules and as a matter of basic fairness to the nonmoving party.

IV.     **ARGUMENT**

A.      **The Fairfax County Sheriff's Department Is Not Entitled To Summary Judgment Based on Sovereign Immunity.**

1.      **The Fairfax County Sheriff's Department Has Waived Any Sovereign Immunity Claim Under The Eleventh Amendment.**

The FCSD has been an active participant in this litigation for more than 9½ years, yet, it is only now – on the eve of trial – raising a claim of its own sovereign immunity as the basis for dismissal of the claims against it.  While the *Chang* Plaintiffs believe that this claim of sovereign immunity is clearly unjustified, it is not necessary to address the question of whether the FCSD can be viewed as a state agency because the FCSD has waived that claim.[2]

Waiver of Eleventh Amendment immunity by a State can occur in one of three ways:

> (1) by a clear declaration that it intends to submit itself to the jurisdiction of a federal court or administrative proceeding; (2) by consent to or participation in a federal program for which waiver of immunity is an express condition; or (3) *by affirmative conduct in litigation*.

*New Hampshire v. Ramsey*, 366 F.3d 1, 15 (1st Cir. 2004) (emphasis added) (citing, in relevant part, *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002)).  Here, the FCSD has waived any claim to sovereign immunity by its affirmative participation in this litigation for almost a decade.

As the United States Supreme Court has stated, "an interpretation of the Eleventh Amendment that finds waiver in the litigation context rests upon the Amendment's presumed recognition of the judicial need to avoid inconsistency, anomaly, and unfairness, and not upon a State's actual preference or desire, which might, after all, favor selective use of 'immunity' to

---

[2]      The previous FCSD motion for dismissal or summary judgment, based on its claimed status as a "borrowed servant" of the Park Police, depended on the Federal Defendants' claimed sovereign immunity, not its own.  (*See* FCSD 10/7/05 Motion, Br. at 11.)

achieve litigation advantages." *Lapides*, 535 U.S. at 620. *See also Paul N. Howard Co. v. Puerto Rico Aqueduct Sewer Auth.*, 744 F.2d 880, 886 (1st Cir. 1984) ("There is no question that a state may waive its Eleventh Amendment immunity, and it has long been established that a general appearance may constitute such a waiver."); *Hankins v. Finnel*, 964 F.2d 853, 856 (8th Cir. 1992) ("A state may also waive its Eleventh Amendment immunity through conduct. Courts have inferred a waiver when the State has made a general appearance in federal court and defended a lawsuit on its merits.").

Here, the FCSD's conduct in litigation clearly acts as a waiver of its immunity. The FCSD has actively litigated this case for the past 9½ years, including retaking the depositions of the *Chang* Plaintiffs in October and November 2007; attending numerous other depositions; propounding written discovery; and attending numerous court conferences. Indeed, the FCSD attended the Special Master's proceedings, which took place over the course of 19 days in 2010 and 2012. Furthermore, the FCSD filed a cross claim against the United States. (Dkt. No. 207.)

While the FCSD raised sovereign immunity in its prior Motion for Summary Judgment (Dkt. No. 188) and its Answer (Dkt. No. 339), its claim was based on its assertion that it was a "borrowed servant" of the Park Police and therefore "entitled to the same sovereign immunity as the United States of America." (FCSD 10/7/05 Motion, Br. at 11.) At that time, the Court denied the FCSD sovereign immunity:

> Based on FCSD's claim that it was just a borrowed servant of the Park Police and that its officers were deputized by the U.S. Marshal's Service, FCSD claims that it is entitled to dismissal of plaintiffs' case based on sovereign immunity and the protections of the Federal Tort Claims Act. Because the facts underlying the applicability of the borrowed servant doctrine are in dispute, the Court declines to extend sovereign immunity or FTCA protection to the FCSD at this time.

*Chang*, 2007 WL 2007335, at *13 n.8.  At no time prior to the filing of its current Motion for

Summary Judgment did the FCSD raise a defense based its own claim of sovereign immunity.

