**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RAYMING CHANG, *et al.*** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil No. 1:02-CV-02010 (EGS)** |
| **UNITED STATES OF AMERICA, *et al*.** | * | |
| **Defendants.** | * | |
| | * | |

**MOTION, *IN LIMINE*, TO EXCLUDE FROM EVIDENCE THE REPORT OF INVESTIGATION PREPARED BY THE METROPOLITAN POLICE DEPARTMENT REGARDING THE FALL 2002 IMF/WORLD BANK PROTESTS**

The District Defendants (District of Columbia, Charles Ramsey, Michael Fitzgerald, Peter Newsham, Bryan DiGirolamo, Andre Harrison and Michael Smith), by and through undersigned counsel, hereby move, *in limine*, to exclude the MPD Report of Investigation and accompanying exhibits thereto, of MPD's actions related to the Fall 2002 World Bank/IMF protests, which were prepared at the direction of the Mayor of the District of Columbia. As explained more fully in the accompanying memorandum of points and authorities, the Report, as well as all drafts, exhibits, and other documents pertaining thereto, including the Chief's recommendations transmitted to the Mayor, are not admissible under Federal Rules of Evidence 401, 402, 403 and 407 or 803(8)(C).

Pursuant to LCvR 7(m), counsel for Plaintiffs indicated that they oppose the relief requested herein. The Federal Defendants (the United States of America and former Major Richard Murphy of the U.S. Park Police) and the Fairfax County Sheriff's Department join in this Motion for the reasons stated in the accompanying memorandum.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ELLEN A. EFROS D.C. Bar No. 250746
Deputy Attorney General
Public Interest Division

/s/_William_F._Causey_______________
WILLIAM F. CAUSEY D.C. Bar No. 260661
SHANA L. FROST D.C. Bar. No. 458021
Assistant Attorney General
441 Fourth Street, N.W.
Washington, DC 20001
(202) 724-6610
william.causey@dc.gov

*Counsel for the District Defendants*

/s/ Lauren E. Curry
Lauren E. Curry (D.C. Bar No. 990522)
Brown Rudnick LLP
Seven Times Square
New York, NY 10036
(212) 209-4953
(212) 938-2991 (fax)
lcurry@brownrudnick.com

*Counsel for Defendant Charles H. Ramsey*

/s/ Robert E. Deso
Robert E. Deso #174185
Deso & Buckley, P.C.
1828 L. St., N.W., Suite 270
Washington, D.C. 20036
(202) 822-6333
(202) 822-6665 - Fax
redeso@dtswlaw.com

*Attorney for Defendant Peter J. Newsham*

RONALD C. MACHEN JR., D.C. Bar #447889
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By: /s/
MARINA UTGOFF BRASWELL, D.C. Bar #416587
BRIAN P. HUDAK
Assistant United States Attorneys
555 Fourth Street, NW
Washington, DC 20530
(202) 252-2549

*Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RAYMING CHANG, *et al.*** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil No. 1:02-CV-02010 (EGS)** |
| **UNITED STATES OF AMERICA, *et al*.** | * | |
| **Defendants.** | * | |
| | * | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE FROM EVIDENCE THE REPORT OF INVESTIGATION PREPARED BY THE METROPOLITAN POLICE DEPARTMENT REGARDING THE FALL 2002 IMF/WORLD BANK PROTESTS**

The District Defendants move, *in limine*, to exclude the Metropolitan Police Department ("MPD") Report of Investigation of MPD's actions related to the Fall 2002 World Bank/IMF protests, which was prepared at the direction of the Mayor of the District of Columbia, on the grounds that the Report, and all drafts and other documents pertaining thereto, including exhibits and the Chief's recommendations transmitted to the Mayor, are not admissible under Federal Rules of Evidence ("Rules") 401, 402, 403 and 407 or Rule 803(8)(C).

The Federal Defendants (the United States of America and former Major Richard Murphy of the U.S. Park Police) and the Fairfax County Sheriff's Department join in the District Defendants objections. The Federal Defendants also object to the Report and its exhibits as it contains hearsay purporting to relay statements of an MPD investigator regarding an interview he had with Major Murphy. This hearsay is inadmissible under Rule 802.

