```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - x
RAYMING CHANG,
                                 CA No:  02-2010
              Plaintiff,

                                 Washington, D.C.
                                 Friday, May 29, 2015
vs.                              10:20 a.m.

UNITED STATES OF AMERICA,

        et al.,

              Defendants.
- - - - - - - - - - - - - - - x
```

_____

            TRANSCRIPT OF STATUS CALL PROCEEDINGS
      HELD BEFORE THE HONORABLE EMMET G. SULLIVAN,
              UNITED STATES DISTRICT JUDGE
_____

APPEARANCES:


For the Plaintiff:          Jonathan Robert Turley, Esq.
                            GEORGE WASHINGTON UNIVERSITY LAW
                            SCHOOL
                            2000 H Street, NW
                            Washington, DC 22101
                            (202) 994-7001
                            Fax: (202) 994-9811
                            Email: Jturley@law.gwu.edu

                            Daniel C. Schwartz, Esq.
                            BRYAN CAVE, LLP
                            1155 F Street, NW
                            Suite 300
                            Washington, DC 20004
                            (202) 508-6025
                            Fax: (202) 220-7325
                            Email: Dcschwartz@bryancave.com

APPEARANCES:   Cont.

For the Plaintiff:              Jacob A. Kramer, Esq.
                                BRYAN CAVE, LLP
                                1155 F Street NW
                                Suite 700
                                Washington, DC 20004
                                (202) 508-6153
                                Fax: (202) 220-7453
                                Email: Jakramer@bryancave.com

                                Jennifer Kies Mammen, Esq.
                                BRYAN CAVE, LLP
                                1155 F Street, NW
                                Suite 300
                                Washington, DC 20004
                                (202) 508-6044
                                jennifer.mammen@bryancave.com

                                Heather Shaw Goldman, Esq.
                                BRYAN CAVE, LLP
                                1155 F Street, NW
                                Suite 300
                                Washington, DC 20004
                                (202) 508-6311
                                Email: Heather.goldman@bryancave.com

For the Defendants:             Brian P. Hudak, Assistant U.S.
                                Attorney
                                U.S. ATTORNEY'S OFFICE FOR THE
                                DISTRICT OF COLUMBIA
                                555 Fourth Street, NW
                                Washington, DC 20530
                                (202) 252-2549
                                Fax: (202) 252-2599
                                Email: Brian.hudak@usdoj.gov

                                Marina Utgoff Braswell, Assistant
                                U.S. Attorney
                                U.S. ATTORNEY'S OFFICE
                                Civil Division
                                Room E4816
                                555 Fourth Street, NW
                                Washington, DC 20530
                                (202) 252-2561
                                Fax: (202) 252-2599
                                Email: Marina.Braswell@usdoj.gov

```
APPEARANCES:   Cont.

For the Defendants:          Jonathan H. Pittman, Chief
                             Civil Litigation Division,
                             Section III
                             One Judiciary Square
                             441 4th Street, NW
                             Suite 630 South
                             Washington, DC  20001
                             (202)724-6602
                             Email: Jonathan.pittman@dcgov.com

                             William Frederick Causey, Esq.
                             OFFICE OF THE ATTORNEY GENERAL FOR
                             THE DISTRICT OF COLUMBIA
                             Public Interest Division
                             441 4th Street, NW
                             6th Floor
                             Washington, DC 20001
                             (202) 724-6610
                             Email: William.causey@dc.gov

Court Reporter:              Scott L. Wallace, RDR-CRR
                             Official Court Reporter
                             U.S. Courthouse, Room 6718
                             333 Constitution Avenue, NW
                             Washington, DC  20001
                             202-354-3187
```

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

1 <u>**MORNING SESSION, MAY 29, 2015**</u>

2 (10:20 a.m.)

3     THE COURTROOM CLERK:  Good morning, Your Honor.

4     THE COURT:  Good morning, good morning.

5     THE COURTROOM CLERK:  Your Honor, this is civil action

6 02-2010, *Rayming Chang versus United States of America*, et al.

7     Will parties please come forward and identify yourselves

8 for the record, please.

9     MR. TURLEY:  Good morning, Your Honor.  Jonathan Turley

10 representing the Chang plaintiffs.  With me at counsel's table is

11 Dan Schwartz, Jay Kramer, Jennifer Mammen and Heather Goldman,

12 all from the law firm of Bryan Cave.

13     THE COURT:  All right.  I know everyone's name by heart

14 now.  Welcome.  Good to see everyone again.  For defense counsel.