Indeed, on May 14, 2014, the FCSD filed a Status Report with the Court in which it addressed

the underlying merits of the case.  (Dkt. No. 986.)  That status report does not include any claim

that the FCSD had sovereign immunity.  (*Id.*)

Allowing the FCSD to now claim sovereign immunity would be unfair and prejudicial to

the *Chang* Plaintiffs who, had they been aware that the FCSD believed itself to be an arm of the

Commonwealth of Virginia, could have taken certain actions at the proper time to maintain their

claims against the FCSD.  This includes, but is not limited to, discovery tied directly to the

Sheriff Department's financial and administrative links to the Commonwealth, or potentially

taking prerequisite administrative actions.  Allowing the FCSD to exit the case at this late date

would leave the *Chang* Plaintiffs with no recourse.  As the Ninth Circuit aptly stated:

> We see no valid reason why a party should belatedly be permitted
> to assert Eleventh Amendment immunity.  A party knows whether
> it purports to be an "arm of the state," and is capable of disclosing
> early in the proceedings whether it objects to having the matter
> heard in federal court.  Timely disclosure provides fair warning to
> the plaintiff, who can amend the complaint, dismiss the action and
> refile it in state court, or request a prompt ruling on the Eleventh
> Amendment defense before the parties and the court have invested
> substantial resources in the case. … Requiring the prompt assertion
> of an Eleventh Amendment defense also minimizes the opportunity
> for improper manipulation of the judicial process.

*Hill v. Blind Indus. & Servs. of Md.*, 179 F.3d 754, 757-58 (9th Cir. 1999).

Circuit courts have found states have waived Eleventh Amendment immunity in a variety

of circumstances, and this Court should find the FCSD to have also so waived.  *See Paul N.*

*Howard Co.*, 744 F.2d at 886 (holding that "where [state entity] not only appeared but filed a

counterclaim and a third-party complaint, we have little trouble concluding that [it] voluntarily

submitted to the jurisdiction of the federal court, thereby waiving any Eleventh Amendment immunity it might or might not have enjoyed."); *Hankins*, 964 F.2d at 858 (finding that the state waived immunity by "seek[ing] to take advantage of the suit for its own benefit"); *Hill*, 179 F.3d at 758 ("[W]e have recognized that a state may waive its Eleventh Amendment immunity by conduct that is incompatible with an intent to preserve that immunity.").   After a decade of submitting to the jurisdiction of this Court, the FCSD should not now be entitled to assert its own claimed sovereign immunity for the first time.

### 2.   The Fairfax County Sheriff's Department Does Not Qualify For Sovereign Immunity Under The Eleventh Amendment In This Case.

Putting aside the FCSD's waiver of sovereign immunity, the FCSD does not qualify as a state entity for the purposes of this lawsuit in any event.   The FCSD was acting as a county, not a state entity, in performing the law enforcement function.   However, even if the FCSD could generally claim full sovereign immunity as an arm of the Commonwealth of Virginia, it was clearly not working as an arm of the Commonwealth when it participated in trapping and arresting hundreds of people in a park in another jurisdiction.   These individuals were never accused of violating any Virginia law or committing any crime on Virginia territory.

While "[t]he bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances," it "does not extend to counties and similar municipal corporations."   *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).   It is true that county officials can be treated as state officers for the purposes of sovereign immunity in some areas, but the courts have reached different conclusions depending on the specific case.   *See Laubis v. Witt*, No. 14-5488, 2015 WL 140316, at *5 (6th Cir. Jan. 9, 2015) ("counties are not entitled to Eleventh Amendment immunity"); *Mercado v. Dart*, 604 F.3d 360, 364 (7th Cir. 2010) ("Sheriff of Cook County, a local official, is not 'the state' … City

and county officials also are not 'states' for the purpose of the eleventh amendment and related doctrines of sovereign immunity….").

While the cases cited by the FCSD reference the Commonwealth's role in the operation of its sheriff's departments, each of those cases involved sheriffs acting in the course of their duties *inside* their jurisdiction.[3]  Those cases all involve lawsuits brought in federal court over actions taken in the jurisdiction of the Sheriff and in the course of official duties in that jurisdiction.  Further, many of these cases deal with jails, which are incorporated into state correctional systems.  As such, they are distinguishable from the present situation, in which the FCSD officers participated in a law enforcement action in another jurisdiction.  In that setting, the FCSD officers were acting as local police officers, not as representatives of the Commonwealth of Virginia, and the FCSD should not be allowed to hide behind whatever claims of sovereign immunity the State may have to protect it from liability for its unlawful actions.