## I. BACKGROUND

During the weekend of September 27-29, 2002 the World Bank and the International Monetary Fund held their annual meetings at their headquarters in downtown Washington, D.C.

There were many demonstrations over the course of that weekend. Parade permits had been requested, and granted, for Saturday, September 28 and Sunday, September 29. No permits had been requested or granted for Friday, September 27. Approximately 3,000 - 5,000 demonstrators took to the streets in downtown Washington during the morning rush hour on Friday, September 27, 2002. Approximately 400 people eventually gathered in Pershing Park, located at 15th & Pennsylvania Avenue, N.W. MPD arrested all of the approximately 400 people in Pershing Park. Defendant Newsham ordered the arrests at Pershing Park.

The Pershing Park arrests, and other arrests made on September 27, 2002 at other locations in the city, were the subject of extensive media coverage on and after September 27, 2002. The arrests also precipitated a number of lawsuits, including this litigation, as well as hearings by the Judiciary Committee of the Council of the District of Columbia, which in turn ultimately resulted in the enactment of remedial legislation, “The First Amendment Assemblies Act of 2004,” codified at D.C. Code §§ 5- 331.01 through 5-337.01.

At a D.C. Council Judiciary Committee hearing conducted on October 24, 2002, some persons arrested at Pershing Park on September 27, 2002, and/or their representatives, complained that the arrests and the subsequent detentions of the arrestees were unlawful. Subsequently, the Mayor directed the Chief of Police to conduct an investigation and to submit recommendations regarding MPD handling of mass demonstrations, including but not limited to, the Pershing Park arrests. The Chief of Police tasked the MPD Office of Professional Responsibility (“OPR”) with conducting the investigation and preparing a written report to him, to utilize as the basis of the Chief’s report to the Mayor. OPR sent memoranda progress reports to the Chief on November 27, 2002, December 17, 2002, January 21, 2003, and January 25, 2003. On March 13, 2003, the Chief submitted his report to the Mayor, containing exhibits concerning the investigation. These documents, individually and collectively, attached hereto as

Exhibit C, are referred to as the MPD Report of Investigation herein, and all are subject to the Motion in Limine.[1]

## II. THE OPR REPORT TO THE CHIEF

The MPD OPR Report to the Chief, in its draft and final versions, is a summary of the investigation conducted by the MPD OPR investigators, all of whom were MPD officials. The final version of the Report is signed by Captain Matthew Klein, Commanding Officer, MPD Force Investigation Team. *See generally* Exhibit C. The substance of the Report consists of the following parts:

### Background

In this part of the Report, Klein summarized the events of September 27, 2002, to include the nature of the demonstrations, the arrests at Pershing Park and the processing of the arrestees thereafter. Ex. C at 2-3.[2]

### Persons Interviewed

In this part of the report, Klein summarized interviews conducted in person and via telephone by other MPD OPR investigators, including interviews with Assistant Chief Peter

---

[1] Plaintiffs have indicated their intent to use all of these documents at trial in this matter. *See, e.g.,* Ex. B, Plaintiffs' First Revised Proposed Exhibit List, Nos. 90, 305 (November 27, 2002 Memorandum); 91, 190, 306 (December 17, 2002 Memorandum); 195, 309 (January 21, 2003 Memorandum); 93, 196 (January 25, 2003 Memorandum); and 197, 269 (March 13, 2003 Memorandum from Chief C. Ramsey to Mayor A. Williams).

Plaintiffs initially identified more than 720 exhibits in their draft pretrial statement. *See* Ex. A (Pls Init. Ex. List). After Defendants complained that Plaintiffs' list included a host of duplicates and did not fairly apprise the Defendants as to which exhibits Plaintiffs intended to introduce at trial, Plaintiffs provided Defendants a revised list at 3:24 p.m. on Monday, February 9, 2015. See Ex. A (Pls 1st Rev'd Ex. List). ***Plaintiffs' revised exhibit list sill contains more than 510 exhibits.*** As such, it continues to be deficient under the rules as it fails to inform Defendants or the Court as to which exhibits Plaintiffs intend to rely upon at trial. Moreover, large swaths of Plaintiffs exhibits are plainly inadmissible. For example, the Plaintiffs continues to include (i) maps of Pershing Park from March 2010 (in addition to other 34 other maps of Pershing Park and the Downtown D.C. Area); (ii) newspaper articles from December 2009 regarding a snowball fight in Dupont Circle; (iii) declarations of third parties from 2007 filed in *Becker (Alliance for Global Justice) v. District of Columbia*, Civ. A. No. 01-0811 (PLF/JMF) (D.D.C.); and (iv) field arrest forms for numerous persons other than the Plaintiffs. Moreover, there appear to still be duplicates on the list, which accounts for the fact that the Defendants have noted more than one exhibit number immediately above.