15     MR. PITTMAN:  Good morning, Your Honor.  Jonathan Pittman

16 for the Office of the Attorney General.  I am not counsel of

17 record.  I'm here today and I hope the Court will permit my

18 presence.  In the event --

19     THE COURT:  You want to join this group?

20     MR. PITTMAN:  I'm here.  Let me dodge that question with

21 the following answer, Your Honor.  In the event settlement comes

22 up, there have been some settlement discussions, and I'm here

23 prepared to address those.  There have been some settlement

24 developments.

25     THE COURT:  Oh, really.  That's very interesting.  I

```
1   hadn't planned to because I try to stay out of that.  I try to

2   persuade people to go to these outstanding mediators.  Everyone

3   knows who they are, but sure, at some point -- maybe I should

4   hear from you first, maybe.  Maybe I should hear from you first.

5   Why don't you introduce your colleagues.  Maybe I should hear

6   from you first.  I think I should.

7        MR. PITTMAN:  Mr. Causey, Bill Causey is here.  Jennifer

8   Austin.  I apologize, I don't know the rest of the counsel

9   because I'm new to the case.

10        THE COURT:  Stick around, you will.  Stick around.  Do you

11   want me to introduce them?  I know them.

12        MR. PITTMAN:  I will rely on Your Honor's knowledge of

13   them.

14        THE COURT:  Let me invite them to the podium.

15        MS. CURRY:  Good morning, Your Honor.  Lauren Curry

16   representing former Chief Ramsey.

17        THE COURT:  Ms. Curry.

18        MR. DESO:  Good morning, Your Honor.  Robert Deso for

19   Assistant Chief Newsham.

20        THE COURT:  Good morning, counsel.

21        MS. BRASWELL:  Good morning, Your Honor.  Marina Braswell

22   with Bryan Hudak from the U.S. Attorney's Office and Randolph

23   Myers from the Department of the Interior representing federal

24   defendants.

25        THE COURT:  All right.  Good morning.
```

1      MR. FRANCUZENKO:  Good morning, Your Honor.  Alex

2  Francuzenko on behalf of the Fairfax sheriff.

3      THE COURT:  All right.  Good morning again.  Good to see

4  you again.  Why don't you tell me about settlement.  Again, I

5  don't want to get involved in the details, but is there a chance

6  for settlement now?

7      MR. PITTMAN:  We have sought authority.  We made a written

8  offer last night.  We made it at that point subject to mayoral

9  approval.  I can now report that we have received this morning

10  mayoral approval.  So we have authority.  We made an offer.  We

11  haven't gotten a response, and obviously it's -- we just made it,

12  but we did want to report that development.

13      THE COURT:  All right.  That's significant, I think.  I'm

14  not sure.  Have you communicated the offer to defense -- to

15  plaintiff's counsel?

16      MR. PITTMAN:  Yes, yes.  The only thing I would add is

17  that we now have mayoral authority.

18      THE COURT:  That's significant.  Thank you very much.

19  Counsel, without getting into details, I don't want to get into

20  settlement, but any interest?

21      MR. TURLEY:  Well, we've always been interested, Your

22  Honor, and we continue to be interested.  We only received this

23  offer at 10 p.m. last night.  I've had no interaction with new

24  counsel.  You know, the offer is less than what's been offered in

25  the past, but we are willing to use this as a foundation, we

1    always have, to discuss settlement, but the parties still remain

2    clearly from this offer far apart.  In fact, we seem to be losing

3    ground.

4         THE COURT:  Okay.  Again, I don't know.  Is it the

5    parties' intention to go back to any of the mediators you've

6    spoken to in the past or not?

7         MR. TURLEY:  We've repeatedly stated that we would be

8    willing to at any point resume mediation, and we're willing to

9    discuss settlement with anyone.  I'll discuss settlement with a

10   goat in a boat, I don't care, but we have to have a mutuality.

11   What we hope is that we won't lose our trial date.  We're

12   willing.

13        THE COURT:  I'm going to talk about that.  So -- and

14   that's why I wanted to bring you in.  I didn't want to just issue

15   an order and, you know, take the easy approach.  I didn't want to

16   do that.  I thought it was appropriate to bring counsel in and be

17   candid with counsel about pending matters and, you know, the

18   trial date.

19        But this is -- I hadn't even thought -- Believe me, the

20   word settlement hadn't even reached -- I didn't factor -- I

21   haven't even focused on that because I just didn't think that was

22   a distinct possibility in this case.