The D.C. Circuit held in *Puerto Rico Ports Auth. v. Federal Maritime Comm'n*, 531 F.3d 868, 872 (D.C. Cir. 2008) that *"[d]etermining whether a particular entity is an arm of the State can be a difficult exercise."*  The court specifically noted that many cases involve "agencies that

---

[3]     *See Blankenship v. Warren Cnty.*, 918 F. Supp. 970 (W.D. Va. 1996), *modified*, 931 F. Supp. 447 (W.D. Va. 1996) (gender discrimination claim raised by former sheriff's deputy against her Department); *Clay v. Campbell Cnty. Sheriff's Office*, No. 6:12-cv-00062, 2013 U.S. Dist. LEXIS 89974 (W.D. Va.  June 26, 2013) (EEOC lawsuit of a deputy against Sheriff over injury during service on duty in the state); *McConnell v. Danville City Jail*, No. 7:13cv00061, 2013 U.S. Dist. LEXIS 39849 (W.D. Va. Mar. 22, 2013) (pro se action for violations by Sheriff in local jail); *Nash v. Taylor*, No. 5:12cv077, 2013 U.S. Dist. LEXIS 38765 (W.D. Va. Mar. 19, 2013) (action based on arrest made in the jurisdiction); *Gemaehlich v. Johnson*, No. 7:12cv00263, 2013 U.S. Dist. LEXIS 20147 (W.D. Va. Feb. 14, 2013) (claim of excessive force while in pretrial detention); *Wooddell v. Bath Cnty. Sheriff's Dep't*, No. 7:11cv00582, 2012 U.S. Dist. LEXIS 71472 (W.D. Va. May 23, 2012) (prisoner's pro se action for allegedly stolen property in local jail); *Bell v. City of Roanoke Sheriff's Office*, No. 7:09-CV-00214, 2009 U.S. Dist. LEXIS 120153 (W.D. Va. Dec. 23, 2009) (former prisoner's lawsuit alleging physical abuse in jail).

are either arms of the State or political subdivisions, such as cities or counties, that are not

entitled to sovereign immunity." *Id.* The Court explained the analysis as focusing on the

function of the specific agency:

> To determine whether an entity is an arm of the State, the Supreme
> Court and this Court have generally focused on the "nature of the
> entity created by state law" and whether the State "structured" the
> entity to enjoy its immunity from suit. That inquiry requires
> examination of three factors: (1) the State's intent as to the status
> of the entity, including the functions performed by the entity; (2)
> the State's control over the entity; and (3) the entity's overall
> effects on the state treasury.

*Id.* at 873 (citations omitted).

On the first factor, the FCSD was not established by the Commonwealth and performs

functions established and compensated by the county, not the Commonwealth. As conceded by

the FCSD in its Motion (FCSD Motion at 2), the Sheriff is elected in a local election, by the

voters of Fairfax County. *See* Va. Const. Art. VII, Sec. 4.[4] Further, Virginia law provides that a

municipality may supplement the sheriff's salary in any amount it deems expedient, and that

such additional compensation shall be wholly payable from the funds of the county. *See* Va.

Code § 15.2-1605.1. While all law enforcement agencies coordinate on some field and

administrative levels, the FCSD has always been an independent county force.

On the second factor, the Commonwealth does not control the FCSD. Indeed, the

Virginia Code makes no provision for oversight of the Sheriff's Department by the

Commonwealth. This lack of control by the Commonwealth is reflected by the FCSD's singular

and independent decision to deploy its officers to another jurisdiction. The decision to deploy

---

[4]     Article VII of the Virginia Constitution is entitled "Local Government" and Section 4 is
entitled "County and city officers." Similarly, the portion of the Virginia Code relating to
sheriffs, Va. Code Section 15.2-1600 *et seq.*, is entitled "Local Constitutional Officers,
Courthouses and Supplies."

FCSD officers that weekend was made by FCSD Lieutenant Colonel Paul Maltagliati, apparently with the knowledge and at least implied approval of Sheriff Barry. (Ex. 13, 10/2/07 Maltagliati Tr. at 5:13-6:2, 23:21-24:4.) There is no evidence that the Commonwealth of Virginia approved the deployment of the FCSD officers to the District of Columbia, nor is there evidence that the FCSD sought such approval.

For the third and final factor – the impact of the FCSD on the state treasury – the FCSD relies on the fact that "the sheriff must report daily to the Compensation Board regarding the number and identity of detainees his jail receives on a given day." (FCSD Br. at 3.) This requirement, however, is merely a reflection of the integration of the jail and prison systems by the state, which is one function in which a sheriff may be an extension of the state. But that is not the only function a sheriff's department may play and is clearly not the function performed by the FCSD officers involved in this case. Rather, it is a reflection of the fact that jails are compensated for holding state prisoners to deal with overcrowding and administration of the overall prisoner population. Furthermore, the Compensation Board is structured to include a member who "may or may not be an officer or employee of the Commonwealth," which is a reflection of its multi-jurisdictional makeup. Va. Code § 15.2-1636.5. With regard to the statewide pool, it is a standard insurance-like structure to handle litigation costs and damages to reduce administrative and financial costs for the respective jurisdictions. Moreover, it was the FCSD that filed its cross claim against the Park Police for indemnification for the *Chang* Plaintiffs' claims (*see* Dkt. No. 207), and so it is not obvious that those costs would be paid out, in the first instance, by the Commonwealth or that any indemnification would be returned to the Commonwealth.