[2] Because Exhibit C consists of several documents, the page numbers identified for Exhibit C refer to the page number of the entire document as indicated by the legend at the top, and not the page numbers of the actual documents within the exhibit.

Newsham, Captain Andrew Solberg, Lieutenant Jeffrey Herold, United States Park Police Major Rick Murphy, Inspector Joel Maupin, Captain Cleora Sharkey, Mr. Joseph Maye, Ms. Julie Abbate and Mr. Michael Eichler.[3] Ex. C at 3-7. Notably, Klein, himself, did not conduct any of these interviews.

**Video and Photographs**

In this part of the report, Klein briefly addressed photographs taken of the arrestees, photographs of the flexicuffs utilized during the detainment and videotapes of the crowds taken during the demonstrations. Ex. C at 7.

**Policy Review**

In this part of the report, Klein analyzed the events of September 27, 2002 in light of the extant MPD policies and procedures relating to mass arrests and prisoner processing. The OPR investigators addressed the questions of why the protestors in Pershing Park were arrested; whether the charges placed on the Pershing Park arrestees were correct; why warnings to disperse were not given in Pershing Park. Further, they examined transportation, detention, and additional handcuffing techniques. Each topic set forth above includes a brief analysis by the OPR investigators as to whether the actions of MPD on September 27, 2002 conformed to MPD policies and procedures. Ex. C at 7-13.

**Recommendations**

In this part of the Report, Klein made three recommendations to the Chief of Police: (1) to reexamine the current command and control structure utilized during major events; (2) to review the procedures used for arrests during mass demonstrations and update the Mass Demonstrations Handbook; and (3) to implement manual backup procedures immediately upon

[3] Plaintiffs have also designated the hearsay statements of many of these individuals as exhibits *See* Ex. B Nos. 419 (Solberg); 142 (Herold); 172 (Murphy); 221 (Maupin); 332 (Sharkey); 2 (Abbate).

receiving notification that the Prisoner Control automated booking programs are, or are about to be, off line and not available for service. Ex. C at 13-14.

The Report includes, as enclosures, two pictures of demonstrators sitting on mats on the floor at the MPD Training Academy; flexicuffs and a person being restrained by flexicuffs; and copies of flyers advertising the demonstrations. Copies of the statements of the persons interviewed by the OPR investigators were also included as attachments.

## III. ARGUMENT

### A. The MPD Report is not relevant, admissible evidence under FRE 401, 402 and 403 because the Report has no evidentiary value.

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Put another way, relevancy is the "relation between an item of evidence and a matter properly provable in the case." Advisory Committee Notes, Fed. R. Evid. 401; *United States v. Foster*, 986 F.2d 541, 545 (D.C. Cir. 1993); *United States v. Doe*, 903 F.2d 16, 20-21 (D.C. Cir. 1990). Evidence which is not relevant under Rule 401 is not admissible under Rule 402. *Doe*, 903 F.2d at 21. Even evidence which is relevant may be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice. Unfair prejudice means an undue tendency to suggest a decision on an improper basis. *Id*. The trial court's evidentiary rulings regarding the relevance and admissibility of evidence are reviewed for abuse of discretion. *United States v. Edwards*, 388 F.3d 896, 899 (D.C. Cir. 2004).