23        But let me do this.  Let me proceed with what I had

24   intended to talk about, and then we can talk further about where

25   we go from here at this point.

```
1          MR. TURLEY:  Okay.

2          THE COURT:  A couple of things.  There are, as you well

3    know, there are numerous pending motions before the Court.  I can

4    tell you that the Court has been, and I'm taking my time, I want

5    to choose my words very carefully because -- well, for a host of

6    reasons, but the Court has been spending a considerable amount of

7    time working through these Special Master issues, and the

8    decision -- the Court's decision with respect to the Special

9    Master's report is still ongoing -- the Court's consideration of

10   those issues is still ongoing.

11         Regardless of how the Court finally decides the issues

12   involved in the Special Master's report, I have no doubt that

13   pending motions could be impacted.  You know, I'm not saying they

14   will be impacted.  They definitely will be impacted; they could

15   be.  I suspect that they could be and will be.  That's my

16   suspicion, but, you know, trial strategy is what the people in

17   the well of the court are going to focus on to determine whether

18   or not there's a need to modify any pending pleadings before the

19   Court, and it may well be that a strategy could be not to seek to

20   modify anything, and maybe there's a strategy on behalf of some

21   parties to modify what's been pending or to withdraw or concede

22   or whatever.  There are a myriad of remedies potentially

23   available, depending on what the Court does and how the Court

24   resolves the Special Master's recommendations, which I want to

25   remind counsel, I didn't get his conclusions, Judge Facciola's
```