Finally, while not raised in the FCSD's description of its budgetary position, the FCSD

had a separate agreement with the federal government in assuming its role outside of its jurisdiction. Pursuant to the Interagency Agreement Between Fairfax County Sheriff's Office, Fairfax, Virginia and The United States Park Police (the "Interagency Agreement"), the Park Police were "requesting the assistance of 26 (twenty-six) officers from the Fairfax County Sheriff's Office during the period from September 26 through September 30, 2002." (FCSD Ex. 2, Interagency Agreement ¶ 4.)  The Interagency Agreement provided that "[t]he cost of furnishing services described herein shall be borne by the Force, to include salaries and travel time to and from the event." (*Id.*)  The agreement reflects that it is the county, not the state, that is the contracting party.  The agreement also reflects that it is the county, not the state, that is being indemnified for costs.[5]  The Interagency Agreement notably also provides that:

> Each of the parties to the agreement shall waive any and all claims against all the other parties thereto, which may arise out of their activities outside their respective jurisdictions under this agreement, and indemnify and save harmless the other parties to this agreement from all claims by third parties for property damage or personal injury which may arise out of the activities of the other parties to this agreement, outside their respective jurisdictions under this agreement.  Provided, however, that in the event that the United States is held liable, such payments will neither entail expenditures which exceed appropriations available at the time of the loss, nor implicate that Congress be required to appropriate funds to make up for any deficiency.

(FCSD Ex. 2, Interagency Agreement ¶ 7.)  Indeed, the FCSD filed a cross claim against the Park Police for indemnification for the *Chang* Plaintiffs' claims. (*See* Dkt. No. 207.)  This Interagency Agreement reflects that the FCSD participated as an independent county department,

---

[5]      The existence of this Interagency Agreement also undermines the FCSD's claim of being a "borrowed servant," which the Court previously rejected in a summary judgment motion by the FCSD.  The Interagency Agreement refers to the federal and county signatories as being distinct and separate jurisdictions.  The agreement also recognizes that this is a cooperative agreement between two respective jurisdictions.  Furthermore, the FCSD retained the operational and command control over its own forces. (*See generally* FCSD Ex. 2, Interagency Agreement.)

while the costs would not be borne by the county, let alone the state, budget.  Thus, the FCSD was not only acting outside of its jurisdiction, but both its operation and costs were entirely contained within that outside jurisdiction.

The facts of this case are materially different from a county sheriff running a jail under state guidelines, direction, and support.  Here, the FCSD was performing a function that was removed from the state when it participated in a mass arrest in another jurisdiction.  The FCSD does not suggest that it was sent to D.C. by the Commonwealth, or that it coordinated its deployment with the Commonwealth to any significant degree.  The FCSD elected to send its officers to another jurisdiction to carry out a function entirely removed from any function of the Commonwealth of Virginia.  The effort of the FCSD to seek immunity, initially as a borrowed servant of the Park Police, and belatedly as an instrumentality of the state, are transparent efforts to find any way to shield it from accountability for its own actions.  To permit such a claim would allow jurisdictions to incorporate out-of-state county officers as a force beyond legal accountability as shielded tortfeasors.  The Eleventh Amendment was never intended to reduce county officers to immunized mercenaries who could not be held accountable for their constitutional violations.  This Court should not create such new precedent and should reject the meritless claim of sovereign immunity.

> **B.     The Fairfax County Sheriff's Department Is Not Entitled To Summary Judgment On Liability.**
>
> > **1.     The *Chang* Plaintiffs Have Not Filed Suit Against Sheriff Barry Personally.**

The FCSD's argument appearing in Section II of its Motion is entirely meritless.  Indeed, it is difficult to discern what, precisely, the FCSD is trying to argue in its summary judgment claim.  Based on a plain reading of the argument and the case law cited, the FCSD appears to be arguing that the *Chang* Plaintiffs cannot prove a claim against former Sheriff Stan Barry,

individually.  Indeed, in the section of *Shaw v. District of Columbia*, 944 F. Supp. 2d 43 (D.D.C.