The MPD Report is a summary of the actions taken by the OPR investigators and their evaluations and recommendations to the Chief based upon the investigation they conducted, and the Chief's report to the Mayor. The OPR investigators were subordinates of the Chief of Police acting at the direction of the Chief of Police, and reported their findings and recommendations to

the Chief of Police. In his March 13, 2003 memorandum to the Mayor, the Chief stated that he reviewed the January 25, 2003 OPR Report and "concurred with the findings." Ex. C at 152. The Chief then reported to the Mayor his decisions with respect to the recommendations in the Report. *Id.* at 153-154. The Chief did not vouch for the accuracy of the OPR Report, did not voice his agreement with the analyses in the OPR Report, and did not indicate that he accepted the OPR Report as a complete, completely accurate factual recitation of all aspects of all of the events which occurred on September 27, 2002. Rather, the Chief only reported to the Mayor that he had reviewed the OPR Report and that he concurred with its findings; the Chief then expressed his own views to the Mayor and communicated to the Mayor the decisions that the Chief made based upon the OPR Report, and perhaps based on other sources of information.

The MPD Report, including the Chief's memorandum to the Mayor, is not evidence of any facts in the case; rather it is the work product of the MPD OPR investigators and the decision memorandum from the Chief of Police to the Mayor based upon that OPR work product. Thus, the Report, in and of itself, has no evidentiary value.

With respect to the witness statements mentioned in the Report, all of those statements have been produced to plaintiffs' counsel. All of the persons who gave those statements have been, or could have been, deposed. The witness statements, and any testimony given by any of the witnesses before the Council Judiciary Committee, or at deposition, are available for impeachment at trial, if appropriate. The summaries by the OPR investigators of the witness statements are not admissible evidence; they are hearsay and are not admissible for any purpose.

Even if the Report had any evidentiary value, which it does not, it still should be excluded under FRE 403. There has been exhaustive discovery over the course of the past twelve years, and the facts of the arrests and subsequent detentions are essentially uncontested. Thus, the Report has no probative value, and admission of the Report could result in unfair

prejudice to the defendants, including Newsham, to the extent that the Report is critical of any MPD actions, practices or policies.

Likewise, the OPR Report to the Chief is an expression of the collective, subjective opinions of the OPR investigators, who are members of MPD, to the Chief of MPD for his consideration and for any use that he determined to be appropriate. The analyses, conclusions, views and recommendations of the OPR investigators are not factual evidence, nor are they binding on any of the defendants in this litigation. The Chief's report to the Mayor likewise is not factual evidence, but because the views of the OPR investigators have been reduced to writing and submitted to the Chief of Police, the Report could be considered by the jury to be an admission against interest of the District of Columbia and/or Chief Ramsey and/or an inference of liability against Assistant Chief Newsham and/or the Federal defendants. Thus, the non-evidentiary OPR Report could be unfairly prejudicial to the defendants.

The Chief's memorandum to the Mayor consists of changes in MPD policies and practices that the Chief intended to make based on the OPR Report and perhaps other considerations. Ex. C at 152-154. The Chief's memorandum to the Mayor is not evidence of any facts, but, like the OPR Report to the Chief, it could be viewed by the jury as an admission against interest, a result which would be unfairly prejudicial to all of the defendants in the case.

**B. The Report is not admissible evidence under Federal Rule of Evidence 407**

Federal Rule of Evidence 407 provides, in pertinent part, that "when, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, . . . or a need for a warning or instruction." Fed. R. Evid. 407.

The basis for the exclusion of remedial measures "rests on a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety. The Courts have applied this principle to exclude evidence of subsequent repairs, installation of safety devices, changes in company rules and discharge of employees and the language of the present rule is broad enough to encompass all of them. . . .Exclusion is called for only when the evidence of subsequent remedial measures is offered as proof of negligence or culpable conduct. In effect, it rejects the suggested inference that fault is admitted. . . . Evidence of subsequent measures that is not barred by Rule 407 may still be subject to exclusion on Rule 403 grounds when the dangers of prejudice or confusion substantially outweigh the probative value of the evidence." Advisory Committee Notes, Fed. R. Evid. 407.