1   conclusions of law until December, and although the parties have

2   agreed that the facts are true and the Court has signed an order

3   accepting the proposed Findings of Fact as, indeed, facts, the

4   Court has had to weigh through each and every one of those, and

5   that's not been an easy task at all, and the stakes are high for

6   both the plaintiffs as well as the defendants.  So I've taken my

7   time with this, and it brings me to the next point.  My time has

8   not been my own for a long time.  I'll talk about at least one

9   major development that has taken up a considerable amount of time

10  and involves a number of people who are incarcerated and some of

11  whom are serving sentences.  This has to do with the FBI Lowry

12  case.  I'm not talking out of school when I say that everyone

13  knows by now our dear colleague Judge Huvelle had a horrible

14  accident last June.  She's doing well.  She has had a miraculous

15  recovery.  And, in fact, so much so that she asked me for a trial

16  and I gladly gave it to her, jury trial, and she's doing well,

17  and I'll give her more trials.  In fact, I asked her did she want

18  this case, and I can't repeat what she told me.  No, she was very

19  kind.  She smiled and she said no, not at this time, but I have

20  others to give her.  We're going to keep her busy.  She's doing

21  extremely well, but when she had that accident I knew she had a

22  major criminal conspiracy case on her calendar involving some 40

23  defendants or so, around that number, and I volunteered to take

24  that case from her.  I didn't -- you know, I didn't want that

25  case to go on the random assignment wheel and it just be randomly

1    assigned and someone get it.  I thought that that was consistent

2    with the fair administration of justice, for someone to step up

3    to the plate and take it, as if I had plenty of time, which I

4    didn't, but she's a dear colleague -- all of my colleagues are

5    dear -- and I wanted to do what I could to help her out, and I

6    took that case.  And then in October -- that's along with other

7    conspiracies I have.  I have about -- I have some cases involving

8    fewer than a hundred defendants, but that's including Judge

9    Huvelle's case.  But in October or November, the government

10   revealed that agent -- the FBI Agent Lowry had been suspended, he

11   was under investigation for at that time allegations of improper

12   conduct, and he subsequently pled guilty to some serious charges

13   before Judge Hogan, and he's awaiting sentencing.  But the big

14   problem in that case was, what's the impact of his alleged

15   misconduct at that time?  How does that impact cases before me

16   and individuals before me?  Because he was a major player on --

17   and I'm not talking out of school, but I'm being very careful of

18   what I say because there have been a lot of sealed cases -- he

19   was a major investigator with respect to many of these

20   individuals.  So -- and then it's further complicated because the

21   U.S. Attorney's Office in D.C. has recused itself because the

22   U.S. Attorney's Office in D.C. has been working hand-in-hand with

23   Lowry and other FBI agents and on many cases, so I think it was

24   entirely appropriate for that office to recuse itself.  And what

25   that meant was the Department of Justice assigned the Eastern

 1    District of Pennsylvania to be the investigative -- the

 2    investigators and prosecutors for all purposes, which raises all

 3    sorts of other issues.  How in the world would the EDPA know

 4    about, for instance, *Brady*, which is a very important issue?  How

 5    would that office possibly know about *Brady* evidence material, et

 6    cetera, which could impact defendants before me that that office

 7    had not prosecuted, and that was a difficult question, but

 8    suffice it to say that there were discussions between the Court,

 9    sealed discussions between the Court and the prosecutors from

10    EDPA, whom I found to be absolutely outstanding, just as

11    outstanding as the prosecutors and the prosecutor's office in

12    D.C., and essentially that office, unlike a lot of U.S.

13    Attorney's Offices in the country, and I'm not being critical,

14    I'm just being factual, basically has an open file discovery

15    process, and the EDPA prosecutor told me in court, a former

16    criminal defense attorney, and he said, Judge, if I have to pause

17    for a second to think about whether something is *Brady*, you know,

18    you know, I just turn everything over, which was music to my

19    ears, and I've had nothing but great cooperation.  So everything

20    has been flowing, a ton of evidence has been flowing from that

21    office to D.C..  D.C. is recused, which complicates matters, so

22    I've had to review a lot of material, redact a lot of material,

23    make sure the system works for individuals before me, these

24    hundred individuals or so, make sure they get the information

25    that they're entitled to under the law so they can make

1    intelligent decisions about moving to withdraw a plea, whatever,

2    reductions, whatever they want to do.  It's been time-consuming,

3    to say the least, and I don't regret taking that case from Judge

4    Huvelle.  If I had to do it again, I would take that case,

5    another case, or anything to help her out, and that's just one

6    example of how my time is being spent.

7         Actually, the Chief Judge of the 9th Circuit, Chief Judge

8    Kozinski, invited me to sit on the 9th Circuit, something I

9    really wanted to do, in February and I couldn't do it, and that's

10   fine.  There will be other opportunities.  He's no longer chief

11   judge, so I have to wait for another invitation from the current

12   chief judge, but that's fine.  I thought it would be manageable

13   to do it, but it wasn't.  And there are some other things that

14   I've not been able to do and that's fine.  The bottom line is I

15   haven't finished -- I haven't finished what I'm doing in this

16   case, and I have doubts about, serious doubts about the viability

17   of that trial date because -- I'm going to be finished soon, and

18   probably -- and, you know -- and again, I've learned over the

19   years, you can't give dates because when that date comes and

20   nothing happens, then the phone starts ringing, people call.  So

21   it's going to be done, it's going to be finished soon, very soon,

22   and that's about all I can say.  But I have every reason to

23   believe that the tentative conclusions I've reached will impact

24   matters before me, and I really suspect, based on my experience,

25   that people are going to ask to amend pleadings, maybe withdraw,

1     maybe file new, so I think we have to be realistic about the

2     trial date.  I know I've moved it once and I moved it for the --

3     because of Lowry and some other matters, but I think we have to

4     be realistic.  And I hate to raise it now.  If you tell me that

5     settlement discussions are ongoing -- because that may have an

6     impact one way or the other on that.  I don't know.  But I

7     appreciate Mr. Pittman telling me that.

8          The bottom line is, are we going to be in a position to

9     proceed to trial on July 1 or 2?  I don't think so.  So what

10    makes sense?  I think what makes sense is to give you, yet and

11    still, a third realistic trial date, and I have every reason to

12    believe that people are going to ask to move it, and no one

13    should be -- no one should have his or her back to the wall, and

14    I don't want to have my back to the wall either.  I don't think

15    it's realistic to think we're going to go to trial in July.

16         Now, I do think it's realistic -- the Lowry investigation

17    is concluded.  Agent Lowry has pled guilty.  He's awaiting

18    sentencing.  The discovery process still is ongoing.  There's

19    still a ton of information coming from EDPA through me and

20    through the U.S. Attorney's Office in D.C., and much of it has

21    been redacted and given to defense counsel, but I can -- I can

22    see the light at the end of the tunnel.  And I hasten to add to

23    it that the majority of those individuals, actually probably 85

24    percent of the individuals potentially impacted by Lowry, are in

25    jail, incarcerated and sitting there.  Some have pled and not

```
 1    been sentenced.  Some of them sentenced and serving sentences.
 2    Some have been freed, not before me, but before other judges
 3    because of Lowry's involvement, more significant involvement in
 4    those cases.
 5          But, again, I can see the light at the end of the tunnel.
 6    So I wanted to bring you in.  I didn't want to sit down and write
 7    an opinion about this and post it.  I think it was only fair to
 8    counsel to bring you in and let you know what I'm dealing with,
 9    but also let you know, give you assurances that if there's not a
10    settlement, there's going to be a resolution on the merits in
11    this case either by way of motions or trial this year.  So, what
12    makes sense in terms of timeframe?  I think what makes most sense
13    is to think about August for a trial or September.  And I think
14    the problem is there is a case set in September, but October, I
15    think -- October's fine.  So I'm looking at October, but I need
16    some help from you folks as to whether or not October is spoken
17    for in a way that precludes you from making any adjustments.
18    When it gets into November and December it gets more problematic,
19    but November is certainly better than December, but October is
20    probably the best month, and that would be -- and I'm willing to
21    do this:  I'm starting like a four-week trial right after Labor
22    Day, a complicated medical malpractice trial, 18 and 19 experts
23    or so, but, you know, that's fine, that's my problem, that's my
24    issue, but I don't have any problems putting this case right
25    behind that, so -- because I'm serious about giving you some
```