2013), cited by the FCSD, this Court was analyzing claims against individual government

officials, not claims against a government entity, such as the FCSD.  *See* 944 F. Supp. 2d at 60-

63.  Since former Sheriff Barry has never been a named Defendant in this case, and the *Chang*

Plaintiffs do not intend to amend the Complaint to add him as a party, there is no requirement for

the *Chang* Plaintiffs to prove a claim against him individually based on supervisor liability, and

the FCSD's motion for summary judgment based on the Plaintiffs' failure to make such proof

should be denied as moot.

### 2. The Liability Of The Fairfax County Sheriff's Department For The *Chang* Plaintiffs' Common Law Claims Is Clear.

Under the law of the District of Columbia, the FCSD remains liable to the *Chang*

Plaintiffs under a theory of respondeat superior for the common law claims of false arrest and

false imprisonment.  *See Dingle v. District of Columbia*, 571 F. Supp. 2d 87, 99 (D.D.C. 2008)

(holding that under the doctrine of respondeat superior, the District of Columbia was liable for

the torts of its police officers that were acting under the scope of their employment).[6]

The law in D.C. is clear that an employer, including government employers like the

FCSD, may be held liable for the torts of its employees committed during the scope of

employment.  *See Flythe v. District of Columbia*, 994 F. Supp. 2d 50, 74 (D.D.C. 2013) (denying

summary judgment with respect to common law claims of assault and battery on the theory that

the District could be found liable for the acts of two police officers under respondeat superior);

---

[6]    The law of D.C. clearly applies to the *Chang* Plaintiffs' tort claims against the FCSD.
All acts complained of by the *Chang* Plaintiffs occurred in the District, and it is clear that the
District has a substantial interest in applying its own law to the resolution of the *Chang*
Plaintiffs' common law tort claims against the FCSD.  *See Herbert v. District of Columbia*, 808
A.2d 776, 779 (D.C. 2002) (applying D.C. law where injury and death of victim occurred in the
District of Columbia and conduct occurred in the District of Columbia).

*see also District of Columbia v. White*, 442 A.2d 159, 162 n.7 (D.C. 1982) ("Under the doctrine of respondeat superior the District of Columbia is liable for the torts of its police officers acting under the scope of their employment.").

There is no dispute that Commander Cachuela and the other FCSD officers present at Pershing Park were acting within the scope of their employment on September 27, 2002. Pursuant to the Interagency Agreement, Sheriff Barry delegated his authority to Commander Cachuela – as the Officer-in-Charge – to take command over the scene on behalf of the FCSD on September 27, 2002.  (FCSD Ex. 2, Interagency Agreement ¶ 2.)  It is further undisputed that the arrests that took place at Pershing Park were illegal,[7] and that Commander Cachuela believed he had effectuated an arrest over persons in the Park when he established a police line that would not allow anyone in or out of the Park.  (Ex. 3, 11/22/04 Cachuela Tr. at 81:17-21, 82:14-83:1.) Given these facts, some of which the FCSD clearly disputes, a jury could find that the FCSD is liable to the *Chang* Plaintiffs for common law false arrest and imprisonment under a theory of respondeat superior.   Therefore, genuine issues of material fact exist regarding the FCSD's liability for the actions of Commander Cachuela and the other FCSD officers, and summary judgment to the FCSD must be denied.

**C.     The *Chang* Plaintiffs' Conspiracy Count Is Supported By Record Evidence.**

There is sufficient evidence in the record on which a reasonable jury could find that the FCSD conspired to illegally arrest the *Chang* Plaintiffs.  At a minimum, there exist genuine issues of material fact regarding the role the FCSD played in the preplanning stages for the September 2002 IMF Event and during the arrest itself.

---

[7]     *See Barham v. Ramsey*, 434 F.3d 565, 573 (D.C. Cir. 2006) ("The mass arrests at Pershing Park violated the clearly established Fourth Amendment rights of plaintiffs by detaining them without particularized probable cause.").

Under D.C. law, the elements of a civil conspiracy are:

> (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.

*Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983). These elements can be condensed into two key parts: "[1] an agreement to take part in an unlawful action or a lawful action in an unlawful manner, and [2] an overt tortious act in furtherance of the agreement that causes injury." *Kivanc v. Ramsey*, 407 F. Supp. 2d 270, 275 (D.D.C. 2006) (internal quotations and citation omitted).