The exclusionary provisions of Rule 407 have been broadly applied by the Courts to encompass changes in company rules or a change in policy. Moreover, the application of Rule 407 is not limited to remedial actions taken by a responsible party against to whom the evidence is offered; any remedial actions are excludable under Rule 407. Advisory Committee Notes, Fed. R. Evid. 407; *In re Aircraft Disaster*, 86 F.3d 498, 529 (6th Cir. 1996); *accord McFarland v. Caterpillar, Inc*., 974 F.2d 176, 181 (D.C. Cir. 1992). Evidence of policy changes suggested in the MPD Report after the September 27, 2002 incident which gave rise to this litigation is excluded under Rule 407 if offered to prove negligence or culpable conduct in connection with the September 27, 2002 event. *Cox v. District of Columbia*, 1992 U.S. District LEXIS 9246, * 5 (D.D.C. June 26, 1992); *Specht v. Jensen*, 863 F.2d 700, 701 (10th Cir. 1998), *cert. denied* 488 U.S. 1008 (1989). (Press release summarizing the results of the City's investigation about alleged illegal search of plaintiffs' home and office excluded under Rule 407 as "the press release here summarizes the result of the City's investigation of the incidents giving rise to the lawsuit. The release states that the officers involved exercised poor judgment in failing to read

the writ of assistance thoroughly, and that appropriate disciplinary action would be taken. The release thus sets out remedial measures taken by the City to prevent the recurrence of the poor judgment the investigation revealed, and is therefore within the ambit of the Rule"); *Complaint of Consolidation Coal Company*, 123 F.3d 126, 136 (3d Cir. 1997); *Gilanean v. City of Boston*, 431 F. Supp. 2d 172, 177 (D. Mass. 2006).

The MPD Report is a self-initiated remedial measure taken by the Executive Branch of the District of Columbia Government which ultimately resulted in revised MPD policies and procedures for handling mass demonstrations. Thus, the MPD Report is not admissible to prove negligence or culpable conduct on the part of the District of Columbia Government or any of its employees for the arrests which were made on September 27, 2002.

**C. The MPD Report is not admissible under Federal Rule of Evidence 803(8), Public Records and Report.**

Federal Rule of Evidence 803(8) provides that, "records, reports, statements or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency; or (B) matters observed pursuant to a duty imposed by law as to which matters there was a duty to report, . . . or (C) in civil actions and proceedings . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness," are not excluded by the hearsay rule, even though the declarant is available as a witness.

The hearsay rule exception set forth in Rule 803(8), if applicable, does not mean that the offer of evidence is necessarily admissible; it merely means that the hearsay rule does not apply. Rule 803(8) does not apply with respect to the MPD Report because the MPD Report is not admissible under Rule 803(8)(C).[4]

[4] Rule 803(8)(A) and (B) are not relevant to this case.

The MPD Report consists of much more than factual findings, and the factual findings in the Report are based upon hearsay. Official records which contain hearsay, and which are not based upon the personal knowledge of the official who prepared the record, are excludable. *Howard v. United States*, 278 F.2d 872 (D.C. Cir. 1960). Moreover, even documents which set forth personal knowledge in the nature of opinions and recommendations, which are based upon selected facts from an investigation, are not properly admissible evidence because they are subject to selection bias, even if the investigation was conducted at the direction of lawful authority. *In re Brooks*, 383 F.3d 1036, 1045-1046 (D.C. Cir. 2004).

The OPR Report is an amalgam of information, opinions and recommendations, prepared by subordinate MPD investigators. The Report was never intended to be a factual evidentiary report; rather, it is a comprehensive policy review, based entirely on hearsay, which was prepared to be submitted to and utilized by the Chief of Police, as he saw fit, in determining what changes, if any, MPD should make in its policies and practices with respect to mass demonstrations. The MPD Report is nothing like a report prepared as part of a criminal investigation or for judicial prosecution. It solely contains facts that are based upon public sources, newspaper articles, hearsay witness statements, or internal MPD documents. All of these "factual sources" which are identified in the Report are available as primary evidence at trial, subject to the customary rules of evidence and procedure. The only thing that the Report provides which is unique is the evaluations and perspectives of the OPR investigators who prepared the Report. That is not factual evidence admissible under Rule 803(8)(C).