1    finality if you cannot -- at least finality in this Court,

2    assuming that counsel can't achieve their own finality.  So I

3    need some guidance from you.  October, the first part of October?

4         MR. TURLEY:  Thank you, Your Honor.  We certainly

5    understand your schedule.  I want to confirm.  So we should go

6    ahead and tell our witnesses that the July date has been vacated?

7         THE COURT:  Well, let's hear from everyone here.  I just

8    don't want to keep them hanging, too.  July -- and I picked that

9    date -- I recognize we're up against the 4th of July.  I'm sure I

10   impacted someone's holiday, I'm sure, but I think it's only fair,

11   if we're going to move it, and I think we should, to tell people

12   so they can go ahead and make other plans, vacation plans,

13   whatever, other litigation plans, I think, but I want to hear

14   from everyone else.  So, are there any problems with October on

15   this side of the table?

16        MR. TURLEY:  I don't have any problems, but what I might

17   suggest, because I know the Court has other things on the

18   calendar, is that --

19        THE COURT:  I'm not worried about that.  You've got my

20   attention and time now.

21        MR. TURLEY:  If we can, one possibility is we can confer

22   with opposing counsel on October, work with the clerk.  Right now

23   October looks like it's okay from my perspective, but we could

24   work with opposing counsel, compare some dates, and then confer

25   with your clerk.

1          THE COURT:  Why don't I do this.  Why don't I let you talk

2     now.

3          MR. TURLEY:  Okay.

4          THE COURT:  And I can take a recess, because I do have

5     another matter, and I see the attorneys have their hands on their

6     hips standing up there waiting in the batter's box, right, Mr.

7     Wiegand?

8          MR. WIEGAND:  Absolutely, Your Honor.

9          THE COURT:  He's a big baseball fan.  That's why I said

10    that.  Why don't I do this.  Why don't I take a few minutes and

11    let you talk amongst yourselves, but I'm looking at October.

12         MR. TURLEY:  Okay.  We'll confer.

13         THE COURT:  I'll take a short recess.  No one needs to

14    stand.  I'll take a short recess.

15         (Brief recess taken from 10:40 a.m. to 10:53 a.m.)

16         MR. TURLEY:  Thank you, Your Honor.  We did confer.  The

17    general consensus is that we may be able to do this if we could

18    start September 28th, but that may interfere with your schedule.

19    The only issue is that we have conflicts -- we have, of course,

20    Columbus Day on the 12th, so we're not sure how long this would

21    go.  We have a conflict on the 9th with Ms. Braswell, and then I

22    have another appearance out of town on the 14th and 15th of

23    October, so we're sort of caught between these --

24         THE COURT:  We can work around those dates.  I'm going to

25    be out of town the latter part of October.  You know, it's not a

1    problem giving the jury a day or two off, and they appreciate

2    that.  It's a holiday, I think the 4th -- Columbus Day is the

3    12th, so we can work with that.  Can I start the 28th?  Jury

4    selection starts September the 9th.  Excuse me one second.

5        (Brief pause in proceedings.)

6        THE COURT:  All right, counsel.  You know what, I think I

7    said 18 or 19 experts in that case.  I've already told the

8    attorneys that I'm not sitting on Fridays, and so I -- I don't

9    want to tell you the 28th is going to work.  Suppose we were to

10   start the jury selection on October the 5th?  So there are a

11   couple of days that are not good for -- Mr. Turley, I think you

12   said the 14th and 15th, and Ms. Braswell has a date in October.

13       MR. TURLEY:  October 9th, I believe.

14       THE COURT:  Are there other problems with starting October

15   5th?

16       MR. PITTMAN:  There's one Your Honor.

17       THE COURT:  Sure.

18       MR. PITTMAN:  It involves -- Ms. Efros starts a jury trial

19   in a wrongful imprisonment case, a Section 1983 case, November

20   1st before Chief Judge Roberts, and so --

21       THE COURT:  How long is that trial going to take, do you

22   think?