First, there is absolutely no question that an overt tortious act causing injury occurred. Indeed, it has been established as a matter of law that the arrests of hundreds of individuals, including the *Chang* Plaintiffs, "assembled in the exercise of First Amendment rights, without first issuing an order to disperse followed by a reasonable opportunity to comply, violated plaintiffs' clearly established constitutional rights…." *Barham*, 434 F.3d at 568. There is also no question that the FCSD played a role in the arrest and formed a part of the police line that sealed the Park. Indeed, as explained in detail above, Commander Cachuela testified that "I told my guys, … no one in, no one out." (Ex. 3, 11/22/04 Cachuela Tr. at 53:18-19, 71:3-18.) Commander Cachuela further testified that forming the police line amounted to an "arrest" of the people in the Park. (*Id.* at 82:14-15.) This mass arrest was the culmination of weeks of planning by the Defendants, including provisions for a mass arrest and the incorporation of the FCSD in the deployment of officers. On the day in question, people were actively funneled into the Park, where they were trapped by the FCSD and other Defendants.

Second, there is evidence of an agreement to commit the unlawful action. "[A] conspiracy need not be established by direct evidence [of agreement] but may, and generally must, be proved by a number of indefinite acts, conditions, and circumstances which vary according to the purpose to be accomplished." *Halberstam*, 705 F.2d at 480. *See also Rawlings v. District of Columbia*, 820 F. Supp. 2d 92, 106 (D.D.C. 2011) ("The plaintiff presents no direct evidence of a conspiracy between [defendants]. Such a shortcoming is neither rare nor fatal in conspiracy cases."). It is enough if "defendants' acts revealed that they had 'pursued the same object, although by different means, one performing one part and another … part.'" *Halberstam*, 705 F.2d at 480. Furthermore, the *Chang* Plaintiffs "need not prove that each participant in a conspiracy knew the 'exact limits of the illegal plan or the identity of all participants therein.'" *Hobson v. Wilson*, 737 F.2d 1, 51 (D.C. Cir. 1984), *overruled in part on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993) (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979)). "The conspirators must share the general conspiratorial objective, but they need not know all the details of the plan … or possess the same motives." *Hobson*, 737 F.2d at 51 (internal quotations and citations omitted). Thus, to "demonstrate the existence of a conspiratorial agreement, it simply must be shown that there was a single plan, the essential nature and general scope of which [were] known to each person who is to be held responsible for its consequences." *Id.* (internal quotations and citations omitted.)

There are genuine issues of material fact in dispute regarding the role the FCSD played in the preplanning stages for the September 2002 IMF/World Bank event and at the scene of the mass arrest. Commander Cachuela testified that prior to the September 2002 IMF/World Bank protests, he attended an Operational Briefing with the Park Police at which "the operations plan,

intelligence information, logistics information" for the demonstrations were discussed.  (Ex. 3, 11/22/04 Cachuela Tr. at 27:5-21.)

Moreover, a jury could reasonably find that Commander Cachuela knew full well that there was no probable cause to arrest everyone located in Pershing Park at that time, yet he agreed on behalf of the FCSD to carry out an unlawful arrest, joining the FCSD to the conspiracy among the Defendants.  The Fourth Circuit has explained that "[a]cquiescence can amount to a conspiracy agreement when, as here, one police officer watches an open breach of the law and does nothing to seek its prevention."  *Hafner v. Brown*, 983 F.2d 570, 578 (4th Cir. 1992).  The facts here show that Commander Cachuela "acquiesced" to the conspiracy when he gave his men the order to let "no one in, no one out."  (Ex. 3, 11/22/04 Cachuela Tr. at 53:18-19, 71:16-18.)  As Officer Cachuela testified:

> …we were there and then the D.C. police lieutenant said, No one in, no one out.  I looked at the Lieutenant of the Park Police officer, U.S. Park Police, and he just kind of nodded his head like, okay, we heard that, and then I told my guys, you know, we got the word, no one in, no one out.

(*Id.* at 53:14-19.)  Accordingly, genuine issues of material fact preclude summary judgment on the conspiracy claim.

### D.  The Borrowed Servant Doctrine Still Does Not Relieve The Fairfax County Sheriff's Department Of Liability.

The FCSD whipsaws between arguing that it was in the Park as an arm of the state or an arm of the federal government.  This identity confusion appears to be an act of desperation to avoid accountability for its own actions, particularly given the fact that this Court has already denied summary judgment to the FCSD based on the borrowed servant doctrine.  The FCSD simply reargues the claim in disregard of this Court's prior ruling that "there are genuine issues of material fact as to who was in control of the FCSD officers and whether such control was

shared or joint." *Chang*, 2007 WL 2007335, at *13.  While the FCSD admits that it is simply asking the Court to reconsider its previous decision (FCSD Br. at 7 n.3), the FCSD provides no new indisputable facts or evidence for the Court to consider.