The MPD Report contains virtually all of the deficiencies found by the District Court in *Pearce v. E.F. Hutton Group, Inc.*, 653 F. Supp. 810 (D.D.C. 1987), which caused the District Court to exclude from evidence a report of a Subcommittee on Crime of the House Judiciary Committee. As in the *Pearce* case, even if the MPD Report was admissible under Rule

803(8)(C), it would be inadmissible under Rule 403 because a jury would be likely to attach undue weight to the internal MPD Report, notwithstanding that the Report represents only the views of the OPR investigators who prepared the Report and the policy decisions of the Chief of Police.

With respect to the "facts" concluded in the Report, all of these asserted facts are based on secondary hearsay sources and, to the extent that witness testimony is summarized, the Report is not trustworthy because some of the witnesses, most notably then United States Park Police Major Rick Murphy, have repudiated the accuracy of the summary set forth in the Report, in sworn deposition testimony. The summarization of witness statements and/or testimony by the OPR investigating officials is incomplete, in some instances misleading, and in some instances flatly incorrect. Thus, the Report is unreliable as to some of the "facts" set forth therein. The best evidence of the witness statements and/or testimony is the actual statements and/or testimony of the witnesses, which statements and/or previous testimony can certainly be used for impeachment at trial, if appropriate. The MPD Report does nothing but interpose a layer of interpretation in a manner which is inadmissible as evidence.

The purpose of the OPR investigation which culminated in the Report to the Chief of Police, and in the Chief's report to the Mayor, was not to prepare factual findings regarding the Pershing Park arrests which occurred on September 27, 2002, but rather to engage in a broad review of MPD mass demonstration policies and procedures. In *Ariza v. City of New York*, 139 F.3d 132 (2d Cir. 1997), the Court of Appeals affirmed a District Court decision excluding portions of a Police Department Internal Affairs Bureau report on the grounds that Rule 803(8)(C) was not applicable because the report, titled "Police Corruption and Culture: A Focus Group Methodology . . . Summarized [Group] Discussions and made generalized recommendations regarding future Departmental behavior. It did not, and was not intended to,

set forth factual findings based on a factual investigation; its stated purpose was 'to identify and explore some of the prevailing attitudes, perceptions and opinions of Police Officers for a range of integrity-related issues.'" *Id*. at 134. Similarly, the MPD Report did not, and was not intended to, set forth factual findings based on a factual investigation of the Pershing Park arrests. Rather the purpose and contents of the MPD Report was to address broad policy issues regarding MPD handling of mass demonstrations. Thus, the MPD Report selectively utilizes "facts" regarding the Pershing Park arrests which were considered by the OPR investigators to be relevant to the policy issues which were being reviewed, and is not the type of official fact finding report within the purview of Rule 803(8)(C).

**D. The Statements Made by an MPD Investigator Concerning His Interview with Major Murphy Are Inadmissible Hearsay.**

In addition to the above reasons, the Court should exclude those portions of the Report that purport to relay statements made by Major Murphy and other witnesses because they are inadmissible hearsay. The Report contains two of these portions: (i) an exhibit to the Report containing an interview summary prepared by an MPD investigator regarding his interview with Major Murphy, (Ex. C at 47), and (ii) in the body of the Report, passages purporting to summarize the interview summary (Ex. C at 5). The former is hearsay, the latter is hearsay-within-hearsay. Neither is admissible and both should be excluded.

Rule 802 provides that "[h]earsay is not admissible" unless an exception applies. Fed. R. Evid. 802. Rule 801 defines hearsay to mean an out of court statement offered for the truth of the matter asserted. Fed. R. Evid. 801(a)-(c). Rule 805 provides that hearsay within hearsay -- *i.e.*, an out of court statement purporting to convey another out of court statement -- is admissible only if "each part of the combined statements conforms with an exception to the [hearsay] rule." Fed. R. Evid. 805.