23       MS. EFROS:  About three weeks, Your Honor.

24       THE COURT:  Three weeks?

25       MS. EFROS:  It's a case that dates back to 1981.

1       MR. PITTMAN:  It's a case that dates back to 1981, so

2   there are witness issues, document issues.  It is a very hard

3   fought, long fought case, and it is going to require a lot of

4   pretrial time, and so we are very concerned about having that

5   trial that close to that November 1 trial date.  If this was --

6   if we knew this was a relatively short trial, which I don't think

7   we can say at this point, that wouldn't be an issue, but starting

8   October 5th makes me very nervous.

9       MS. BRASWELL:  Your Honor, it might help us if we had some

10   sense of how long the Court thinks this trial will go.  I realize

11   that puts you on the spot, but it would certainly help us

12   somewhat.

13      THE COURT:  Believe me, I've thought about that.  That's a

14   very difficult question.  It's difficult because I have -- I know

15   what I'm going to do, and -- there are probably five answers to

16   that question, you know, so -- really.  Let me just think about

17   something.  I think I told them we weren't sitting on Fridays,

18   but I wonder if I could change that, because if we have full

19   weeks.....

20      That trial before Chief Judge Roberts starts November 1st,

21   right?  Is that what you said?

22      MS. EFROS:  The 5th, Your Honor.

23      THE COURT:  The 5th?

24      MS. EFROS:  Yes.

25      MR. PITTMAN:  I think we were told he has a criminal trial

1  that may go a day or over, so the date is November 1, but he has

2  advised us November 2nd --

3       THE COURT:  I'm unavailable actually the 26th through the

4  28th of October.

5        Excuse me one second.

6       (Brief pause in proceedings.)

7       THE COURT:  I'll tell you what I'm going to do.  September

8  28th, and I'll just make adjustments in the other matter.  So

9  that's a firm date for jury selection, all right.

10      MR. TURLEY:  Thank you, Your Honor.  We'll inform the

11  witnesses.

12      THE COURT:  And I recognize that -- I recognize Ms.

13  Braswell has a date or two that you are going to be unavailable.

14      MS. BRASWELL:  May I count on us not sitting on the Friday

15  before Columbus Day weekend, October 9th?

16      THE COURT:  Yes, you can, because jurors don't want to sit

17  either.

18      MS. BRASWELL:  So there will be no trial that date.

19      THE COURT:  Right.  I'm going to block that off now.

20      MS. BRASWELL:  I appreciate that.  That would be Friday,

21  the 9th.

22      THE COURT:  Right.

23      MR. PITTMAN:  And again, Your Honor, we have the concern

24  about the upcoming trial before Judge Roberts.  I don't know --

25      THE COURT:  You know what, let me speak with him.  We're

1    going to -- this case will be over by then.  I mean -- what's

2    your -- I've always viewed this as maybe a two-week trial at best

3    or so, you know, at best.  I don't think it's going to be two

4    weeks.  Does anyone disagree with that?

5         MR. TURLEY:  I think -- we've always said between ten

6    days and two weeks is probably where we would land in terms of

7    this case, depending on the --

8         THE COURT:  And I don't have other matters.  This is not

9    like Superior Court.  I'm not being critical of Superior Court,

10   but when we were there, we couldn't start every day until 11

11   because we had other matters, but I'm not going to schedule any

12   other matters, so -- and we're going to sit on Fridays with the

13   exception of the 9th and the 15th and 16th.  You're not

14   available, counsel?

15        MR. TURLEY:  14th and 15th, Your Honor.

16        THE COURT:  14th and 15th.  All right.  We'll just have to

17   work with that.  I just don't see it as more than a two-week -- I

18   may be wrong, but -- and I'll speak to Chief Judge Roberts.  I

19   don't think there will be any --

20        MR. TURLEY:  Thank you, Your Honor.

21        MR. PITTMAN:  Thank you, Your Honor.

22        THE COURT:  All right.  I'm not going to -- anyone have

23   any questions you want to ask?  You know, my opinion is coming

24   out soon, very soon, but it's not there yet, and I'm still in

25   trial and I'm working through some issues there, and I'll be in

1    trial all next week, but we're going to get it out.

2         MR. TURLEY:  Your Honor, we just have one question.

3         THE COURT:  If you have any questions you want to ask,

4    just go ahead and do so.

5         MR. TURLEY:  The United States has submitted new authority

6    in the Sheon [sp] case for your consideration.  We did not want

7    to burden the Court with a further filing.  We would be happy to

8    file a response.