The Court's prior decision is now the law of the case.  *See LaShawn A. v. Barry,* 87 F.3d 1389, 1393 (D.C. Cir. 1996).  Indeed, the FCSD's attempt to relitigate this issue now is little more than a belated motion for reconsideration.  Such motions are "disfavored" and granted only in "extraordinary circumstances," such as when there is a change of controlling law, new evidence, or the need to remedy a clear error or avoid manifest injustice.  *North v. U.S. Dep't of Justice*, 17 F. Supp. 3d 6, 8 (D.D.C. 2014) (denying motion for reconsideration).  None of those types of "extraordinary circumstances" are present here.

Indeed, the FCSD's main argument appears to be that no new evidence has been developed since 2007 to suggest that FCSD officers were acting as an independent unit.[8]  In the same seven years, however, no new evidence has been developed to suggest that the FCSD officers were *not* acting as an independent unit.[9]  Since the evidence remains the same as it was

---

[8]      No new evidence should be required since the evidence already shows that Commander Cachuela – as the FCSD Officer-in-charge – took command over the scene on behalf of the FCSD on September 27, 2002, and exercised his independent judgment and command to effectuate the arrests in the Park when he established a police line that would not allow anyone in or out of the Park.  (FCSD Statement of Undisputed Material Facts ("SUMF"), Dkt. No. 1020-2, ¶ 4; Ex. 3, 11/22/04 Cachuela Tr. at 53:14-19, 71:3-18, 81:17-21.)

[9]      In its Statement of Undisputed Material Facts, the FCSD cites to testimony from the depositions of Lieutenant Maltagliati (regarding his understanding of the Interagency Agreement) and Captain Thomas Neider (regarding who he believed was in control of the FCSD), both of which were taken after the Court's denial of the FCSD's prior motion for summary judgment.  (*See* FCSD SUMF.)  The evidence developed in those depositions is not dispositive on the issue.  In fact, it only further goes to show that there are clear issues of fact still in dispute.  For example, Lieutenant Colonel Maltagliati testified that the FCSD always maintains some control over its deputies (Ex. 13, 10/2/07 Maltagliati Tr. at 70:15-71:4), and Captain Neider testified that he "conferred with [Commander Cachuela] on any decision."  (Ex. 14, 9/27/07 Neider Tr. at 21:16.)  These statements can just be added to the multitude of statements regarding who was actually responsible for the FCSD officers on September 27,

when the Court previously decided that there existed "genuine issues of material fact," those genuine issues of material fact necessarily still exist.

As this Court held in 2007, "'a person may be the servant of two masters, not joint employers, at one time as to one act, if the service to one does not involve the abandonment of service to the other.'" *Chang*, 2007 WL 2007335, at *12 (quoting Restatement (Second) of Agency § 226). "Whether one party is the 'sole master to whom liability can attach … is usually a question of fact, generally to be decided by the jury." (*Id.* (quoting *Dellums v. Powell*, 566 F.2d 216, 220 (D.C. Cir. 1977) and citing Restatement (Third) of Agency § 7.03).)

While the FCSD tries to distinguish this case from *Dellums*, the FCSD's argument misses the mark.  In *Dellums*, the Court found that "[i]t is also undisputed that Chief Wilson retained personal operational control over all Metropolitan Police officers on the scene and could have withdrawn them had he thought the arrests unjustified" and that "[t]his was sufficient proof of Chief Wilson's independent involvement in the arrest process to make his liability one for the jury to decide." *Dellums*, 566 F.2d at 219.  Similarly, here, per the Interagency Agreement, the "Officer-in-charge of the Fairfax County Sheriff's Office personnel … ha[d] an *integral part of any decision making process that could have [had] an effect on its officers….*" (FCSD Ex. 2, Interagency Agreement ¶ 2 (emphasis added).)  Indeed, Lieutenant Colonel Maltagliati testified that the Interagency Agreement did not "give the Park Police the power or authority to order a [FCSD] deputy sheriff to obey an illegal order" and that the sheriff's department always maintains some control over its deputies.  (Ex. 13, 10/2/07 Maltagliati Tr. at 69:9-13, 70:15-71:4.)

---

2002.  The FCSD has not submitted any additional information or evidence to suggest the absence of a factual dispute in support of its Motion.

Furthermore, the "best evidence against a borrowed servant holding" cited by the FCSD (FCSD Br. at 8) is the same evidence cited by the Court in finding that genuine issues of material fact exist.  Indeed, with regard to the testimony of Commander Cachuela, the Court stated:

> Moreover, Basil[i]o Cachuela -- ranking commander of the FCSD on September 27 -- testified that he told his guys "no one in, no one out" after hearing such a command from a D.C. police lieutenant and getting just a nod from the Park Police lieutenant … suggesting that Cachuela was still in command of and gave orders to his own officers, even if that command and control was shared with the Park Police."