*First*, the interview summary annexed as an exhibit to the Report is plainly hearsay. It is an out of court statement made by an MPD investigator, which Plaintiffs appear to offer to prove the truth of the matters asserted therein -- namely the content of statements made by Major Murphy to the investigator. There is no indicia from the face of the document or anything else in the record that the interview summary qualifies for an exception to hearsay. Indeed, investigative summaries such as this are routinely excluded from evidence as hearsay. *See, e.g.*, *United States v. Sesay*, 313 F.3d 591, 599 (D.C. Cir. 2002) (excluding witness statements made in police investigative report); *United States v. Wilkerson*, 656 F. Supp. 2d 22, (D.D.C. 2009) (Hogan, J.) ("[a witness] statement as recorded in the police report is classic hearsay: an out-of-court statement offered for the truth of the matter asserted"). Moreover, as noted above, the interview summary is unreliable. *Supra* at 10-11. Indeed, the summary contains an obviously erroneous creation date. *See* Ex. C at 47 (noting creation date of "12/17/03" when document was publicly filed on "09/12/03"). Consequently, even if the interview summaries could arguably be a public record (which argument finds no support in the record), the summaries do not qualify for that hearsay exception. *Supra* at 10-11.

*Second*, Klein's characterization of the interview summaries in his Report fares no better. Indeed, Klein's statements about the out of court statements in any interview summary are hearsay within hearsay and inadmissible. That is, if the interview summary is hearsay, Klein's characterization of it is plainly hearsay.

Consequently, the Court should exclude these portions of the Report as they contain inadmissible hearsay.

## **Conclusion**

Although the internal investigation conducted by MPD which resulted in the Report was appropriate as a method to assist the Chief of Police to determine if new "work rules" were

appropriate or necessary with respect to MPD response to mass demonstrations, the MPD Report was never intended to be, and is not, relevant evidence under Rule 401, nor could the plaintiffs introduce the Report as evidence under Rule 803(8)(C) and Rule 403 for the purpose of attempting to influence the jury to conclude that the Report is an admission against interest for which the individual defendants in the case can be held liable, to the unfair detriment of all of the defendants in this litigation. Thus, the MPD Report is not admissible.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ELLEN A. EFROS D.C. Bar No. 250746
Deputy Attorney General
Public Interest Division

/s/_William_F._Causey_______________
WILLIAM F. CAUSEY D.C. Bar No. 260661
SHANA L. FROST D.C. Bar. No. 458021
Assistant Attorney General
441 Fourth Street, N.W.
Washington, DC 20001
(202) 724-6610
william.causey@dc.gov

*Counsel for the District Defendants*

/s/ Lauren E. Curry
Lauren E. Curry (D.C. Bar No. 990522)
Brown Rudnick LLP
Seven Times Square
New York, NY 10036
(212) 209-4953
(212) 938-2991 (fax)
lcurry@brownrudnick.com

*Counsel for Defendant Charles H. Ramsey*

/s/ Robert E. Deso
Robert E. Deso #174185

Deso & Buckley, P.C.
1828 L. St., N.W., Suite 270
Washington, D.C. 20036
(202) 822-6333
(202) 822-6665 - Fax
redeso@dtswlaw.com

*Attorney for Defendant Peter J. Newsham*

RONALD C. MACHEN JR., D.C. Bar #447889
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By: ___________/s/___________________________
MARINA UTGOFF BRASWELL, D.C. Bar #416587
BRIAN P. HUDAK
Assistant United States Attorneys
555 Fourth Street, NW
Washington, DC 20530
(202) 252-2549

*Attorneys for Federal Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **RAYMING CHANG, *et al.*** | * | |
| **Plaintiffs,** | * | |
| **v.** | * | **Civil No. 1:02-CV-02010 (EGS) (AK)** |
| **UNITED STATES OF AMERICA, *et al*.** | * | |
| **Defendants.** | * | |
| | * | |

**ORDER**

Upon consideration of the Motion in Limine to Exclude from Evidence the Report of Investigation Prepared by the Metropolitan Police Department Regarding the Fall 2002 IMF/World Bank Protests, the Opposition thereto, and the record herein, it is hereby

**ORDERED**, that the Motion is **GRANTED**; and it is

**FURTHER ORDERED**, that the Report of Investigation Prepared by the Metropolitan Police Department Regarding the Fall 2002 IMF/World Bank Protests, and all references thereto or statements therein, are excluded from evidence.

____________________
Date

____________________________________
Emmet G. Sullivan, Judge
United States District Court for the
District of Columbia

Copies to counsel of record via ECF