9         THE COURT:  Why don't you hold off.  Why don't you hold

10   off, because you're going to get my opinion very soon, and you

11   know, if people feel as though they need to amend, rescind,

12   whatever, just let me know.  I'm going to be flexible.  But this

13   is a firm date, though, another firm date, September the 28th for

14   jury selection, okay.

15        MR. TURLEY:  Yes.  We don't see any need to amend over

16   Sheon.  We don't think Sheon is determinative in any respect, so

17   we don't see any need to amend.

18        THE COURT:  I just wonder if I should actually schedule

19   another status hearing.  I should probably.

20        MS. BRASWELL:  Your Honor, we need to schedule a pretrial

21   conference.

22        THE COURT:  I know.  I have not lost track of that.  Let's

23   see.  The pretrial is about what, five weeks -- I scheduled the

24   pretrial about five weeks prior to the trial date.  Why don't we

25   do this.  Jury selection in my other case is starting on the 9th.

1    Why don't we have a pretrial at 10 a.m. on -- let me see.  Let me

2    think about this for a second.  10 a.m. on September 8th.  That's

3    the day after Labor Day, so if somebody has already planned to be

4    away, tell me.  I'm not going to mess up anyone else's vacation.

5        MR. TURLEY:  That's fine with the plaintiffs.

6        MR. CAUSEY:  I have --

7        THE COURT:  That's fine.  I wanted to be away, too, but

8    that's fine.  So now I will be that day.  August is really

9    tricky.  I haven't told the attorneys, but let's see.  Fridays

10    I'll be in trial.  So when can we do pretrial?  This date may

11    change, I suspect it will, but what about July 30th at 11 a.m.?

12    bad date or bad time?

13        MR. TURLEY:  I believe I'm out of town July 30th, Your

14    Honor.  I can try to see if there's any way I can move it, but I

15    think I have a conflict on that day.  But, Your Honor, we have

16    other lawyers that can appear.  I don't want to prevent the Court

17    from setting the schedule.

18        THE COURT:  All right.  That's -- I suspect that day may

19    change, but I want to give you a date.  If it changes, then we'll

20    make the adjustment.  July 30th at 11 a.m.

21        MR. TURLEY:  Very well.

22        THE COURT:  I want you here, though.  You're a principle

23    lawyer in this case.  I don't want to exclude you.

24        MR. TURLEY:  I can try to see if I can in any way move

25    that date.  The --

```
1          THE COURT:  Suppose we did it the week before that, say
2     the 23rd of July?
3          MR. TURLEY:  That's fine, Your Honor.
4          THE COURT:  23rd of July at 11 a.m.?  All right.  Okay.
5     And, you know, that may change as well.  All right.  Anyone have
6     any questions you want to ask about anything?
7          MR. TURLEY:  Not from us.
8          THE COURT:  Anything I can do to help with settlement?
9     I'll tell you, I'll still renew my offer to sit down with
10    everyone and try to settle the case.  And if I can't, though, I
11    can't try it.
12         MR. TURLEY:  Your Honor, I've always been intrigued by
13    that, because obviously we seem to be going around in circles.
14         THE COURT:  I mean, I know as much as anyone else in the
15    courtroom about this case.
16         MR. TURLEY:  I actually -- we would be prepared to waive
17    any objection to you appearing at trial as judge in order to
18    facilitate your being --
19         THE COURT:  There's nothing wrong with that either.  I
20    mean, the last Superior Court case I settled was a case involving
21    Stein and some others.  It was one of these contractor cases
22    where the -- everyone sues the subcontractor.  It was a horrible
23    accident.  A kid had lost his hand, fell from a scaffold, and you
24    know the drill, right, everyone sued the subcontractor.  It took
25    a week to settle that case, and I was going to try it, and we've
```

1  gotten away from that where the judges are intimately involved in

2  settlement.  I don't know why we've gotten away.  Probably

3  because we have magistrate judges, probably, and they're great

4  and they're excellent, and then maybe I would not have to recuse.

5       MR. TURLEY:  I don't see why you would have to recuse.

6  We're perfectly willing to waive objections at trial for you to

7  play that role.  I have not talked to the defendants, but

8  frankly, that may be the missing element that we need.

9       THE COURT:  Before I issue what I'm going to issue or

10  after?

11       MR. TURLEY:  I -- we would -- we're prepared to do either

12  one, Your Honor.

13       THE COURT:  I thought you were going to say, You tell us

14  how you're going to rule.

15       (Laughter in the courtroom.)

16       MR. TURLEY:  We always expect you'll rule on the side of

17  justice, Your Honor.

18       THE COURT:  We've gotten away from that, but in Superior

19  Court we didn't have magistrate judges, we didn't have -- we

20  couldn't ask colleagues.  We did it all.