*Chang*, 2007 WL 2007335, at *13.  This Court found that "[t]he testimony of the officers on the scene at Pershing Park on the morning of September 27, 2002 also raises a factual dispute as to whether the Park Police were in sole or shared control of the FCSD officers."  *Id.*

Finally, the FCSD's argument that "Plaintiffs have no evidence that Sheriff Barry was present at the protests or otherwise involved in the decision to permit his deputies to assist with their arrest" (FCSD Br. at 8), is a red herring.  The Complaint does not name Sheriff Barry and he did not need to be present or involved in the unlawful arrests in Pershing Park for the FCSD to be held responsible for the unlawful actions of its officers under its fully delegated command. The Interagency Agreement between the FCSD and the Park Police clearly provides for shared control of the FCSD officers who participated in the mass arrests at Pershing Park on September 27, 2002:

> "The Officer-in-charge of the Fairfax County Sheriff's Office personnel will have an *integral part of any decision making process that could have an effect on its officers,* including decisions made with other agencies that may be brought in and made part of the law enforcement detail."

(FCSD Ex. 2, Interagency Agreement, ¶ 2 (emphasis added).)   As this Court previously found, "[u]nder the terms of the Interagency Agreement, FCSD did not give up all direction and control over its officers to the Park Police."   *Chang*, 2007 WL 2007335, at *13.

Given all of the above, it is clear that genuine issues of material fact over who exercised control over the FCSD officers on September 27, 2007 still exist.   As such, summary judgment must be denied.

### E.     The *Chang* Plaintiffs Are Not Seeking Punitive Damages From The Fairfax County Sheriff's Department.

The *Chang* Plaintiffs hereby state that they do not intend to seek punitive damages from the FCSD at trial, and the motion for summary judgment regarding punitive damages should be dismissed as moot.

### F.     The Fairfax County Sheriff's Department Cannot Incorporate By Reference Unnamed Arguments Made By Other Defendants.

The FCSD seeks to take advantage of any argument made by any other Defendant that just might be successful by claiming to incorporate by reference the "additional legal arguments" made by other defense counsel.   The Court should reject this type of "me too" approach to litigation out-of-hand.   The FCSD does not specify which arguments it seeks to incorporate. That creates an absurd challenge to the *Chang* Plaintiffs and the Court to imagine what arguments the FCSD wants to piggyback onto and then refute, and ultimately resolve, those arguments.   Since the FCSD does not specify which arguments from which Defendants it is incorporating, or provide the facts relevant to itself with respect to those arguments, the *Chang* Plaintiffs ask the Court to deny the FCSD's request.[10]

---

[10]     Similarly, the FCSD has signed on to the Federal Defendants' Motion (Dkt. No. 1022), again, without identifying any facts relevant to itself with respect to those arguments.   The *Chang* Plaintiffs are entitled to respond to the specific arguments raised by a party in their defense to claims for relief.   The Court could obviously incorporate the *Chang* Plaintiffs'

**V.     CONCLUSION**

For the reasons stated herein, Fairfax County Sheriff's Department's Motion for Summary Judgment should be denied in its entirety.

Respectfully submitted,

/s/ Daniel C. Schwartz
Daniel C. Schwartz (D.C. Bar No. 017749)
Jacob A. Kramer (D.C. Bar No. 494050)
Nikki A. Ott (D.C. Bar No. 495047)
Jennifer Kies Mammen (D.C. Bar No. 975586)
Nicholas S. Sloey (D.C. Bar No. 982255)
Heather S. Goldman (D.C. Bar No. 1001566)
BRYAN CAVE LLP
1155 F Street, N.W., Suite 700
Washington, D.C. 20004
(202) 508-6000

/s/ Jonathan Turley
Jonathan Turley (D.C. Bar No. 417674)
2000 H Street, N.W.
Washington, D.C. 20052
(202) 994-7001

Counsel for the *Chang* Plaintiffs

Dated:  January 20, 2015

---

responses to those arguments as filed against the Defendant who initially raised it.  However, such a practice would negate the basic requirements of briefing and allow parties to create utter confusion by adopting whole briefs of other parties without specifying the arguments or their application to their given legal position.

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2015, I caused copies of the foregoing to be served by electronic means on all counsel of record through the Court's CM/ECF system.

/s/ Nicholas S. Sloey

BRYAN CAVE LLP
1155 F Street, N.W., Suite 700
Washington, D.C. 20004
(202) 508-6039

Counsel for the *Chang* Plaintiffs