21       MR. TURLEY:  That's exactly right.

22       THE COURT:  We spent a week and -- I knew all the

23  attorneys, as I do here, and the facts were horrible, but we

24  settled it after a week, and, you know, it took a week, but we

25  did it.  And if we hadn't settled, I was going to try it, and

1    that's not the only case, but we've gotten away from that.  So

2    I'll probably take that back.  I don't think I would have to

3    recuse, but we have a process anyway that if someone thought I

4    should, there's a process where that person notifies the clerk.

5    I never know who the person is.  And I helped my colleague, one

6    of my colleagues get through that with a very sensitive issue.

7    So there is a process for that.  But, I mean, think about it,

8    think about it.  I'm still going to proceed and issue what I'm

9    going to issue, but if you want to think about it and involve me

10   in settlement negotiations, there might be some benefit to that.

11          MR. PITTMAN:  Your Honor, the District would welcome that.

12   The only question I don't know is whether we would then agree to

13   you serving as trial --

14          THE COURT:  And that's fine, and I wouldn't be offended,

15   and then I would have to get a colleague, you know, Judge

16   Huvelle -- no.

17          MR. PITTMAN:  I just need to make some inquiries about

18   that issue.

19          THE COURT:  No, no.  I wouldn't be offended either by

20   that.  But look, if I got involved, I would get involved, and I'm

21   going to express what I really feel about issues.  So maybe

22   probably it would be best to have someone else try the case, but

23   I have every reason to think I could probably settle this case,

24   but that requires people to have realistic assessments and views

25   about valuation, et cetera, et cetera, because I'm going to --

```
 1    I'll be blunt.  So....
 2         MR. PITTMAN:  Would you like to propose a time for us to
 3    get back to you?
 4         THE COURT:  Well, think about it.
 5         MR. PITTMAN:  We'll definitely think about it.
 6         THE COURT:  I'm going to finish what I'm doing.  I'm going
 7    to issue it, and maybe after I issue it, maybe it would be more
 8    appropriate, but, you know, the thing -- I think I may have
 9    shared this story before when I went to Superior Court with a
10    bunch of other -- seven other judges -- we all thought we were
11    hotshots trying cases, and one -- I think it was Bill Stuart, a
12    very wise civil -- very wise judge with a civil background.  Many
13    of you probably knew him, Bill Stuart, Superior Court judge, and
14    he raised the question.  He said, this is great, all you men and
15    women trying these cases, I tried so many cases, blah, blah,
16    blah.  He said, how many of you have settled any cases?  And we
17    kind of looked at each other like, what's a settlement, and, you
18    know, it's about bringing about finality, something that the
19    judge -- all we can do is move the case to the next rung.  That's
20    fine, we're trial judges, but what Bill said stuck and it changed
21    a lot of attitudes about helping lawyers achieve finality and
22    closure, and he was absolutely right.  He was one of the best
23    civil practitioners and judges, and we all sought guidance from
24    him about how to settle cases, and we settled a lot of cases,
25    too, but that's finality, that's over.
```

1         You know, whatever happens in this case, someone's -- it's

2    going to go to another level, and that's fine, that's the way our

3    system of justice works, but there's something to be said about

4    bringing a finality to a case that's not as old as 1981.  We're

5    not talking about a 1981 accident, but you're talking about

6    something that happened in 1981; is that right?

7         MS. EFROS:  Yes.

8         THE COURT:  But that's just a thought.  Think about it.

9    But I wouldn't be offended if the parties said, Well, judge, if

10   you do that, you know, we prefer to have it -- that's fine,

11   that's fine.  So, anyway, any other questions anyone has?

12        MR. TURLEY:  Not from our side.

13        MR. PITTMAN:  Not from our side.

14        THE COURT:  It's good to see everyone.  So, I'll leave you

15   with that.  Good luck with the settlement.

16        MR. PITTMAN:  Thank you, Your Honor.

17        MR. TURLEY:  Thank you Your Honor.

18        THE COURT:  I wouldn't be offended at all if you settle

19   the case either.

20        (Proceedings adjourned at 11:12 a.m.)

21

22

23

24

25

1

2

# C E R T I F I C A T E

3

       I, Scott L. Wallace, RDR-CRR, certify that
the foregoing is a correct transcript from the record of

4

proceedings in the above-entitled matter.

5

  /s/ Scott L. Wallace          1/6/16

6

  ---------------------------    ----------------
    **Scott L. Wallace, RDR, CRR**     **Date**

7

    **Official Court Reporter**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25